IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EARLY WARNING SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-_____ |
| | ) | |
| ALIASWIRE, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

For its Complaint for Declaratory Judgment against Aliaswire, Inc. ("Aliaswire"),

Plaintiff Early Warning Services, LLC ("EWS"), by and through its attorneys, demands a trial by

jury on all issues so triable and alleges as follows:

### PARTIES

1.      EWS is a Delaware limited liability company having a place of business at 16552

N. 90th St., Scottsdale, AZ 85260.

2.      Aliaswire, Inc. is a Delaware corporation having a principal place of business at

152 Middlesex Turnpike, Burlington, MA 01803.

### NATURE OF ACTION

3.      This is a civil action for declaratory judgment of non-infringement under the

Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and

1338(a), the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., particularly 35 U.S.C. §

271, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      The Court has personal jurisdiction over Aliaswire as it is a corporation incorporated in the State of Delaware and thus resides within this district.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## FACTUAL BACKGROUND

7.      EWS is the owner of the Zelle Network®, a financial services network focused on transforming digital payment experiences.  EWS provides certain services to its customers to enable such customers to participate in the Zelle Network®.

8.      Upon information and belief, Aliaswire is the assignee and owner of (a) U.S. Patent No. 8,346,659 ("'659 Patent"), (b) U.S. Patent No. 9,684,899 ("'899 Patent"), (c) U.S. Patent No. 9,767,455 ("'455 Patent"), (d) U.S. Patent No. 10,127,550 ("'550 Patent"), and (e) U.S. Patent No. 10,467,621 ("'621 Patent"), all of which are entitled "Secure Authentication and Payment System," (the "Patents-in-Suit").  *See* attached Exhibits A-E, respectively.

9.      In November 2019, Aliaswire sued EWS's customers in the U.S. District Court for the Western District of Texas alleging infringement of the Patents-in-Suit by EWS's customers.  Specifically, Aliaswire sued EWS's customers Branch Banking and Trust Company and BB&T Corporation ("BB&T"), First National Bank of Central Texas and FCT Bancshares, Inc. ("FNBCT"), and Cullen/Frost Bankers, Inc. and Frost Bank ("Frost") in the Western District of Texas, Civil Action Nos. 6:19-cv-00648, 649 and 650, respectively ("Texas Cases").  Copies of the complaints filed in the Texas Cases (without exhibits) are attached as Exhibits F-H hereto.

### Aliaswire Complaint Against EWS Customer BB&T

10.      In the complaint against BB&T, Aliaswire has accused EWS's customer BB&T of direct infringement and indirect infringement (contributory and inducement of infringement), including infringement through BB&T's participation in the Zelle Network®.

11.     By way of example, with regard to the Patents-in-Suit, Aliaswire has alleged that "BB&T's payment systems and solutions allows its customers to directly transfer funds to customers of other banks using a nationwide digital payments network run by most American banks, including BB&T.  That network is called 'Zelle'.  Zelle integrates directly with BB&T's servers."  *See* Exhibit F, Complaint, Aliaswire Inc. v. BB&T, Civil Action No. 6:19-cv-00648, U.S. Dist. Ct. for the West. Dist. of Tex., at ¶ 11.

12.     With respect to the '659 Patent, Aliaswire has asserted that BB&T has "directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, at least claims 1 and 31 of the '659 patent by making, using, testing, selling, offering for sale and/or importing into the United States products and/or services covered by one or more claims of the '659 patent…[which] include, but are not limited to, [BB&T's] 'U' mobile application P2P payment system referred to as 'Send Money with Zelle', and any other BB&T products and/or services, either alone or in combination, that operate in substantially the same manner."  *See id.* at ¶ 33.  Aliaswire makes this identical assertion for each of the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 59, 83, 108 and 132.

13.     Aliaswire has further asserted that "BB&T's mobile banking smartphone application 'U' in combination with BB&T's backend servers as integrated with the Zelle Alias Directory performs a method of conducting a financial transaction between an originator and a target as claimed in the '659 patent."  *See id.* at ¶ 35.  Aliaswire makes the essentially identically assertion as the basis for BB&T's alleged infringement of the other asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 61, 85, 110 and 134.

