## UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

PRODUCE PAY, INC.,

                 Plaintiff,

v.

RARAMURY BERRY S.P.R. de R.L. de
C.V. t/a INFINITY BERRIES, and ENRIQUE
PEREZ DE ANDA each individually,

                 Defendants.

CIVIL ACTION

Case No.

## **COMPLAINT**

For its Complaint, the plaintiff respectfully states as follows:

## **THE PARTIES**

1.      Produce Pay, Inc. ("*Produce Pay*") is a Delaware corporation with its principal place of business located at 888 W 6th St., suite 200. Los Angeles CA 90017

2.      Produce Pay buys and sells wholesale quantities of perishable agricultural commodities (hereinafter "*Produce*") in both interstate and foreign commerce.

3.      Produce Pay trades in fresh fruit and vegetable commodities the United States Department of Agriculture ("*USDA*") expressly recognizes as commodities covered under the provisions of the Perishable Agricultural Commodities Act, 1930, as amended, 7 U.S.C. §§ 499a-499t (2016) ("*PACA*").

4.      At all times relevant hereto, Produce Pay was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

5.      At all times relevant hereto Produce Pay operated its business under a valid United States Department of Agriculture ("*USDA*") issued PACA License, which the USDA has identified as License No.: 20150951.

6.      Produce Pay is also engaged in the business of providing cash flow and alternative financing solutions to fresh Produce growers or sellers who want an alternative to traditional bank loans.

7.      Defendants are:

(a)      Raramury Berry S.P.R. de R.L. de C.V.  ("*Raramury t/a Infinity Berries*") is a Mexican Limited Liability Corporation with its principal place of business located at Camino Bajada San Isidro No. 119, Col. San Isidro, 36540, Irapuato, Guanajuato, Mexico, and with another operating address at Independencia 563, Col. Independencia, 31500 Cuauhtemoc, Chihuahua, Mexico.

(b)      Infinity Berries is a trade name of Raramury and shares the same principal place of business. *See* a true and correct copy of Infinity Berries' website attached hereto as *Exhibit A*, listing Raramury and Infinity Berries at the same corporate address. *See* a true and correct copy of a list of attendees from a Produce marketing tradeshow attached hereto as *Exhibit B*, listing Enrique Perez de Anda as a representative employee of Raramury and that Raramury employees all utilize the email address "infinityberries@gmail.com." At all times relevant to this action, Raramury independently or through its trading identity, Infinity Berries:

(i)     operated, conducted, and otherwise was engaged in or carried on the business of growing, buying, and selling Produce in interstate or foreign commerce;

(ii)    routinely grew and bought  Produce in Mexico and sold such Produce in the United States;

(i)     operated, conducted, and otherwise was engaged in or carried on the business of growing, buying, and selling Produce in interstate and foreign commerce.

(c)     Enrique Perez de Anda ("*Principal*"), a resident of Mexico, is or was an employee,[1] officer, director, or member of Raramury t/a Infinity Berries, and was in a position to exercise dominion and control over it at all times relevant to this action and otherwise participated in the tortious conduct or other wrongs set forth herein. Principal holds himself out as the Director General and majority stockholder of Raramury t/a Infinity Berries and his position as such is listed on multiple business websites. *See Exhibit B*; *see also* a true and correct copy of a credit report run on Raramury showing Enrique Perez de Anda as the majority stockholder of Raramury as *Exhibit C*.

(d)     Raramury t/a Infinity Berries and Principal shall hereinafter be collectively referred to as "*Defendants*."

## JURISDICTION AND VENUE

8.     The District Court has subject matter jurisdiction over this civil action arising under 7

---

[1] "Employed," "employ," or "employment," as used herein, means "any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment." *See* 7 C.F.R. § 46.2(ee).

U.S.C. § 499e(b)(2) ("liability may be enforced by … suit in any court of competent jurisdiction….") and 7 U.S.C. § 499e(c)(5) ("the several district courts of the United States are vested with jurisdiction specifically to entertain (i) actions by trust beneficiaries to enforce payment from the trust") of the PACA, pursuant to 28 U.S.C. § 1331 and because this matter involves the interpretation of a federal statute.

