IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>TRUSTWAVE HOLDINGS, INC., a Delaware Corporation and SINGAPORE TELECOMMUNICATIONS LIMITED, a Singapore Corporation,<br><br>Defendants. | C.A. No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT FOR PATENT INFRINGEMENT**

1. Plaintiff Finjan, Inc. ("Finjan"), by and through its undersigned counsel, files this Complaint for Patent Infringement and Jury Demand against Trustwave Holdings, Inc. ("Trustwave") and its parent entity, Singapore Telecommunications Limited ("Singtel") (collectively, "Defendants"), and alleges as follows:

## **NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq*.

2. Singtel and Trustwave have infringed literally or under the doctrine of equivalents, and continue to infringe, have contributed to, and continue to contribute to the infringement of, and have induced, and continue to induce the infringement of U.S. Patent No. 8,141,154 ("the '154 Patent") at least by making, using, selling, offering for sale and/or importing into the United States cybersecurity products and services that infringe one or more claims of the '154 Patent. A true and correct copy of the '154 Patent is attached as **Exhibit A**.

3. Finjan is the legal owner by assignment of the '154 Patent, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO").

Finjan seeks monetary damages and injunctive relief to address ongoing and willful infringement by Defendants of the '154 Patent.

## PARTIES

4.  Finjan is a Delaware corporation with a principal place of business at 2000 University Avenue, Suite 600, East Palo Alto, California 94303.

5.  Upon information and belief, Defendant Trustwave Holdings, Inc., is a Delaware corporation with a principal place of business at 70 W. Madison St., Suite 600, Chicago, Illinois 60602.

6.  Upon information and belief, Defendant Singapore Telecommunications Limited is a corporation existing under the laws of Singapore with a principal place of business at 31 Exeter Road, Comcentre, Singapore, 239732, Singapore.

## JURISDICTION AND VENUE

7.  This is a civil action for patent action arising under the Patent Act, 35 U.S.C. § 100 *et seq*. This Court has subject matter jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

8.  This Court has personal jurisdiction over Defendants. This Court has personal jurisdiction over Trustwave because it is incorporated in the State of Delaware.

9.  This Court also has personal jurisdiction over Singtel because it has established minimum contacts with the State of Delaware, and the exercise of personal jurisdiction over Singtel would not offend traditional notions of fair play and substantial justice. Singtel has integrated its cybersecurity capabilities, technologies, and resources under the Trustwave brand, a wholly owned Delaware subsidiary that sells the products at issue in this litigation, including in this District. For example, Trustwave's December 4, 2018 News Release states: "Singtel … has pooled the cybersecurity capabilities, technologies and resources of Singtel, Optus, Trustwave and NCS into a single global corporate identity operating under the Trustwave brand." *See* **Exhibit B** (https://www.trustwave.com/en-us/company/newsroom/news/singtel-integrates-global-

cybersecurity-capabilities-under-trustwave-to-create-an-industry-powerhouse/).

10. Further, this Court also has personal jurisdiction over Singtel because it has purposefully availed itself of the privilege of conducting business activities in the State of Delaware through a number of subsidiaries besides Trustwave, including, but not limited to, Singtel USA, Inc. (registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801), Singtel Enterprise Security (US), Inc. (registered agent at 251 Little Falls Drive, Wilmington, Delaware 19808), Singtel Communications LLC (registered agent at 108 West 13th Street, Wilmington, Delaware 19801), Singtel Innov8 Ventures LLC (registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801), Singtel Mobile Marketing, Inc. (registered agent at 251 Little Falls Drive, Wilmington, Delaware 19808), Amobee Inc. (registered agent at 850 New Burton Road Suite 201), Lucid Media Networks, Inc. (registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801), and Pixable Inc. (registered agent at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801). Singtel places its products into the stream of U.S. commerce through its subsidiaries (including Trustwave, a wholly owned Delaware subsidiary) that are incorporated in this District, including the products at issue in this case.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## FINJAN'S INVENTIONS

12. Finjan was founded in 1997 as a wholly owned subsidiary of Finjan Software Ltd., an Israeli corporation. In 1998, Finjan moved its headquarters to San Jose, California. Finjan was, and has been recognized as, a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging cybersecurity threats, recognized today under the umbrella term "malware." These technologies protect, among other things, networks and endpoints by identifying

suspicious patterns and behaviors of content delivered over the Internet. Finjan has been granted numerous patents covering inventions in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors and more than US $65 million in R&D investments.