14.     In support of its claims, Aliaswire has further inserted in its complaint against BB&T alleged examples of various marketing materials from BB&T made available to end-

customers describing BB&T's participation in  the Zelle Network® and allegedly how the Zelle Network® operates with BB&T technology to infringe, directly and indirectly, the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 35-44, 61-70, 85-93, 110-119, and 134-142.

15.     Aliaswire's use of marketing materials directed to BB&T's participation in the Zelle Network® to show alleged infringement applies to each and every allegation of infringement, whether direct or indirect, for each asserted claim of the Patents-in-Suit.  *See id.*

16.     Therefore, each allegation of direct and indirect infringement in the complaint filed by Aliaswire against EWS's customer BB&T depends, at least in part, on BB&T's participation in the Zelle Network®.

17.     Aliaswire supports each of its allegations for direct and indirect infringement against BB&T by alleging EWS's Zelle Network® contributes to BB&T's infringement.  For example, Aliaswire includes in paragraphs 35-37 of its complaint against BB&T the pictures shown below:





Once enrolled, customers can send, request, or receive money with Zelle. To initiate a transaction, users enter the recipient's email address or phone number and the amount to be sent or requested. Users also have the option to add a memo line to the transaction.

## Network Directory—

In-network banks agree to develop and support integration of the Zelle network Shared Directory API, also known as the Alias Directory. Banks are also expected to maintain the relationship of customers' account numbers to their email and mobile number.

6. Enrolling in the Service

a. You must provide us with an email address that you regularly use and intend to use regularly (i.e., no disposable email addresses) and a permanent mobile phone number that you intend to use for an extended period of time (i.e., no "burner" numbers).

**Mobile Phone Number** – When shared with us, we collect your mobile number as a means for communicating payment notifications to you and also as a token for authenticating your identity. We also collect the mobile number of any individual which you provide to us for the purpose of facilitating money transfers.

**Email Address** – We collect your email address when you register an account and to provide you notifications regarding payment transfers and also as a token for authenticating your identity. We also collect the email address of any individual which you provide to us for the purpose of facilitating money transfers.



**Security—**

Zelle was developed by the banking industry and benefits from the industry's cybersecurity expertise. Financial institutions in the network do not share customers' account information with each other, so the risk of account information being captured in-flight or at rest is decreased. Customers that access Zelle through their bank's mobile app need provide no sensitive account information. Those who use the standalone app need only share debit card information. The Zelle Alias directory used to facilitate payments only includes the phone numbers and emails associated with Zelle profiles.

a. BB&T has partnered with the Zelle® Network ("Zelle") to enable a convenient way to transfer money between you and others who are enrolled directly with Zelle or enrolled with another financial institution that partners with Zelle (each, a "User") using aliases, such as email addresses or mobile phone numbers (the "Service"). We will refer to financial institutions that have partnered with Zelle as "Network Banks."

**Recipient information** refers to information about a recipient used to properly direct payment to the recipient and permit the recipient to identify the correct recipient account.



Sender identifies the name of recipient, recipient's cell phone or email address (each a "token"), and the amount of the payment. (Name not used for verification purposes.)

*See id.* at ¶¶ 35-37.

18.      Aliaswire further supports each of its infringement allegations by arguing that "BB&T has also contributed to, and continues to contribute to, the infringement of the '659 patent by others by knowingly providing products and/or services that, when installed and configured result in a system as intended by BB&T, directly infringe upon one or more of the claims of the '659 patent by a third party, and which have no substantial non-infringing uses, or include a separate and distinct software module described above that is especially made or especially adapted for use in infringement of the '659 patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use." *See id.* at ¶ 44.