9.     The District Court also has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1337 because PACA qualifies as an "Act of Congress regulating commerce" and several of Produce Pay's claims herein arise under 7 U.S.C. § 499e(b)(2) and 7 U.S.C. § 499e(c)(5).

10.     The Court has supplemental jurisdiction over Produce Pay's other claims pursuant to 28 U.S.C. § 1367(a).

11.     The Court has *in rem* jurisdiction over Produce Pay's claims pursuant to, *inter alia*, 28 U.S.C. § 1655.

12.     Venue in this district is based on 28 U.S.C. § 1391(b)(3) and (c) because the parties agreed to proper venue and to submit themselves to the exclusive jurisdiction of this district, and all Defendants are non-residents of the United States.

## **NATURE OF THE CASE**

13.     This is a civil action for monetary and injunctive relief, pursuant to which Produce Pay seeks to enforce its rights against the Defendants under both PACA's Unfair Conduct provisions and further seeks to enforce its rights under state law (e.g., breach of contract, breach of fiduciary duty, conversion).

14.     As set forth in detail herein, Defendants have committed willful, repeated, and flagrant violations of Section 2 of PACA (i.e., Unfair Conduct provisions) and, as a direct result of said violations, Produce Pay has incurred damages of not less than $136,365.98, plus contractually due

costs of collection, including attorneys' fees, as sums owing in connection with Produce Pay's unpaid

Produce transactions, as sums owing in connection with Produce Pay's unpaid Produce transactions

with Raramury t/a Infinity Berries.

## **FACTUAL ALLEGATIONS**

15.     On or about August 9, 2019, Produce Pay entered into two written agreements with

Raramury t/a Infinity Berries.

16.     The first agreement was a Prepayment Agreement, wherein Produce Pay agreed to

advance funds to for the purpose of planting, growing, and harvesting its Produce, and Raramury t/a

Infinity Berries agreed, *inter alia*, to repay Produce Pay by remitting the proceeds from its sale of its

Produce to certain buyers approved by Produce Pay. A true and correct copy of the Prepayment

Agreement is attached hereto as *Exhibit D*.

17.     The second agreement was a Produce Purchase Agreement, wherein Produce Pay

purchased and Raramury t/a Infinity Berries sold to Produce Pay, all right, title, and interest in and to

strawberry crops to be grown and harvested by Raramury t/a Infinity Berries during the upcoming

and future seasons. A true and correct copy of the Produce Purchase Agreement is attached hereto as

*Exhibit E* (the Prepayment Agreement and the Produce Purchase Agreement are collectively referred

to as the "*Agreements*").

18.     Raramury t/a Infinity Berries, by and through the Principal, acknowledged and agreed

to the terms, conditions, representations, and warranties included in the Agreements by signing the

Agreements and indicating his title as "Director General." *See Exhibits D* and *E*.

19.     At all times relevant hereto, Raramury t/a Infinity Berries grew and sold Produce,

specifically fresh strawberries.

20.     To fulfill its obligations to Produce Pay under the Agreements, Raramury t/a Infinity Berries both served as a grower itself and sourced Produce from several affiliated or subcontracted growers from time to time.

21.     On information and belief,[2] Raramury t/a Infinity Berries' affiliated or subcontracted growers included, but were not limited to, San Jeronimo, San Esteban, Los Nietos, El Tepame, El Sabino, La Guayabera, La Cordoba, Rancho El Penon de Arriva, La Joya del Limon, Lagunillas Berries El Durzano, Miguel Angel Carlos Mora, and El Eden.

22.     The Agreements secured Produce Pay's right, title, and interest in and to some or all of the strawberries grown by Raramury t/a Infinity Berries or its affiliated or subcontracted growers.

23.     The USDA provides a list of perishable agricultural commodities covered under PACA,[3] which includes strawberries.

24.     Because Raramury t/a Infinity Berries sold or delivered Produce originating in Mexico to receivers in the United States, Raramury t/a Infinity Berries' Produce transactions with Produce Pay involved interstate and foreign commerce.