13. Finjan built and sold software, including application program interfaces (APIs) and appliances for network security, using these patented technologies. These products and related customers continue to be supported by Finjan's licensing partners. At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center, through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to cybersecurity drew equity investments from two major software and technology companies—the first in 2005 followed by the second in 2006. Finjan has generated millions of dollars in product sales and related services and support revenues. Additionally, Finjan has generated more than US $350 million in revenue from over 25 patent licenses covering Finjan's patented inventions to date.

14. In 2015, Finjan formed Finjan Mobile, Inc. ("Finjan Mobile") to focus on cybersecurity in the mobile space. Finjan Mobile's first product, released in June 2015, was the Finjan Mobile Secure Browser. Featuring Finjan's patented inventions, including those from the '154 Patent, the Finjan Mobile Secure Browser is a simple-to-use, secure browser that protects users from potentially malicious Uniform Research Locators (URLs).

15. In October 2016, Finjan Mobile released the next version of its product—namely, the Gen3 VitalSecurity™ Browser. Finjan Mobile's Gen3 VitalSecurity™ Browser offered complete browser functionality while guarding users' privacy by not collecting any personal data. It also provided detailed analyses of virus and malware threats aggregated from more than 60 top virus companies. It also featured biometric and

passcode security to further protect the users' experience. Finjan Mobile continued to update its VitalSecurity™ Browser product, releasing, for example, Gen 3.5 in April 2017, Gen 3.7 in June 2017, and Gen 4.0 in September 2017. Each upgrade to Finjan Mobile's VitalSecurity™ Browser product continued to embody Finjan's patented inventions, including the '154 Patent.

16. In addition to developing secure browser products, Finjan Mobile has also developed and released Virtual Private Network ("VPN") products. Finjan Mobile's first VPN product was incorporated into the VitalSecurity™ Gen 4.0 Secure Mobile Browser (also known as VitalSecurity™ VPN), which was the first fully functional browser with an integrated VPN for use on mobile platforms. In September 2018, Finjan Mobile released InvinciBull™, a stand-alone VPN mobile app that keeps global consumer data safe by encrypting all Internet traffic when using public Wi-Fi, such as in a coffee shop, a hotel, or an airport.

## IMPACT OF FINJAN'S TECHNOLOGY ON TRUSTWAVE'S SUCCESS

17. One of the many companies that recognized the value of Finjan's products and technology was M86 Security, Inc. ("M86 Security"). In 2009, M86 Security entered into an agreement with Finjan whereby M86 Security would share revenues generated through the use of Finjan's technology, along with a nonexclusive license to practice certain Finjan patents ("Licensed Patents") to offer products and services. The Licensed Patents do not include the '154 Patent. Through this agreement, M86 Security continued Finjan's success through the use of the Licensed Patents in the cybersecurity marketplace.

18. Trustwave struggled to compete in the increasingly crowded cybersecurity marketplace. In 2010, Trustwave posted US $4.6 million in losses despite recording US $115 million in revenues and had to abandon its plans for an Initial Public Offering (IPO). *See* **Exhibit C** (https://www.chicagobusiness.com/article/20110811/NEWS01/110819976/trustwave-

postpones-ipo).

19. In 2012, Trustwave acquired M86 Security. *See* **Exhibit D** (https://www.trustwave.com/en-us/company/newsroom/news/trustwave-completes-acquisition-of-m86-security/). With the acquisition, Trustwave gained access to M86 Security's valuable limited license to practice the Licensed Patents to offer products and services, including "Web and email security products," "[a]dvanced malware detection technology," and "[b]roader threat intelligence and security research," and gaining access to "M86 Security's more than 25,000 customers with 26 million users." *See* **Exhibit E** (https://www.trustwave.com/en-us/company/newsroom/news/trustwave-to-acquire-m86-security/).

20. Recognizing the important role of Finjan's patents to Trustwave's post-acquisition success, in 2012, Trustwave and Finjan voluntarily amended the 2009 M86 Security-Finjan license agreement, resulting in an Amended and Restated Patent License Agreement ("Limited License Agreement"). The Limited License Agreement does not include the '154 Patent.