19.     Accordingly, the allegations in paragraph 44 of the complaint in conjunction with at least the allegations of paragraphs 35-37 and the pictures therein also allege that EWS's Zelle Network® encompasses each of the four elements of contributory infringement: (1) the supplier's product was used to commit acts of direct infringement, (2) the product's use constituted a material part of the invention, (3) the supplier knew its product was especially made or especially adapted for use in an infringement of the patent, and (4) the product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Aliaswire repeats these allegations for each of the Patents-in-Suit.  *See id.* at ¶¶ 70, 92, 119 and 142.

20.     On November 18, 2019, BB&T sent a letter to EWS demanding indemnification from EWS for the Aliaswire lawsuit filed against BB&T.

21.     On December 30, 2019, EWS responded to BB&T's demand for indemnification stating it will defend BB&T against the Aliaswire lawsuit.

**Aliaswire Complaint Against EWS Customer Frost**

22.     In the complaint against Frost, Aliaswire has accused EWS's customer Frost of direct infringement and indirect infringement (contributory and inducement of infringement), including infringement through Frost's participation in the Zelle Network®.

23.     By way of example, with regard to the Patents-in-Suit, Aliaswire has alleged that "Frost's payment systems and solutions allows its customers to directly transfer funds to customers of other banks using a nationwide digital payments network run by most American banks, including Frost.  That network is called 'Zelle'.  Zelle integrates directly with Frost's servers."  *See* Exhibit G, Complaint, Aliaswire Inc. v. Frost, Civil Action No. 6:19-cv-00650, U.S. Dist. Ct. for the West. Dist. Of Tex., at ¶ 11.

24.     With respect to the '659 Patent, Aliaswire has asserted that Frost has "directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, at least claims 1 and 31 of the '659 patent by making, using, testing, selling, offering for sale and/or importing into the United States products and/or services covered by one or more claims of the '659 patent…[which] include, but are not limited to, [Frost's] mobile application P2P payment system referred to as 'Send Money with Zelle', and any other Frost products and/or services, either alone or in combination, that operate in substantially the same manner." *See id.* at ¶ 33.  Aliaswire makes this identical assertion for each of the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 60, 84, 109 and 133.

25.     Aliaswire has further asserted that "Frost's mobile banking smartphone application in combination with Frost's backend servers as integrated with the Zelle Alias Directory performs a method of conducting a financial transaction between an originator and a target as claimed in the '659 patent." *See id.* at ¶ 35.  Aliaswire makes the identical assertion "Frost's mobile banking smartphone application in combination with Frost's backend servers as integrated with the Zelle Alias Directory …." as the basis for Frost's alleged infringement of the other asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 62, 86, 111 and 135.

26.     In support of its claims, Aliaswire has further inserted in its complaint against Frost alleged examples of various marketing materials from Frost made available to end-customers describing Frost's participation in  the Zelle Network® and allegedly how the Zelle Network® operates with Frost technology to infringe, directly and indirectly, the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 35-44, 62-71, 86-93, 111-120, and 135-143.

27.     Aliaswire's use of marketing materials directed to Frost's participation in the Zelle Network® to show alleged infringement applies to each and every allegation of infringement, whether direct or indirect, for each asserted claim of the Patents-in-Suit.  *See id.*

28.     Therefore, each allegation of direct and indirect infringement in the complaint filed by Aliaswire against EWS's customer Frost depends, at least in part, on Frost's participation in the Zelle Network®.

29.     Aliaswire supports each of its allegations for direct and indirect infringement against Frost by alleging EWS's Zelle Network® contributes to Frost's infringement.  For example, Aliaswire includes in paragraphs 35-37 of its complaint against Frost the pictures shown below:





Once enrolled, customers can send, request, or receive money with Zelle. To initiate a transaction, users enter the recipient's email address or phone number and the amount to be sent or requested. Users also have the option to add a memo line to the transaction.

**Network Directory—**

In-network banks agree to develop and support integration of the Zelle network Shared Directory API, also known as the Alias Directory. Banks are also expected to maintain the relationship of customers' account numbers to their email and mobile number.