25.     On information and belief, Raramury t/a Infinity Berries sold or delivered Produce to receivers in the United States in ton-lot (i.e., 2,000 pounds) quantities in that the shipment of Produce

---

[2] On or upon "information and belief," as used herein, means Produce Pay is informed and believes a fact or condition to be true and, upon such information and belief, alleges the fact or condition in connection with the instant complaint.  Produce Pay's information and beliefs are based upon investigation and derived from such sources as: Produce Pay's conversations with Defendants, e-mail correspondence with Defendants, publicly available government documents, relevant statements or information contained on Defendant owned or controlled websites, import/export documents, Produce Pay's communications with Defendants, Produce Pay and Defendants relevant produce transaction documents, documents Defendants uploaded to and otherwise provided Produce Pay, and relevant third party documents.

[3] The USDA's Agricultural Marketing Service maintains and updates, in the ordinary course of its business, a complete list of the USDA's PACA covered commodities, including avocados, online at: https://www.ams.usda.gov/sites/default/files/media/Commodities%20Covered%20by%20PACA.pdf.

at issue herein totaled or exceeded 2,000 pounds in weight.

26.     At all times relevant hereto, Raramury t/a Infinity Berries was engaged, directly or indirectly, in the business of purchasing and/or selling Produce in wholesale or jobbing quantities and, therefore, is a "dealer" of Produce as defined by PACA.

27.     Under the Prepayment Agreement, Produce Pay advanced $400,000.00 to Raramury t/a Infinity Berries for the purpose of planting, growing, and harvesting Produce.

28.     Under the Produce Purchase Agreement, Produce Pay purchased the Produce from Raramury t/a Infinity Berries for the purchase price of $119,258.70.

29.     Between the two Agreements, Produce Pay advanced not less than $514,708.70 to Raramury t/a Infinity Berries. *See Exhibit E* at p. 1, Art. 2, § 2.2; *See also* a true and correct copy of the wire confirmations related to the grower advance payments and Produce purchase price payments from Produce Pay to Raramury t/a Infinity Berries are attached hereto as *Exhibit F*.

30.     The total aggregate amount of $514,708.70 that Produce Pay wired to Raramury t/a Infinity Berries was comprised of the Produce purchase amount of $400,000.00, less an agreed upon $4,500.00 application fee and a $50 test wire, plus the $119,258.70 in Produce purchase payments. *See Exhibit E* at Art. 3, § 3.6.

31.     Under the Agreements, Raramury t/a Infinity Berries agreed to utilize Produce Pay's online digital business-to-business Produce trading platform (the "*Platform*") to sell the Produce to approved distributors registered in Produce Pay's Platform. *See Exhibit D,* at p. 1 and *Exhibit E,* at Art. 1.

32.     Under the Agreements, Raramury t/a Infinity Berries also agreed that the grower advances Produce Pay advanced to Raramury t/a Infinity Berries would be reimbursed from the sale proceeds of the Produce. *See Exhibit D,* at Art. 2, § 2.3 and *Exhibit E,* at Art. 1(j)(iv).

33.     Raramury t/a Infinity Berries further agreed that Produce Pay "is entitled to be repaid the amount of the Prepaid Asset Pool Purchase Price (which shall equal the sum of the Advances)" plus an agreed upon commission in the amount of $55,173.00. *See Exhibit D* at p.1 and Art. 2, § 2.3.

34.     To ensure Raramury t/a Infinity Berries utilized the funds for the purposes agreed under the Agreements and to secure its ownership of the future crop, Produce Pay filed a financing statement in Washington, D.C. *See Exhibit D,* at Art. 3, §3.1; *See also* a true and correct copy of the UCC-1 Financing Statement attached hereto as *Exhibit G*.

35.     Pursuant to the Agreements, Raramury t/a Infinity Berries agreed "not [to] sell Produce to any third party until it has sold Produce to [Produce Pay]" of a value in an amount equal to the value set forth in the Agreements. *See Exhibit D,* at p. 1, ¶2 and Art. 2, § 2.5.

36.     Produce Pay paid to Raramury t/a Infinity Berries received and accepted the grower advance payments and the Produce purchase payments from Produce Pay. *See Exhibit F.*

37.     For a short time, Raramury t/a Infinity Berries grew, harvested, and sold the Produce to registered receivers through Produce Pay's Platform, collected a total amount of $464,661.97, and utilized the proceeds to repay Produce Pay for the full amount owed under the Produce Purchase Agreement, and part of the amount owed under the Prepayment Agreement.