21. The acquisition of M86 Security's products and services that practice Finjan's Licensed Patents catapulted Trustwave's presence in the cybersecurity marketplace. Upon information and belief, Trustwave's revenues in 2010 were US $115 million. *See* **Exhibit C**. Within two years of the 2012 Limited License Agreement, Trustwave's revenue nearly doubled to US $216 million in 2014. *See* **Exhibit F** (https://www.reuters.com/article/us-singtel-m-a-trustwave/singtel-buying-u-s-cyber-security-firm-trustwave-for-810-million-idUSKBN0MY2C820150408).

**SINGTEL'S ACQUISITION AND INTEGRATION OF TRUSTWAVE**

22. The cybersecurity industry began to recognize Trustwave's success following its acquisition of M86 Security's products and services that practice Finjan's Licensed Patents. On or about August 31, 2015, Singtel purchased Trustwave for more than US $810 million (nearly four times Trustwave's 2014 revenues) in order to enter the

cybersecurity and, upon information and belief, Internet-of-Things ("IoT") markets on a global basis.  *See* **Exhibit F**.  Singtel's purchase included the Limited License Agreement.

24. In fact, Trustwave's products and services were so successful that Singtel decided in or about 2018 to integrate all of its cybersecurity products and services under the brand name "Trustwave," recognizing the value of the Trustwave brand and Finjan's patented inventions.  *See* **Exhibit B** ("Singtel today announced that it has pooled the cybersecurity capabilities, technologies and resources of Singtel, Trustwave and NCS into a single global corporate identity operating under the Trustwave brand.").  Today, Trustwave operates as "the global cybersecurity arm of Singtel." *Id.*  Thus, Trustwave and Singtel have realized and enjoyed the value of Finjan's Licensed Patents.

**FINJAN'S U.S. PATENT NO. 8,141,154**

24. On March 20, 2012, the USPTO issued to David Gruzman and Yuval Ben-Itzhak U.S. Patent No. 8,141,154, titled "SYSTEM AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE."  *See* **Exhibit A**.

25. All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.  The '154 Patent has been posted on Finjan's website since as early as December 1, 2013.

26. The '154 Patent is generally directed towards a gateway computer protecting a client computer, such as a laptop, from dynamically generated malicious content.  One of the ways this is accomplished is by using a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.  The '154 Patent discloses and specifically claims inventive concepts that represent significant improvements over conventional network security technology that was available at the time of filing of the '154 Patent and are more than just generic software components performing conventional activities.

7

27. The '154 Patent has successfully withstood multiple invalidity challenges over a number of years. To date, Finjan has successfully defended against seven petitions for *Inter Partes* Review ("IPR") filed before the USPTO's Patent Trial and Appeal Board ("PTAB") challenging various claims of the '154 Patent. Of those seven IPR petitions, four had all challenged claims upheld by the PTAB, and in some cases, by the Federal Circuit (IPR2015-01979, IPR2016-00151, IPR2016-01071, IPR2016-00919); two were denied institution (IPR2015-01547 and IPR2019-00031); and one was terminated due to settlement prior to institution (IPR2016-00937).

28. The '154 Patent has also withstood validity challenges in another District Court. *See e.g.*, *Finjan, Inc. v. Sophos Inc.*, Case No. 14-cv-1197-WHO, ECF No. 407 (N.D. Cal. Oct. 31, 2016) (finding claim 1 of the '154 Patent not invalid and directly infringed).

29. The '154 Patent is also being litigated before the Honorable Maryellen Noreika. Judge Noreika recently issued a Claim Construction Order construing certain terms of the '154 Patent. *Finjan, Inc. v. Rapid7, Inc. et al.*, Case No. 18-cv-1519-MN, ECF No. 123 (D. Del. Feb. 5, 2020).

## ACTS GIVING RISE TO THIS ACTION

30. As detailed below, Singtel and Trustwave have infringed literally or under the doctrine of equivalents, and continue to infringe, have contributed to, and continue to contribute to the infringement of, and have induced, and continue to induce the infringement of the '154 Patent at least by making, using, selling, offering for sale, and/or importing into the United States cybersecurity products and services that infringe one or more claims of the '154 Patent. Defendants' cybersecurity products and services sold under the Trustwave brand include, but are not limited to, Trustwave Secure Web Gateway and Trustwave Secure Email Gateway ("Accused Products"). Discovery may reveal additional Singtel or Trustwave products and services that practice the '154 Patent, and Finjan hereby reserves the right to assert its patent infringement claims against such

Singtel or Trustwave products and services.