**Registering for the _Zelle_ Service.**

a. I must provide Bank with an email address that I regularly use and intend to use regularly (i.e., no disposable email addresses) and a permanent mobile phone number that I intend to use for an extended period of time (i.e., no "burner" numbers).

b. Once registered, I may perform the following functions, to the extent Bank now, or in the future, chooses to offer such functions:

i. authorize a debit of my account to send money to another User either at my initiation or at the request of that User; and

ii. receive money from another User either at that User's initiation or at my request, subject to the conditions of the Section below titled "Requesting Money."

**Mobile Phone Number** – When shared with us, we collect your mobile number as a means for communicating payment notifications to you and also as a token for authenticating your identity. We also collect the mobile number of any individual which you provide to us for the purpose of facilitating money transfers.

**Email Address** – We collect your email address when you register an account and to provide you notifications regarding payment transfers and also as a token for authenticating your identity. We also collect the email address of any individual which you provide to us for the purpose of facilitating money transfers.



**Security—**

Zelle was developed by the banking industry and benefits from the industry's cybersecurity expertise. Financial institutions in the network do not share customers' account information with each other, so the risk of account information being captured in-flight or at rest is decreased. Customers that access Zelle through their bank's mobile app need provide no sensitive account information. Those who use the standalone app need only share debit card information. The Zelle Alias directory used to facilitate payments only includes the phone numbers and emails associated with Zelle profiles.

b.   Bank has partnered with the *Zelle* Network ("*Zelle* ") to enable a convenient way to transfer money between me and others who are enrolled directly with *Zelle* or enrolled with another financial institution that partners with *Zelle* (each, a "User") using aliases, such as email addresses or mobile phone numbers (the "*Zelle* Service"). Financial institutions that have partnered with *Zelle* are referred to as "Network Banks."

"**Electronic Funds Transfer**" or "**Transfer**" means any transfer of funds initiated through Online Banking Services for the purpose of ordering, instructing, or authorizing Bank to debit or credit any of my Deposit Account(s).



Sender identifies the name of recipient, recipient's cell phone or email address (each a "token"), and the amount of the payment.  (Name not used for verification purposes.)

*See id.* at ¶¶ 35-37.

30.      Aliaswire further supports each of its infringement allegations by arguing that "Frost has also contributed to, and continues to contribute to, the infringement of the '659 patent by others by knowingly providing products and/or services that, when installed and configured result in a system as intended by Frost, directly infringe upon one or more of the claims of the '659 patent by a third party, and which have no substantial non-infringing uses, or include a separate and distinct software module described above that is especially made or especially adapted for use in

infringement of the '659 patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use." *See id.* at ¶ 44.

31.     Accordingly, the allegations in paragraph 44 of the complaint in conjunction with at least the allegations of paragraphs 35-37 and the pictures therein also allege that EWS's Zelle Network® encompasses each of the four elements of contributory infringement: (1) the supplier's product was used to commit acts of direct infringement, (2) the product's use constituted a material part of the invention, (3) the supplier knew its product was especially made or especially adapted for use in an infringement of the patent, and (4) the product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Aliaswire repeats these allegations for each of the Patents-in-Suit.  *See id.* at ¶¶ 71, 93, 120 and 143.

**Aliaswire Complaint Against EWS Customer FNBCT**

32.     In the complaint against FNBCT, Aliaswire has accused EWS's customer FNBCT of direct infringement and indirect infringement (contributory and inducement of infringement), including infringement through FNBCT's participation in the Zelle Network®.

33.     By way of example, with regard to the Patents-in-Suit, Aliaswire has alleged that "FNBCT's payment systems and solutions allows its customers to directly transfer funds to customers of other banks using a nationwide digital payments network run by most American banks, including FNBCT.  That network is called 'Zelle'.  Zelle integrates directly with FNBCT's servers."  *See* Exhibit H, Complaint, Aliaswire Inc. v. FNBCT, Civil Action No. 6:19-cv-00649, U.S. Dist. Ct. for the West. Dist. Of Tex., at ¶ 12.