38.     Produce Pay gave Raramury t/a Infinity Berries full credit for all sums received; specifically, the amount due under the Produce Purchase Agreement that Raramury t/a Infinity Berries paid to Produce Pay was the grower advance amount of $119,258.70 plus a commission of $6,996.82.

39.     Because Raramury t/a Infinity Berries paid off the Produce Purchase Agreement amount within the time period agreed upon under the Produce Purchase Agreement, Produce Pay returned to Raramury t/a Infinity Berries a commission in the amount of $4,519.43 from the total amount of the proceeds collected.

40.     However, in January of 2020, Raramury t/a Infinity Berries, on its own or through its affiliated or subcontracted growers, began selling the Produce to unapproved third party receivers through unauthorized distributors despite its contractual obligation to the contrary.

41.     Further, on information and belief, Raramury t/a Infinity Berries sold the Produce to third parties utilizing Raramury's trading identity, Infinity Berries.

42.     The proceeds Raramury t/a Infinity Berries collected from the sale of the Produce were utilized for purposes other than reimbursing Produce Pay for the Produce purchase payments and other identified charges under the Agreements, including payment of Raramury t/a Infinity Berries' other debts.

43.     By selling the Produce to third parties, collecting the proceeds thereof, and failing to remit the same to Produce Pay, Raramury t/a Infinity Berries circumvented the obligation to reimburse Produce Pay for the Produce purchase payments.

44.     Defendants refused or failed to reimburse Produce Pay for the outstanding amount of Produce purchase payments.

45.     To date, $136,365.98[4] of the aggregate funds Produce Pay advanced to Raramury t/a Infinity Berries remains unpaid.

46.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to deal fairly with Produce Pay and in good faith.[5]

47.     Defendants improperly shifted the risk of Raramury t/a Infinity Berries' debts to Produce Pay.

---

[4] Late fees in the agreed amount of $130.00 per day have accrued and continue to accrue on the unpaid amount. *See Exhibit E,* at p. 2.

[5] "Good faith," as used herein, means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.  7 C.F.R. § 46.2(hh).

48.     At all times relevant hereto, Raramury t/a Infinity Berries acted or failed to act by and through the Principal.

49.     As a dealer of Produce, the acts, omissions, or failures of Principal, or Raramury t/a Infinity Berries' employees or agents constitute acts, omissions, or failures of Raramury t/a Infinity Berries.

**COUNT I**

**<u>BREACH OF CONTRACT</u>**

**RARAMURY t/a INFINITY BERRIES**

50.     Produce Pay re-alleges paragraphs 1 through 7 and 15 through 49 as though fully set forth herein.

51.     Produce Pay and Raramury t/a Infinity Berries entered into a Prepayment Agreement and Produce Purchase Agreement, which are identified in *Exhibits D* and *E*.

52.     Under the Agreements, Produce Pay agreed to advance funds to Raramury t/a Infinity Berries for the purpose of, *inter alia*, planting, growing, and harvesting the Produce. *See Exhibit D,* at p. 1.

53.     Produce Pay paid the grower advances to Raramury t/a Infinity Berries, and has satisfied all conditions of its Agreements with Raramury t/a Infinity Berries.

54.     Raramury t/a Infinity Berries was obligated under the Agreements to sell the Produce through Produce Pay's Platform to authorized receivers through approved distributors. *See Exhibit E,* at Art. 1.

55.     Raramury t/a Infinity Berries failed or otherwise refused to utilize Produce Pay's Platform to sell much of the Produce.

56.     Raramury t/a Infinity Berries was obligated not to sell its Produce to unauthorized third party buyers until the grower advances had been repaid. *See Exhibit D,* at Art. 2, § 2.5.

57.     On information and belief, Raramury t/a Infinity Berries sold Produce to unauthorized third party customers located in the United States through unapproved distributors.

58.     Raramury t/a Infinity Berries failed to pay or otherwise deliver good funds to Produce Pay from the sale of the Produce.