31. Singtel and Trustwave received additional actual notice of the '154 Patent on or around November 1, 2015. On November 1, 2015, Finjan provided Trustwave a list of Finjan's patents for potential further licensing, which specifically identified the '154 Patent, as well as the Trustwave products that practiced such patents. Despite having knowledge that their products and services infringed unlicensed Finjan patents, Singtel and Trustwave have ignored, among others, Finjan's '154 Patent rights since that time.

32. On or around December 13, 2019, Finjan again communicated to Trustwave and Singtel that their products and services infringed and continue to infringe Finjan's '154 Patent. In a letter dated December 23, 2019, Finjan enclosed a proof chart setting forth in reasonable detail how the Accused Products infringed the '154 Patent. To date, neither Singtel nor Trustwave has responded to Finjan's letters or emails substantively.

**COUNT I: DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,141,154**

33. Finjan re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

34. Defendants infringed, and continue to infringe, at least Claim 1 of the '154 Patent in violation of 35 U.S.C. § 271(a).

35. Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

36. Defendants' acts of making, using, importing, selling and offering for sale infringing products and services were without the permission, consent, authorization, or license of Finjan.

37. Defendants' infringement includes the manufacture, use, offer for sale, sale, and importation of Defendants' Accused Products.

38. As shown below, the Accused Products practice the patented invention of

the '154 Patent and infringed, and continue to infringe, at least Claim 1 of the '154 Patent because they comprise, include or utilize a system for protecting a computer from dynamically generated malicious content, comprising (1) a content processor for processing content received over a network, the content including a call to a first function, and the call including an input, and for invoking a second function with the input, only if a security computer indicates that such invocation is safe; (2) a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked; and (3) a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

39. For example, as shown below, the Trustwave Secure Email Gateway includes or utilizes a system for protecting a computer from dynamically generated malicious content.

> **Make Email Safer**
>
> Protecting your email environment against spam, malware, phishing attacks, business email compromise, account takeover, ransomware and more is one of your top priorities. Trustwave Secure Email Gateway multi-layered intelligence and detection engine performs deep analysis of your inbound email traffic, in real-time, to protect your users from cyber threats, enables you to integrate the workflow of your email content into business processes , while scrutinizing outbound email traffic to prevent your proprietary data, intellectual property, confidential documents and financial records from electronically leaving the building.

**Exhibit G**
(https://www.trustwave.com/en-us/services/technology/secure-email-gateway/)

> The Trustwave SEG Blended Threat Module uses a number of validation methods, including real-time behavioral analysis and content inspection as well as information from a number of industry standard sources, to identify and block sites that serve suspicious or malicious code.
>
> Because validation is performed in real time by a cloud service when a link is clicked, it provides superior effectiveness in catching and neutralizing new exploits for all users on any device from any location.

**Exhibit G**

40. The Trustwave Secure Email Gateway includes or utilizes a content processor (i) for processing content received over a network, the content including a call to a first function and the call including an input; and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe.

10



**Exhibit H**
(https://www3.trustwave.com/software/MailMarshal_SMTP/SEG_BTM_FAQ.pdf)

      41.      The Trustwave Secure Email Gateway includes or utilizes a transmitter for transmitting the input to the security computer for inspection when the first function is invoked.

> When a user opens a message, if the message is displayed in plain text all links will be visibly altered. HTML messages will not be visibly altered, but hovering over a link shows the rewritten URL.
>
> The URL of the Link Validator cloud service accessed by the email clients is:
> `http://scanmail.trustwave.com/`
>
> When the user clicks a link, the URL is passed to the Trustwave Link Validator for evaluation. An information page displays briefly.

**Exhibit H**

11



**Exhibit H**

42.     The Trustwave Secure Email Gateway includes or utilizes a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

> If the result is "safe", the user is automatically redirected to the original URL.
>
> If the result is "unsafe", a block page displays. In some cases a link with more specific information about the block source is included.

**Exhibit H**



**Exhibit H**



**Exhibit H**

43. To the extent the Accused Products used and/or use a system that includes modules, components or software owned by third parties, the Accused Products still infringe the '154 Patent because Defendants are vicariously liable for the use of the patented system by controlling the entire system and deriving a benefit from the use of every element of the entire system.