34.     With respect to the '659 Patent, Aliaswire has asserted that FNBCT has "directly infringed, and continues to directly infringe, literally and/or by the doctrine of equivalents, individually and/or jointly, at least claims 1 and 31 of the '659 patent by making, using, testing,

selling, offering for sale and/or importing into the United States products and/or services covered by one or more claims of the '659 patent…[which] include, but are not limited to, [FNBCT's] mobile application P2P payment system referred to as 'Send Money with Zelle', and any other FNBCT products and/or services, either alone or in combination, that operate in substantially the same manner." *See id.* at ¶ 34.  Aliaswire makes this identical assertion for each of the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 61, 85, 110 and 134.

35.     Aliaswire has further asserted that "FNBCT's mobile banking smartphone application in combination with FNBCT's backend servers as integrated with the Zelle Alias Directory performs a method of conducting a financial transaction between an originator and a target as claimed in the '659 patent." *See id.* at ¶ 36.  Aliaswire makes the identical assertion "FNBCT's mobile banking smartphone application in combination with FNBCT's backend servers as integrated with the Zelle Alias Directory …." as the basis for FNBCT's alleged infringement of the other asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 63, 87, 112 and 136.

36.     In support of its claims, Aliaswire has further inserted in its complaint against FNBCT alleged examples of various marketing materials from FNBCT made available to end-customers describing FNBCT's participation in  the Zelle Network® and allegedly how the Zelle Network® operates with FNBCT technology to infringe, directly and indirectly, the asserted claims of the Patents-in-Suit.  *See id.* at ¶¶ 36-45, 63-72, 87-94, 112-121, and 136-144.

37.     Aliaswire's use of marketing materials directed to FNBCT's participation in the Zelle Network® to show alleged infringement applies to each and every allegation of infringement, whether direct or indirect, for each asserted claim of the Patents-in-Suit.  *See id.*

38.    Therefore, each allegation of direct and indirect infringement in the complaint filed by Aliaswire against EWS's customer FNBCT depends, at least in part, on FNBCT's participation in the Zelle Network®.

39.    Aliaswire supports each of its allegations for direct and indirect infringement against FNBCT by alleging EWS's Zelle Network® contributes to FNBCT's infringement.  For example, Aliaswire includes in paragraphs 36-38 of its complaint against FNBCT the pictures shown below:



**Network Directory—**

In-network banks agree to develop and support integration of the Zelle network Shared Directory API, also known as the Alias Directory. Banks are also expected to maintain the relationship of customers' account numbers to their email and mobile number.

*Zelle* maintains a database of information and through the Service provides the Network Financial Institutions with information necessary to facilitate the transfer of money ("Messages"); however, *Zelle* neither transfers, moves nor initiates the transfer or movement of money. *Zelle*

To be a User, you must (a) enroll with a U.S. address and U.S. mobile phone number, and (b) have (i) a personal, not a business or commercial, U.S. checking or savings

**Mobile Phone Number** – When shared with us, we collect your mobile number as a means for communicating payment notifications to you and also as a token for authenticating your identity. We also collect the mobile number of any individual which you provide to us for the purpose of facilitating money transfers.

**Email Address** – We collect your email address when you register an account and to provide you notifications regarding payment transfers and also as a token for authenticating your identity. We also collect the email address of any individual which you provide to us for the purpose of facilitating money transfers.

**Security—**

Zelle was developed by the banking industry and benefits from the industry's cybersecurity expertise. Financial institutions in the network do not share customers' account information with each other, so the risk of account information being captured in-flight or at rest is decreased. Customers that access Zelle through their bank's mobile app need provide no sensitive account information. Those who use the standalone app need only share debit card information. The Zelle Alias directory used to facilitate payments only includes the phone numbers and emails associated with Zelle profiles.

We're excited to offer Zelle® — a great way to send money in minutes† to almost anyone you know and trust who has a bank account in the United States.

Need to pay back a neighbor, landlord or bestie? With *Zelle*, you can send money from The First Mobile banking app using a recipient's email address or U.S. mobile number.