59.     The funds that Produce Pay advanced to Raramury t/a Infinity Berries in the amount of $136,365.98 remain unpaid.

60.     As a direct result of Raramury t/a Infinity Berries breaches of contract, Produce Pay has incurred damages in an amount not less than $136,365.98, plus all costs of collection, including attorneys' fees, incurred in this action.

**COUNT II**

**PACA VIOLATION (UNFAIR TRADE PRACTICE):**
**FALSE OR MISLEADING STATEMENTS**
**7 U.S.C. § 499b(4)**

**RARAMURY t/a INFINITY BERRIES**

61.     Plaintiff re-alleges paragraphs 1 through 7, 15 through 49 as though fully set forth herein.

62.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a statutory duty not to make, for a fraudulent purpose, any false or misleading statement to Produce Pay in connection with any and all Produce transactions between the parties.

63.     Raramury t/a Infinity Berries acted or failed to act by and through its Principal.

64.     On information and belief, Raramury t/a Infinity Berries made several false statements regarding the receivers to whom it would sell the Produce in connection with the

Produce transactions at issue herein.

65.     Raramury t/a Infinity Berries made written statements to Produce Pay, by and through Principal, that it would sell the Produce to reliable receivers which were registered on Produce Pay's Platform.

66.     To convince Produce Pay to believe its fraudulent statement, Raramury t/a Infinity Berries, through Principal, sent Produce Pay a copy of Raramury's purported produce sales accounts receivable statement which listed such receivers.

67.     Raramury t/a Infinity Berries' false statements were made to Produce Pay for the false or fraudulent purpose of inducing Produce Pay to provide Raramury t/a Infinity Berries with significant capital intended by Produce Pay to be an advance payment to Raramury t/a Infinity Berries for the purchase of the Produce to be grown and delivered to approved receivers in the United States.

68.     However, Raramury t/a Infinity Berries failed or refused to sell its Produce through the distributors registered on Produce Pay's Platform.

69.     To the extent changes in circumstances precluded Raramury t/a Infinity Berries from doing business with the registered receivers, none of the Defendants have made any attempt to correct, modify, or contradict their representations to Produce Pay if any such changes occurred.

70.     On information and belief, and at the direction of Principal, Raramury t/a Infinity Berries allowed or caused Infinity Berries to sell the Produce and collect the proceeds around Produce Pay.

71.     To date, Raramury t/a Infinity Berries has failed or refused to repay Produce Pay for the Produce Purchase amount in the amount of $136,365.98.

72.     Raramury t/a Infinity Berries and its Principal knew or should have known that Produce Pay lacked the ability to independently verify Raramury t/a Infinity Berries' statements

beyond waiting for Raramury t/a Infinity Berries to grow, harvest, and sell the Produce to the stated receivers.

73.     Raramury t/a Infinity Berries and Principal knew or should have known that Produce Pay relied upon Raramury t/a Infinity Berries to provide it with accurate and truthful information regarding the Produce transactions subject to the parties' Agreements.

74.     The foregoing actions of Raramury t/a Infinity Berries constitute unfair conduct under PACA. *See* 7 U.S.C. § 499b(2), (4), and (5).

75.     Raramury t/a Infinity Berries' unfair conduct as defined by PACA has directly and proximately caused injury to Plaintiff in an amount not less than $136,365.98, plus further interest and all costs of collection, including attorneys' fees.

**COUNT III**

**PACA VIOLATION (UNFAIR TRADE PRACTICE):**
**BREACH OF EXPRESS OR IMPLIED DUTY**
**7 U.S.C. § 499b(4)**

**RARAMURY t/a INFINITY BERRIES**

76.     Produce Pay re-alleges paragraphs 1 through 7, 15 through 49, 50 through 60, and 61 through 75 as though fully set forth herein.

77.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to "perform any specification or duty, express or implied, arising out of any undertaking in connection with any [Produce] transaction" with Produce Pay. *See* 7 U.S.C. § 499b(4).

78.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to deal fairly with Produce Pay and in good faith.

79.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to refrain from making "any false or misleading statement in connection with any transaction involving any

perishable agricultural commodity." *See* 7 U.S.C. § 499b(4).

80.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to use reasonable care in disposing of the Produce.

81.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a duty to uphold its express obligations to Produce Pay under the Agreements.