44. Defendants' infringement has damaged and continues to damage Finjan in an amount yet to be determined, of at least a reasonable royalty. Further, Defendants' infringement also caused and continues to cause irreparable harm for which there is no adequate remedy at law. Finjan, Finjan's licensees, and Defendants all compete in the cybersecurity marketplace. Defendants' continued infringement is severely impeding Finjan's efforts to develop and provide competitive products and services in the cybersecurity marketplace. Defendants' continued infringement is also eroding the value of the patent licenses Finjan has conferred to its licensees.

45. Defendants have been aware of Finjan's patents, including the '154 Patent, for years and continued their unauthorized infringing activity despite this knowledge. As discussed above, Finjan notified Trustwave and Singtel regarding Defendants' infringement of the '154 Patent as early as November 2015. Even after being shown that their products infringe the '154 Patent, on information and belief, Defendants made no effort to avoid infringement. Instead, Defendants continued to incorporate their

13

infringing technology into their products and services, such as those identified in this Complaint. All of these actions demonstrate the Defendants' disregard for Finjan's patent rights. As such, Defendants acted recklessly, willfully, wantonly, and deliberately engaged in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

### COUNT II: INDIRECT INFRINGEMENT OF U.S. PATENT NO. 8,141,154

46. Finjan realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

47. Defendants have indirectly infringed and continue to indirectly infringe— either by having induced or contributed to, and continuing to induce or contributing to the infringement of—at least Claim 1 of the '154 Patent in violation of 35 U.S.C. § 271(b) for inducement of infringement and § 271(c) for contributory infringement.

48. Defendants indirectly infringe the '154 Patent by instructing, directing and/or requiring others, including, but not limited to, its customers, users and developers to use or include some of the components of the system claims, either literally or under the doctrine of equivalents, of the '154 Patent, where all components are included or utilized by Defendants or their customers, users, or developers, or some combination thereof.

49. Defendants knew or were willfully blind to the fact that they were inducing others, including customers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more claims of the '154 Patent.

50. Defendants knowingly and actively aided and abetted the direct infringement of the '154 Patent by instructing and encouraging its customers, users and developers to use the Accused Products, including the Trustwave Secure Email Gateway. Such instructions and encouragement include, but are not limited to, advising third parties

14

to use the Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '154 Patent (*e.g.*, through the use of the Trustwave Secure Email Gateway), advertising and promoting the use of the Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Accused Products in an infringing manner.

51. For example, Defendants provide customers, users and developers with case studies, e-books, datasheets, whitepapers, overviews, perspectives, tips and tricks, and other instructions advertising, promoting and encouraging the use of the Accused Products on its websites at trustwave.com and singtel.com (which redirects to trustwave.com). *See e.g.*, **Exhibit I** (https://trustwave.azureedge.net/media/16574/secure-email-gateway-spe_letter-final.pdf?rnd=132260111910000000), **Exhibit J** (https://trustwave.azureedge.net/media/16425/secure-email-gateway-cloud.pdf?rnd=132180474070000000).

## PRAYER FOR RELIEF

WHEREFORE, Finjan respectfully requests entry of judgment as follows:

A. Declaring that Defendants have infringed U.S. Patent No. 8,141,154, directly and indirectly, by way of inducement or contributory infringement, literally or under the doctrine of equivalents;

B. Declaring that Defendants and all affiliates, employees, agents, officers, directors, attorneys, successors and assigns and all those acting on behalf of or in active concert or participation with any of them, be enjoined from infringing U.S. Patent No. 8,141,154 and from inducing the infringement of U.S. Patent No. 8,141,154, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C. An award of such past damages, not less than a reasonable royalty, that is sufficient to fully compensate Finjan for Defendants' infringement under 35 U.S.C. § 284;

  D. A finding that Defendants' infringement has been willful, wanton and deliberate, and that the damages against Defendants be increased up to treble on this basis or for any other basis in accordance with the law;

  E. A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

  F. An accounting of all infringing sales and revenues, together with prejudgment and post-judgment interest from the first date of infringement of U.S. Patent No. 8,141,154; and

  G. Such further and other relief as the Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Finjan hereby demands a jury trial on all issues so triable.

            Respectfully submitted,

            */s/ Karen E. Keller*
            Karen E. Keller (No. 4489)
            SHAW KELLER LLP
            I.M. Pei Building
            1105 North Market Street, 12th Floor
            Wilmington, DE 19801
            (302) 298-0700
            kkeller@shawkeller.com

OF COUNSEL:        *Attorneys for Plaintiff Finjan, Inc.*
Bijal Vakil
WHITE & CASE LLP
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306
(650) 213-0300

Dated: March 16, 2020