Sender identifies the name of recipient, recipient's cell phone or email address (each a "token"), and the amount of the payment.  (Name not used for verification purposes.)

*See id.* at ¶¶ 36-38.

40.     Aliaswire further supports each of its infringement allegations by arguing that "FNBCT has also contributed to, and continues to contribute to, the infringement of the '659 patent by others by knowingly providing products and/or services that, when installed and configured result in a system as intended by FNBCT, directly infringe upon one or more of the claims of the '659 patent by a third party, and which have no substantial non-infringing uses, or include a separate and distinct software module described above that is especially made or especially adapted for use in infringement of the '659 patent and is not a staple article or commodity of commerce suitable for substantial non-infringing use."  *See id.* at ¶ 45.

41.     Accordingly, the allegations in paragraph 45 of the complaint in conjunction with at least the allegations of paragraphs 36-38 and the pictures therein also allege that EWS's Zelle Network® encompasses each of the four elements of contributory infringement: (1) the supplier's product was used to commit acts of direct infringement, (2) the product's use constituted a material part of the invention, (3) the supplier knew its product was especially made or especially adapted for use in an infringement of the patent, and (4) the product is not a staple article or commodity of commerce suitable for substantial non-infringing use.  Aliaswire repeats these allegations for each of the Patents-in-Suit.  *See id.* at ¶¶ 72, 94, 121 and 144.

42.     On December 19, 2019, EWS received a demand for indemnification regarding its customer FNBCT for the Aliaswire lawsuit filed against FNBCT.

43.     On December 30, 2019, EWS responded to the demand for indemnification stating it will defend FNBCT against the Aliaswire lawsuit.

**Aliaswire's Infringement Allegations Have Injured, and Are Injuring, EWS**

44.     Aliaswire's infringement allegations against EWS's customers BB&T, Frost and/or FNBCT have created a case of actual controversy between Aliaswire and EWS threatening actual and imminent injury to EWS that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

45.     For example, as alleged above, there is a controversy between Aliaswire and EWS concerning EWS's alleged liability for at least contributory infringement based on the alleged acts of direct infringement by EWS's customers BB&T, Frost and/or FNBCT.  Accordingly, Aliaswire has affirmatively put EWS in the position where it must either pursue allegedly infringing behavior or abandon that which EWS has a right to do.

46.     As another example, as alleged above, in response to indemnification demands from BB&T and FNBCT, EWS is assuming the substantial costs of defending BB&T and FNBCT in the Texas Cases.

47.     As another example, EWS received from Aliaswire a direct settlement demand regarding the Patents-in-Suit.

48.     EWS's injury also includes uncertainty in the marketplace as to whether EWS customers' participation in the Zelle Network®, including but not limited to BB&T, Frost and FNBCT, is free from infringement based on the asserted claims of the Patents-in-Suit.

49.     Absent a declaration of non-infringement, Aliaswire's continued wrongful assertions of infringement will cause EWS and its customers irreparable injury and damage.

50.     Consequently, Aliaswire and EWS have adverse legal interests and there is a definite and concrete dispute between Aliaswire and EWS that is real, substantial and on-going.

### COUNT I: Declaratory Judgment of No Contributory Infringement

51.     Paragraphs 1-49 are incorporated by reference as if fully set forth herein.

52.     EWS's Zelle Network® does not contributorily infringe, literally or under the doctrine of equivalents, any claim of the Patents-in-Suit.

53.     Among other things, EWS does not contributorily infringe at least asserted claim 1 of the '659 patent because, *inter alia*, the accused Zelle Network® does not include providing instructions to transfer the payment amount from an originator financial account to a target financial account by the server based on target financial account information identified by the alias.

54.     Among other things, EWS does not contributorily infringe at least asserted claim 1 of the '899 Patent because, *inter alia*, the accused Zelle Network® does not include sending, from a server, a message to a client device using an alias previously assigned by the server and stored in a database, wherein the message provides instructions for a target to access the server to receive a payment amount for a transaction and the message includes a transaction identifier generated for the transaction.