82.     Raramury t/a Infinity Berries breached its express duty to utilize Produce Pay's Platform for the sale of its Produce by selling to buyers outside of the Platform, which constitutes a violation of an express duty under Section 2 of PACA.

83.     Raramury t/a Infinity Berries breached its duty to refrain from making false and misleading statements by lying to Produce Pay regarding the distributors to whom it would sell the Produce, which constitutes a violation of an express duty under Section 2 of PACA.

84.     Raramury t/a Infinity Berries breached its express duty to sell the Produce planted, grown, and harvested utilizing Produce Pay's grower advances by failing or refusing to sell the Produce in Raramury's name, and instead utilizing Infinity Berries to sell the Produce, which constitutes a violation of an express duty under Section 2 of PACA.

85.     Raramury t/a Infinity Berries breached its duty to use reasonable care in disposing of the Produce by selling it to third parties and not utilizing the proceeds to repay Produce Pay for the grower advances, which constitutes a violation of an express duty under Section 2 of PACA.

86.     As a direct and proximate result of Raramury t/a Infinity Berries' breaches of its express and implied duties under PACA, Produce Pay has incurred damages in an amount not less than $136,365.98, plus further interest and all costs of collection, including attorneys' fees, incurred in this action.

## COUNT IV

## BREACH OF GOOD FAITH AND FAIR DEALING UNDER PACA

## RARAMURY t/a INFINITY BERRIES

87.     Produce Pay re-alleges paragraphs 1 through 7, 15 through 49, 50 through 60, 61 through 75, and 76 through 86 as though fully set forth herein.

88.     As a dealer of Produce, Raramury t/a Infinity Berries possessed a statutory duty to deal with Produce Pay pursuant to a standard of honesty in fact and were further obligated to observe commercial standards of fair dealing in the Produce trade, which standard is defined, *inter alia*, in Section 2 of PACA.

89.     Raramury t/a Infinity Berries breached its obligation of good faith and fair dealing by selling to buyers outside of the Platform despite its contractual obligation to the contrary.

90.     Raramury t/a Infinity Berries also breached its obligation of good faith and fair dealing by making false and misleading statements and lying to Produce Pay regarding the distributors to whom it would sell the Produce.

91.     Raramury t/a Infinity Berries additionally breached its obligation of good faith and fair dealing by failing or refusing to sell the Produce in its own name, and instead utilizing the trade name Infinity Berries to sell the Produce.

92.     Raramury t/a Infinity Berries further breached its obligation of good faith and fair dealing by selling it to third parties and not utilizing the proceeds to repay Produce Pay for the grower advances

93.     As a direct and proximate result of Raramury t/a Infinity Berries' wrongful conduct, Produce Pay has been damaged in an amount not less than $136,365.98 plus further interest and all costs of collection, including attorneys' fees, incurred in this action.

## COUNT V

## BREACH OF FIDUCIARY DUTY

## PRINCIPAL

94.     Produce Pay re-alleges paragraphs 1 through 7 and 15 through 49 as though fully set forth herein.

95.     At all times relevant to this action, Principal was an officer, director, member, and shareholder of Raramury t/a Infinity Berries, and was the person in charge of its business undertakings.

96.     At all times relevant to this action, Principal controlled and managed Raramury t/a Infinity Berries' operations and had control over Raramury t/a Infinity Berries' financial dealings, including those involving its Produce transactions with Produce Pay.

97.     At all times relevant to this action, Principal was in a position to control and manage Raramury t/a Infinity Berries' operations and had the ability to control Raramury t/a Infinity Berries' financial dealings, including those involving its Produce transactions with Produce Pay.

98.     At all times relevant to this action, Principal had the authority to direct Raramury t/a Infinity Berries' operating funds and otherwise had the power to direct the sale and application or disposition of the proceeds of the Produce planted, grown, and harvested utilizing Produce Pay's grower advances.

99.     At all times relevant to this action, Principal was in a position to influence Raramury t/a Infinity Berries' application of its operating funds and otherwise had the power to influence the sale and application or disposition of the proceeds of the Produce planted, grown, and harvested utilizing Produce Pay's grower advances.

100.    Upon information and belief, at all times relevant to this action, Principal was an authorized signatory on Raramury t/a Infinity Berries' bank account(s) and otherwise had the power to direct the application or disposition of the proceeds of the sale of the Produce.