55.     Among other things, EWS does not contributorily infringe at least asserted claim 1 of the '455 Patent because, *inter alia*, the accused Zelle Network® does not include receiving, at a server from a client device, one or more messages including a resource identifier, a telephone identifier, and an alias assigned by the server.

56.     Among other things, EWS does not contributorily infringe at least asserted claim 1 of the '550 Patent because, *inter alia*, the accused Zelle Network® does not authenticate the one or more messages from the client device by searching for a stored alias and a stored transaction identifier associated with the alias in a database that matches the alias and transaction identifier in the one or more messages.

57.     Among other things, EWS does not contributorily infringe at least asserted claim 1 of the '621 Patent because, *inter alia*, the accused Zelle Network® does not include in response to authenticating the one or more messages, identifying, by the server, a first payment destination identifier in the database associated with the originator alias and a second payment destination identifier associated with the target alias; and facilitating, by the server, transfer of the one or more resources from a funding mechanism associated with the first payment destination identifier to an entity associated with the second payment identifier.

58.     As a result of the acts described in the foregoing paragraphs, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, there exists an actual and substantial controversy of sufficient immediacy and reality between Aliaswire and EWS to warrant a declaration by the Court that EWS does not contributorily infringe any claim of the Patents-in-Suit either literally or under the doctrine of equivalents.

## COUNT II: Declaratory Judgment of No Direct Infringement

59.     On January 23, 2020, counsel for Aliaswire sent counsel for EWS a monetary settlement and license demand whereby, in resolution of the Texas Cases and the threat of patent infringement to its other customers not sued in the Texas Cases, Aliaswire would agree to license the Patents-in-Suit to EWS and all of EWS' customers and Aliaswire would further agree to provide a covenant not to sue on all "Aliaswire/Mohsenzadeh patents."

60.     On February 10, 2020, counsel for EWS sent counsel for Aliaswire a letter rejecting Aliaswire's settlement and license demand on the grounds that neither EWS nor any of its customers infringed any of the Patents-in-Suit and, furthermore, that the Patents-in-Suit are invalid and unenforceable.

61.     As a result of the acts described in the foregoing paragraphs 59-60, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, there exists an actual and substantial controversy of sufficient immediacy and reality between Aliaswire and EWS to warrant a declaration by the Court that EWS does not directly infringe any claim of the Patents-in-Suit either literally or under the doctrine of equivalents

## PRAYER FOR RELIEF

EWS, reserving its right to amend its pleadings to add additional defenses, affirmative defenses, and counterclaims if warranted by discovery, prays for the following relief:

(a)     A judgment that EWS's Zelle Network® does not indirectly infringe, including does not contributorily infringe, any claim of the Patents-in-Suit;

(b)     A judgment that EWS's Zelle Network® does not directly infringe any claim of the Patents-in-Suit;

(c)     A judgment that Aliaswire is not entitled to damages, injunctive or other relief in the actions filed against EWS's customers; and

(d)     An award to EWS of its attorneys' fees and costs as well as other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

EWS hereby demands a jury trial in this action on all issues to the extent allowed by the United States Constitution and the Federal Rules of Civil Procedure.

OF COUNSEL:

Steven D. Moore

KILPATRICK TOWNSEND
 & STOCKTON LLP

Two Embarcadero Center, Suite 1900

San Francisco, CA 94111

(425) 576-0200


Brian P. O'Donnell

Kevin M. Bell

KILPATRICK TOWNSEND
 & STOCKTON LLP

1400 Wewatta Street, Suite 600

Denver, CO  80202

(303) 571 4000


Dated: February 10, 2020

*/s/ John W. Shaw*

John W. Shaw (No. 3362)

SHAW KELLER LLP

I.M. Pei Building

1105 North Market Street, 12th Floor

Wilmington, DE 19801

(302) 298-0700

jshaw@shawkeller.com

*Attorneys for Plaintiff*