101.    As the person in control of Raramury t/a Infinity Berries, Principal possessed a duty to ensure that Raramury t/a Infinity Berries performed all duties, express or implied, arising out of Raramury t/a Infinity Berries' undertakings in connection with Raramury t/a Infinity Berries' Produce transactions, which included, *inter alia*, ensuring Raramury t/a Infinity Berries' compliance with its obligations to Produce Pay under the Agreements and under PACA.

102.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal was in a position to exercise judgment, discretion, or control over Raramury t/a Infinity Berries' operations and financial dealings, which included, *inter alia*, ensuring that Raramury t/a Infinity Berries neither acted nor failed to act in any manner that could result in Raramury t/a Infinity Berries' violation of its obligations to Produce Pay under the Agreement or under PACA.

103.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal possessed the power necessary to counteract or obviate the decisions of Raramury t/a Infinity Berries not to sell the Produce through approved distributors on Produce Pay's Platform to authorized receivers.

104.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal possessed the power necessary to counteract or obviate the decisions of Raramury t/a Infinity Berries to make false and misleading statements to Produce Pay regarding the distributors to whom it would sell the Produce.

105.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal possessed the power necessary to counteract or obviate the decisions of Raramury t/a

Infinity Berries to sell the Produce to third parties without utilizing the proceeds to repay Produce Pay for the Produce purchase payments.

106.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal knew or should have known of Raramury t/a Infinity Berries' failure or refusal to sell the Produce through authorized distributors Produce Pay's Platform to approved receivers.

107.    Principal directed or caused Raramury t/a Infinity Berries not to sell the Produce through authorized distributors Produce Pay's Platform to approved receivers, and failed to counteract or obviate Raramury t/a Infinity Berries' actions.

108.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, and because he was Raramury t/a Infinity Berries' main point of communication with Produce Pay, Principal knew of Raramury t/a Infinity Berries' false and misleading statements and lying to Produce Pay regarding the distributors to whom it would sell the Produce.

109.    Principal directed or caused Raramury t/a Infinity Berries to make false and misleading statements to Produce Pay regarding the distributors to whom it would sell the Produce, and failed to counteract or obviate Raramury t/a Infinity Berries' decision to make such statements.

110.    Principal directed or caused Raramury t/a Infinity Berries to sell the Produce planted, grown, and harvested utilizing Produce Pay's grower advances to unauthorized third parties in circumvention of its obligations to Produce Pay, and failed to counteract or obviate Raramury t/a Infinity Berries' decision to do so.

111.    As an officer, director, manager, or shareholder of Raramury t/a Infinity Berries, Principal knew or should have known of Raramury t/a Infinity Berries' sale of the Produce to third parties without utilizing the proceeds to repay Produce Pay.

112.     Principal directed or caused Raramury t/a Infinity Berries a to sell the Produce to third parties without utilizing the proceeds to repay Produce Pay for the grower advances and failed to counteract or obviate Raramury t/a Infinity Berries' decision to do so.

113.     Because Principal controlled and/or was in a position to control Raramury t/a Infinity Berries, and Principal knew or should have known of Raramury t/a Infinity Berries actions or inactions, directed or caused Raramury t/a Infinity Berries to take such actions or inactions, and failed to counteract or obviate such actions or inactions, Principal has breached his fiduciary duty to Produce Pay under the Agreements and PACA.

114.     Principal is personally liable to Produce Pay, for his breaches of his fiduciary duties to Produce Pay under the Agreements and PACA in an amount not less than $136,365.98, plus all costs of collection, including attorneys' fees, to be satisfied from the Principals' personal assets.

## COUNT VI

## CONVERSION

## PRINCIPAL AND RARAMURY t/a INFINITY BERRIES

115.     Produce Pay re-alleges paragraphs 1 through 7 and 15 through 49 as though fully set forth herein.

116.     At all times relevant hereto, Principal was an officer, director, member, or shareholder of Raramury t/a Infinity Berries and in control of its business undertakings.

117.     At all times relevant hereto, Principal controlled and managed Raramury t/a Infinity Berries' operations and financial dealings.

118.     At all times hereto, Principal was in a position to control and manage Raramury t/a Infinity Berries' operations and had the ability to control its financial dealings.

119.     At all times, Raramury t/a Infinity Berries acted or failed to act through Principal.

120.     Under the Agreements, Produce Pay paid to Raramury t/a Infinity Berries grower advances for the purpose of planting, growing, and harvesting Produce and paid to Raramury t/a Infinity Berries the Produce Purchase price which were to be repaid from the proceeds of the sale of the Produce.

121.     Additionally, under the Agreements, Raramury t/a Infinity Berries was obligated to repay such advances to Produce Pay from the proceeds of its sale of said Produce to registered receivers through Produce Pay's Platform.

122.     On information and belief, Principal and Raramury t/a Infinity Berries are or have used the proceeds from the sale of the Produce for purposes other than repaying Produce Pay, including paying Principal and Raramury t/a Infinity Berries' unrelated debts.

123.     Beginning in January of 2020, Raramury t/a Infinity Berries did not sell the Produce through approved distributors on Produce Pay's Platform as obligated under the Agreements.

124.     Instead, at the direction of Principal, Raramury t/a Infinity Berries, on its own or through its affiliated or subcontracted growers, sold the Produce to multiple unauthorized receivers in the United States under its trade name, Infinity Berries, and collected the grower advances.

125.     The proceeds of the Produce were utilized for purposes other than reimbursing Produce Pay.

126.     On information and belief, Principal and Raramury t/a Infinity Berries have converted, or are now in the process of converting, to their own use and benefit, certain monies valued in excess of $136,365.98.

127.     Principal and Raramury t/a Infinity Berries' use of the proceeds from the sale of the Produce for purposes other than paying Produce Pay have directly and proximately caused injury to Produce Pay in an amount not less than $136,365.98, plus all costs of collection, including attorneys'

fees.

WHEREFORE, Produce Pay respectfully seeks the entry of an Order providing as follows:

A)      As to Count I, entering a Final Judgment in favor of Produce Pay and against Raramury t/a Infinity Berries for breach of contract in the current amount of not less than $136,365.98, plus contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

B)      As to Count II, entering a Final Judgment in favor of Produce Pay and against Raramury t/a Infinity Berries, for violation of Section 2 of PACA for making false and misleading statements in connection with a Produce transaction, in the current amount of not less than $136,365.98, plus contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

C)      As to Count III, entering a Final Judgment in favor of Produce Pay and against Raramury t/a Infinity Berries, for its breach of express or implied duties under PACA, in the current amount of not less than $136,365.98, plus contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

D)      As to Count IV, entering a Final Judgment in favor of Produce Pay and against Raramury t/a Infinity Berries, for its breach of their duty of good faith and fair dealing under PACA, in the current amount of not less than $136,365.98, plus contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

E)      As to Count V, entering a Final Judgment in favor of Produce Pay and against Principal for breach of his fiduciary duties, in the current amount of not less than $136,365.98, plus further interest and contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein;

F)      As to Count VI, entering a Final Judgment in favor of Produce Pay and against Principal and Raramury t/a Infinity Berries, on a joint and several basis, for conversion, in the current amount of not less than $136,365.98, plus contractually due costs of collection, including attorneys' fees, incurred in this action, less any actual recovery on other Counts herein.

G)      Providing such other and further relief as the Court deems appropriate upon consideration of this matter.

**RESPECTFULLY SUBMITTED** this 20th day of February 2020.

GOLDSTEIN & MCCLINTOCK LLLP

By: */s/Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (DE Bar #3320)
501 Silverside Rd. Suite 65
Wilmington, Delaware 19809
Tel: (302) 444-6710
Fax: (888) 267-0449
Email: marias@goldmclaw.com

-AND-

WALLACE JORDAN RATLIFF
& BRANDT LLC

By: */s/Jason R. Klinowski*
Jason R. Klinowski, Esq.
*Pro Hac Vice Forthcoming*
800 Shades Creek Parkway, Suite 400
Birmingham, Alabama 35209
Tel: (205) 847-0371
Fax: (205) 874-3287
E-mail: jklinowski@wallacejordan.com

*Counsel for Produce Pay, Inc.*