## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AETHER THERAPEUTICS INC.,<br><br>                        Plaintiff,<br><br>        v.<br><br>ASTRAZENECA AB, ASTRAZENECA PHARMACEUTICALS LP, NEKTAR THERAPEUTICS, and DAIICHI-SANKYO, INC.<br><br>                        Defendants. | Case No.<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Aether Therapeutics Inc., by and through its counsel, files this Complaint against AstraZeneca AB, AstraZeneca Pharmaceuticals LP, Nektar Therapeutics, LLC, and Daiichi-Sankyo, Inc. (collectively, "Defendants") for infringement of United States patent nos. 6,713,488 ("the '488 patent"), 8,748,448 ("the '448 patent"), 8,883,817 ("the '817 patent"), and 9,061,024 ("the '024 patent") (collectively, the "patents-in-suit"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of the patents-in-suit arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.* Specifically, this action relates to patents directed to the use of naltrexone and naloxone analogs, which are neutral antagonists at the μ opioid receptor, for the treatment of various complications associated with the use of opioid agonists.

## PARTIES

2.      Plaintiff Aether Therapeutics Inc. is a Delaware corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 4200 Marathon Boulevard, Austin, Texas 78756.

3.      On information and belief, AstraZeneca AB is a public limited liability company organized under the laws of Sweden with its principal place of business at Karlebyhus, Astraallén, Södertälje, S-151 85, Sweden. AstraZeneca AB is the parent company to AstraZeneca Pharmaceuticals LP.

4.      On information and belief, AstraZeneca Pharmaceuticals LP is a limited partnership organized and existing under the laws of the State of Delaware, having a principal place of business at 1800 Concord Pike, Wilmington, Delaware 19850. AstraZeneca Pharmaceuticals LP is a wholly-owned subsidiary of AstraZeneca AB.

5.      On information and belief, Nektar Therapeutics is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 455 Mission Bay Boulevard South, San Francisco, California 94158.

6.      On information and belief, Daiichi Sankyo, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at Two Hilton Court, Parsippany, New Jersey 07054.

7.      On information and belief, AstraZeneca Pharmaceuticals LP holds approved New Drug Application No. 204760, covering Movantik® (Naloxegol Oxalate, 12.5 mg and 25mg), develops, manufactures, distributes, sells, and/or imports drug

products for the entire United States market, and does business in every state, including Delaware, either directly or indirectly.

8.      On information and belief, AstraZeneca AB develops, manufactures, distributes, sells, and/or imports drug products for the entire United States market and does business in every state, including Delaware, either directly or indirectly.

9.      On information and belief, Nektar Therapeutics assisted with the development of the drug covered by approved New Drug Application No. 204760 for Movantik® (Naloxegol Oxalate, 12.5 mg and 25mg); is entitled to a financial share of Movantik's® sales in the United States through its partnership and licensing agreement with AstraZeneca; develops drug products for the entire United States market; and does business in every state, including Delaware, either directly or indirectly.

10.      On information and belief, Daiichi-Sankyo, Inc. assists with the marketing and sales of the drug covered by approved New Drug Application No. 204760 for Movantik® (Naloxegol Oxalate, 12.5 mg and 25mg); is entitled to a financial share of Movantik's® sales in the United States through its partnership with AstraZeneca; develops drug products for the entire United States market; and does business in every state, including Delaware, either directly or indirectly.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this is a patent infringement action that arises under the patents laws of the United States, 35 U.S.C. §§ 100 *et seq.*

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b) because, among other things, AstraZeneca Pharmaceuticals LP, Nektar Therapeutics, and Daiichi-Sankyo, Inc. are incorporated in the State of Delaware and, therefore, reside in this judicial district.

13.     AstraZeneca AB is a foreign corporation not residing in any United States judicial district and may be sued in any judicial district pursuant 28 U.S.C. § 1391(c).

**PERSONAL JURISDICTION OVER ASTRAZENECA PHARMACEUTICALS LP**

14.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

15.     This Court has personal jurisdiction over AstraZeneca Pharmaceuticals LP, in part, because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Delaware.

16.     Specifically, AstraZeneca Pharmaceuticals LP's drug product Movantik® is used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Movantik® is administered by medical professionals practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities has a substantial effect within Delaware, as they constitute infringement, directly and indirectly, of the patents-in-suit.

17.     Additionally, AstraZeneca Pharmaceuticals LP manufactures, develops, and sells other pharmaceutical products and does business throughout the United States, including Delaware.

18.     Further, AstraZeneca Pharmaceuticals LP previously consented to the jurisdiction of the United States District Court for the District of Delaware and asserted claims in lawsuits filed in the district. *See, e.g., AstraZeneca AB et al. v. Aurobindo Pharma USA Inc.,* No. 19-cv-02113 (D. Del. 2019); *AstraZeneca AB et al. v. Apotex Inc. et al.,* No. 18-cv-02010 (D. Del. 2018); and *Cipla Limited et al. v. AstraZeneca AB et al,* No. 19-cv-00438 (D. Del. 2019).

19.     Thus, AstraZeneca Pharmaceuticals LP has purposefully availed itself of the privileges of conducting business in Delaware and within this judicial district; has established sufficient minimum contacts in Delaware and within this judicial district such that it should reasonably and fairly anticipate being hauled into court in Delaware and in this judicial district; has purposefully directed activities at residents of Delaware and this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

20.     Accordingly, this Court has personal jurisdiction over AstraZeneca Pharmaceuticals LP because, *inter alia*, AstraZeneca Pharmaceuticals LP, on information and belief: (1) has committed acts of patent infringement in the State of Delaware and in this judicial district; (2) has substantial, regularly conducted and systematic business contacts in the State of Delaware and in this judicial district; (3) owns, manages, and markets Movantik® products in the State of Delaware and in this judicial district; and (4) enjoys substantial income from the sale of Movantik® products in the State of Delaware and in this judicial district.

## PERSONAL JURISDICTION OVER ASTRAZENECA AB

21.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

22.     This Court has personal jurisdiction over AstraZeneca AB, in part, because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Delaware.

23.     Specifically, AstraZeneca AB's agent, AstraZeneca Pharmaceuticals LP, manufactures and sells the drug product Movantik®, which is used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Movantik® is administered by medical professionals practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities has a substantial effect within Delaware, as they constitute infringement, directly and indirectly, of the patents-in-suit.

24.     Additionally, AstraZeneca AB sells various pharmaceutical products and does business throughout the United States, including within this district.

25.     Further, AstraZeneca AB previously consented to the jurisdiction of the United States District Court for the District of Delaware and asserted claims in lawsuits filed in this district. *See, e.g., AstraZeneca AB et al. v. Aurobindo Pharma USA Inc.*, No. 19-cv-02113 (D. Del. 2019); *AstraZeneca AB et al. v. Apotex Inc. et al.*, No. 18-cv-02010 (D. Del. 2018); and *Cipla Limited et al. v. AstraZeneca AB et al.*, No. 19-cv-00438 (D. Del. 2019).

26.     Thus, AstraZeneca AB has purposefully availed itself of the privileges of conducting business in Delaware and within this judicial district; has established

sufficient minimum contacts in Delaware and within this judicial district such that it should reasonably and fairly anticipate being hauled into court in Delaware and in this judicial district; has purposefully directed activities at residents of Delaware and this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

27.     In sum, this Court has personal jurisdiction over AstraZeneca AB because, *inter alia*, AstraZeneca AB, on information and belief: (1) has committed acts of patent infringement in the State of Delaware and in this judicial district; (2) has substantial, regularly conducted and systematic business contacts in the State of Delaware and in this judicial district; (3) owns, manages, and markets Movantik® products in the State of Delaware and in this judicial district; and (4) enjoys substantial income from the sale of Movantik® products in the State of Delaware and in this judicial district.

28.     Alternatively, to the extent the above facts do not establish personal jurisdiction over AstraZeneca AB, this Court may exercise jurisdiction over AstraZeneca AB pursuant to Fed. R. Civ. P. 4(k)(2) because: (a) Aether's claims arise under federal law; (b) AstraZeneca AB is a foreign defendant not subject to personal jurisdiction in the courts of any State; and (c) AstraZeneca AB has sufficient contacts with the United States as a whole, including, but not limited to, filing New Drug Applications with the FDA and manufacturing and selling pharmaceutical products through subsidiaries that are distributed throughout the United States, such that this Court's exercise of jurisdiction over AstraZeneca AB satisfies due process.

## PERSONAL JURISDICTION OVER NEKTAR THERAPEUTICS

29.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

30.     This Court has personal jurisdiction over Nektar Therapeutics, in part, because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Delaware.

31.     Specifically, Nektar Therapeutics licensed its product, technology, and patents, as well as worked and continues to work in concert with AstraZeneca Pharmaceuticals LP to develop, manufacture, and sell Movantik®, which is used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Movantik® is administered by medical professionals practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities has a substantial effect within Delaware, as they constitute infringement, directly and indirectly, of the patents-in-suit.

32.     Further, Nektar Therapeutics previously availed itself the jurisdiction of the United States District Court for the District of Delaware and asserted claims in lawsuits filed in the district. *See, e.g., AstraZeneca AB, et al. v. Aurobindo Pharma USA Inc.,* No. 19-cv-02113 (D. Del. 2019).

33.     Thus, Nektar Therapeutics has purposefully availed itself of the privileges of conducting business in Delaware and within this judicial district; has established sufficient minimum contacts in Delaware and within this judicial district such that it should reasonably and fairly anticipate being hauled into court in Delaware and in this

judicial district; has purposefully directed activities at residents of Delaware and this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

34.     In sum, this Court has personal jurisdiction over Nektar Therapeutics because, *inter alia*, Nektar Therapeutics, on information and belief: (1) has committed acts of patent infringement in the State of Delaware and in this judicial district; (2) has substantial, regularly conducted and systematic business contacts in the State of Delaware and in this judicial district; and (3) enjoys substantial income from the sale of Movantik® products in the State of Delaware and in this judicial district.

## PERSONAL JURISDICTION OVER DAIICHI-SANKYO, INC.

35.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

36.     This Court has personal jurisdiction over Daiichi-Sankyo, Inc., in part, because a substantial part of the events giving rise to the claims alleged in this Complaint occurred in Delaware.

37.     Specifically, Daiichi-Sankyo, Inc., in partnership with AstraZeneca Pharmaceuticals LP, manufactures, markets, and sells the drug product Movantik®, which is used and/or consumed within and throughout the United States, including in Delaware. On information and belief, Movantik® is administered by medical professionals practicing in Delaware, dispensed by pharmacies located within Delaware, and used by patients in Delaware. Each of these activities has a substantial

effect within Delaware, as they constitute infringement, directly and indirectly, of the patents-in-suit.

38.     Additionally, Daiichi-Sankyo, Inc. sells various pharmaceutical products and does business throughout the United States, including within this district.

39.     Further, Daiichi-Sankyo, Inc. previously consented to the jurisdiction of the United States District Court for the District of Delaware and asserted claims in lawsuits filed in this district. *See, e.g., Daiichi Sankyo, Inc. et al. v. Watson Pharmaceuticals Inc. et al.,* No. 11-cv-00345 (D. Del. 2011).

40.     Thus, Daiichi-Sankyo, Inc. has purposefully availed itself of the privileges of conducting business in Delaware and within this judicial district; has established sufficient minimum contacts in Delaware and within this judicial district such that it should reasonably and fairly anticipate being hauled into court in Delaware and in this judicial district; has purposefully directed activities at residents of Delaware and this judicial district; and at least a portion of the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities.

41.     In sum, this Court has personal jurisdiction over Daiichi-Sankyo, Inc. because, *inter alia*, Daiichi-Sankyo, Inc., on information and belief: (1) has committed acts of patent infringement in the State of Delaware and in this judicial district; (2) has substantial, regularly conducted and systematic business contacts in the State of Delaware and in this judicial district; (3) in partnership with AstraZeneca Pharmaceuticals LP owns, manages, and markets Movantik® products in the State of

Delaware and in this judicial district; and (4) enjoys substantial income from the sale of

Movantik® products in the State of Delaware and in this judicial district.

## BACKGROUND

### The Patents-in-Suit

42.     Wolfgang Sadee, Dr. rer. nat., is Professor and Vice-Chair, Cancer Biology

and Genetics, in the College of Medicine, at The Ohio State University, previously the

Felts Mercer Professor of Medicine and Pharmacology with appointments in Psychiatry,

Pharmacy, and Public Health, the Davis Heart & Lung Research Institute, and Ohio

State University Comprehensive Cancer Center.

43.     Dr. Sadee received a doctorate degree in Pharmaceutical Chemistry from

Freie Universität Berlin in 1968, and then served on the pharmacy faculties at the

University of Southern California and University of California-San Francisco until 2002.

Dr. Sadee's research interests include pharmacogenetics-pharmacogenomics of drug

receptors and transporters, genetics of drug addiction, central nervous system

disorders, cardiovascular diseases, cancer and chemogenomics and anticancer drug

discovery, and development of drug addiction treatments.

44.     Dr. Sadee has published over 400 research papers, chapters, and

monographs, and he holds multiple patents. As part of his research, Dr. Sadee

developed novel drug candidates for opioid induced bowel dysfunction, opioid

addiction, and neonatal abstinence syndrome.

45.     To further the development of his research efforts, Dr. Sadee co-founded

Aiko Biotechnology ("Aiko") with Edward Bilsky, Ph.D in 2006 with the hope that

commercialization could provide the funding necessary to continue their critical research.

46.     Aiko was a drug discovery company founded to characterize and validate therapeutic candidates for the management of pain, addiction, and adverse side effects resulting from prescription opioid pain reliever use. Its ultimate goal was to obtain FDA approval for its product.

47.     Aiko continued to develop this opioid receptor pharmacology, and Aiko documented this research in the papers and patents of Drs. Sadee, Bilsky, Wang, and Yancey-Wrona.

48.     Accordingly, the patents-in-suit are the result of the inventors' years of researching, designing, and developing therapeutic drug candidates for the treatment of pain, addiction, and side effects associated with opioid use.

49.     Dr. Sadee co-founded Aether Therapeutics to develop further the novel patented drug technology that he and his co-inventors and colleagues had been researching and developing, and its ultimate goal remains obtaining FDA approval for its drug so that millions of people can benefit from Dr. Sadee's groundbreaking research.

## United States Patent No. 6,713,488

50.     U.S. patent no. 6,713,488, entitled "Neutral antagonists and use thereof in treating drug abuse," (attached as Exhibit 1), was duly and legally issued on March 30, 2004.

51.     The inventors named on the '488 patent are Wolfgang Sadee and Danxin Wang.

52.     The '488 patent will expire on March 15, 2021.

53.     The '488 patent covers the use of naltrexone and naloxone analogs, which are neutral antagonists at the μ opioid receptor, for the treatment of various side effects associated with opioid use.

54.     The claims of the '488 patent are valid, enforceable, and not expired.

55.     All rights, title and interests in the '488 patent are owned by and assigned to Aether.

### United States Patent No. 8,748,448

56.     U.S. patent no. 8,748,448, entitled "Combination analgesic employing opioid agonist and neutral antagonist," (attached as Exhibit 2), was duly and legally issued on June 10, 2014.

57.     The '448 patent will expire on October 17, 2028.

58.     The inventors named on the '448 patent are Wolfgang Sadee, Edward Bilsky, and Janet Yancey-Wrona.

59.     The '448 patent covers the use of non-addictive analgesic co-formulation, co-administration and separate, but overlapping administration comprising an opioid agonist and a neutral opioid antagonist to inhibit peripheral and central effects of the opioid in a mammalian subject (such as a human).

60.     The claims of the '448 patent are valid, enforceable, and not expired.

61.     All rights, title and interests in the '448 patent are owned by and assigned to Aether Therapeutics.

## United States Patent No. 8,883,817

62.     U.S. patent no. 8,883,817, entitled "Combination analgesic employing opioid and neutral antagonist," (attached as Exhibit 3), was duly and legally issued on November 11, 2014.

63.     The '817 patent will expire on May 18, 2031.

64.     The inventors named on the '817 patent are Wolfgang Sadee, Edward Bilsky, and Janet Yancey-Wrona.

65.     The '817 patent covers a non-addictive analgesic co-formulation, co-administration and separate, but overlapping administration comprising an opioid agonist in an amount sufficient to confer analgesia in a mammalian subject and a neutral opioid antagonist in an amount sufficient to inhibit peripheral effects, and insufficient to block substantial central effects, of the opioid agonist in the subject.

66.     The claims of the '817 patent are valid, enforceable, and not expired.

67.     All rights, title and interests in the '817 patent are owned by and assigned to Aether.

## United States Patent No. 9,061,024

68.     U.S. patent no. 9,061,024, entitled "Combination analgesic employing opioid and neutral antagonist," (attached as Exhibit 4), was duly and legally issued on June 23, 2015.

69.     The '024 patent will expire on October 17, 2028.

14

70.     The inventors named on the '024 patent are Wolfgang Sadee, Edward Bilsky, and Janet Yancey-Wrona.

71.     The '024 patent covers a method of providing an opioid agonist to a mammalian subject in a manner that inhibits peripheral effects of the opioid agonist, without blocking substantial central effects.

72.     The claims of the '024 patent are valid, enforceable, and not expired.

73.     All rights, title and interests in the '024 patent are owned by and assigned to Aether Therapeutics.

### Movantik®

74.     On information and belief, Defendants sell Movantik® with an insert containing Prescribing Information (the "Movantik® Label"), which details, among other things, the indication, dosing and risks associated with Movantik®. *See generally* Movantik® Label (attached as Exhibit 5).

75.      The Movantik® Label states that Movantik® is indicated for the treatment of opioid-induced constipation (OIC) in adult patients with chronic non-cancer pain. *Id.* at 1 (Indications and Usage).

76.     Movantik® (naloxegol) tablets for oral use contain 14.2 mg and 28.5 mg of naloxegol oxalate, respectively equivalent to 12.5 mg and 25 mg of naloxegol. *Id.* at 9 (Description).

77.     The recommended daily dosage for Movantik® is 25 mg taken once daily in the morning. *Id.* at 2 (Adult Dosage).

78.     Movantik® is taken on an empty stomach at least 1 hour prior to the first

meal of the day or 2 hours after the meal. *Id.* at 2 (Administration).

79.     Movantik®'s active ingredient is naloxegol. *Id*. at 19.

80.     Naloxegol is a PEGylated analog of naloxone. *See* Nektar 2006 Annual

Report, p. 5 (2006) (attached as Exhibit 6).

81.     Naloxegol has the following chemical structure:



The chemical name for naloxegol oxalate is: (5α,6α)-17-allyl-6-(2,5,8,11,14,17,20-heptaox-adocosan-22-yloxy)-4,5-epoxymorphinan-3,14-diol oxalate. The structural formula is:

The empirical formula for naloxegol oxalate is $C_{34}H_{53}NO_{11}.C_2H_2O_4$ and the molecular weight is 742.

*See* Movantik® Label at 8-9 (Description).

82.     Naloxegol is a neutral competitive antagonist of the µ-opioid receptor. *See*

*id*.

83.     Naloxegol functions as a peripherally-acting µ-opioid receptor antagonist

in tissues such as the gastrointestinal tract, thereby decreasing the constipating effects of

opioids. *Id*.

**Willful Infringement**

84.     Around 2008, seeking partners to assist with the clinical development of

its technology, Aiko contacted Nektar about forming a partnership to help bring its

groundbreaking technology to market. Aiko knew that Nektar had similar goals of

developing opioid antagonist compounds for the treatment of side effects associated with the use of opioids.

85.     On about April 16, 2008, four years after the USPTO issued the '488 patent, Aiko met with Nektar to discuss this potential licensing opportunity. Aiko brought with it a presentation that discussed its technology and patents. Aiko provided Nektar with a copy of its presentation.

86.     Aiko explained its technology to Nektar, which is a "[t]reatment for moderate to severe pain while preventing or treating the GI side effects and conferring abuse resistance of the prescription pain reliever."

87.     Those side effects included "[o]pioid-induced bowel dysfunction" such as constipation that was "suffered by over 90% of those using opioid therapies."

88.     Aiko showed its lead compound was an improvement on over other compounds, based on a combination of multiple favorable characteristics: (1) favorable toxicity and pharmacokinetics data; (2) broad therapeutic window; (3) improved oral bioavailability; (4) a longer in-vivo half-life; (5) a higher potency and selectivity; and (6) true neutral activity.

89.     Aiko also explained that Nektar's NKTR-118 compound, which would eventually become Movantik®, would infringe the '488 patent when approved and sold on the marketplace. Aiko extended an opportunity for Nektar to take a license so that both parties could collaborate moving forward.

90.     Instead of taking a license, Nektar refused the partnership with full knowledge that the launch of its product would infringe the '488 patent.

17

91.     On information and belief, Nektar Therapeutics unjustly enriched itself by using the information gained from Aiko and entered into a worldwide licensing agreement with AstraZeneca AB and AstraZeneca Pharmaceuticals, on September 21, 2009, to develop, manufacture, and commercialize the developmental drug that eventually became Movantik®. *See* https://www.astrazeneca.com/media-centre/press-releases/2009/AstraZeneca-and-Nektar-Sign-Worldwide-Agreement-for-Nektar-21092009.html#.

92.     Defendants announced that they had reached an exclusive worldwide license for two drug development programs: NKTR-118, a late-stage investigational product being evaluated for the treatment of opioid-induced constipation, and the NKTR-119 program, an early-stage program intended to deliver products for the treatment of pain without constipation side effects. *Id.*

93.     Under the agreement, AstraZeneca would further develop both technologies, including initiation of late-stage clinical studies for NKTR-118. *Id.* AstraZeneca was also responsible for global manufacturing and marketing of both technologies. *Id.*

94.     Under the agreement, Nektar, through the knowledge gained from Aiko, unjustly enriched itself and received an upfront payment of $125 million for both NKTR-118 and NKTR-119 and another $100 million as a milestone payment in 2015. Nektar was also eligible for another $610 million if NKTR-118 achieved certain milestones in commercial sales. Nektar is also entitled to receive 20% royalty payments, which escalates with net sales of NKTR-118 worldwide. *Id.*

95.     On its website, Nektar identifies defendants AstraZeneca and Daiichi-Sankyo as its "partners" with respect to Movantik® and describes the relationship among the parties. Specifically, Nektar represents to the public that "[u]nder [its] global agreement with AstraZeneca, AstraZeneca is responsible for all development and commercialization. We receive escalating royalties on net U.S. sales of Movantik starting at 20 percent. We are also eligible to receive additional tiered sales milestone payments based upon global net revenue of Movantik®." Nektar notes that "MOVANTIK is a trademark of the AstraZeneca group of companies." Nektar also states that "AstraZeneca and their partner, Daiichi Sankyo, provide Movantik in the U.S." *See* https://www.nektar.com/medicines/us-medicines-marketed-our-partners. Accordingly, Defendants are acting in concert in the manufacture, marketing, promotion, and sale of Movantik® in the United States, and infringing the patents-in-suit.

96.     On information and belief, Nektar provided to AstraZeneca AB, AstraZeneca Pharmaceuticals LP, and Daiichi-Sankyo, Inc., a copy of the Aiko presentation, so all Defendants have full knowledge of Nektar's infringement of the '488 patent.

97.     On information and belief, since at least as early as the time during their licensing negotiations with Nektar in 2009, AstraZeneca AB and AstraZeneca Pharmaceuticals LP have had actual knowledge of the '488 patent.

98.     On information and belief, since at least as early as the time during their

co-commercialization agreement with AstraZeneca in 2015, Daiichi-Sankyo, Inc. has

had actual knowledge of the '488 patent.

99.     The FDA approved Nektar's drug product formulation for NKTR-118,

Movantik®, on September 16, 2014.

## PATENT INFRINGEMENT

## Infringement of United States Patent No. 6,713,488

100.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth

here.

101.    On information and belief, and without authority, consent, right, or

license, Defendants infringe one or more claims, including claims 25, 26 and 29, of the

'488 patent under § 271(a), either literally or under the doctrine of equivalents, by

making, using, offering to sell, selling and/or importing Movantik®, and/or by actively

inducing infringement by others under § 271(b) and/or contributing to infringement

under § 271(c).

102.    For example, claim 25 covers:

A method of alleviating adverse effects associated with opioid use by an
individual in need thereof comprising administration to the individual of a
therapeutically effective amount of a naloxone analog or naltrexone analog or a
pharmaceutically acceptable salt thereof which is a neutral antagonist at the µ
opioid receptor.

103.    Movantik® and its use meet the claim requirement for "[a] method of

alleviating adverse effects associated with opioid use by an individual in need thereof"

as evidenced by the Movantik® Label, which states that:

Movantik® is an opioid antagonist indicated for the treatment of opioid-induced constipation (OIC) in adults patients with chronic non-cancer pain, including patients with chronic pain related to prior cancer or its treatment who do not require frequent opioid dosage escalation. Movantik® is indicated for treatment of opioid-induced constipation (OIC) in adult patients with chronic non-cancer pain, including patients with chronic pain related to prior cancer or its treatment who do not require frequent opioid dosage escalation.

*See* Movantik® Label at 1, 2.

104.    Movantik® and its use meet the claim requirement for "administration to the individual of a therapeutically effective amount of a naloxone analog or naltrexone analog or a pharmaceutically acceptable salt thereof" as evidenced by the label, which states that Movantik® (naloxegol), an opioid antagonist, contains naloxegol oxalate as the active ingredient and further provides a therapeutically effective amount as it sets forth the recommended daily dosage. *Id.* at 9, and *see* Exhibit 6 at 5 ("NKTR-118 is an oral PEGylated formulation of an analog of naloxone.").

105.    The chemical structure of naloxegol, which is the active ingredient in Movantik®, falls within the chemical structure of Formula 1 of the naloxone analogs described in the '488 patent, Col. 5, ll. 65 – Col. 6, ll. 43.

106.    The naloxegol compound present in Movantik® meets the claim requirement for "a neutral antagonist at the μ opioid receptor" as publically available literature notes that "Naloxegol binds to the human μ opioid receptor with high affinity, acting as a competitive neutral antagonist." *See* Floettmann et al., *Pharmacologic Profile of Naloxegol, a Peripherally Acting μ-Opioid Receptor Antagonist, for the Treatment of Opioid-Induced Constipation*, 361 J. OF PHARMACOL AND EXP THER, 280-91 (2017) ("Floettmann")(attached as Exhibit 7).

107.    Defendants have known of the '488 patent at least as early as April 16, 2008, if not earlier, when Aiko notified defendant Nektar of the '488 patent.

108.    On information and belief, Defendants know that the Movantik® Label induces infringement of the '488 patent.

109.    Defendants, acting without authority, consent, right, or license of the '488 patent, have induced, and continue to induce patients to administer and use Movantik®, which directly infringes one or more claims of the '488 patent resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(b).  More specifically, patients and medical professionals directly infringe (literally and/or under the doctrine of equivalents) at least claims 25, 26 and 29 of the '488 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

110.    Defendants possessed, and continue to possess, specific intent to induce infringement by providing to the public, at a minimum, the Movantik® Label, which provides instructions on how to use Movantik® in a manner that infringes directly the '488 patent.

111.    Defendants have actively induced and encouraged, and continue to actively induce and encourage, medical professionals to prescribe Movantik® to patients, and patients to use Movantik® by marketing, promoting and advertising the infringing use of Movantik®.

112.    Upon information and belief, Defendants know that Movantik® and its labeling are especially made or adapted for use in infringing the '488 patent, that

Movantik® is not a staple article or commodity of commerce, and that Movantik® and

its labeling are not suitable for substantial noninfringing use, resulting in conduct that

constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More

specifically, patients or medical professionals directly infringe (literally and/or under

the doctrine of equivalents) at least claims 25, 26 and 29 of the '488 patent by using

Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement

under 35 U.S.C. § 271(a).

113.    Defendants' foregoing actions constitute and/or will constitute

infringement of the '488 patent, active inducement of infringement of the '488 patent,

and contribution to the infringement by others of the '488 patent.

114.    Upon information and belief, Defendants have acted with full knowledge

of the '488 patent and without a reasonable basis for believing that they would not be

liable for infringement of the '488 patent, active inducement of infringement of the '488

patent, and/or contribution to the infringement by others of the '488 patent.

115.    Plaintiff reserves the right to assert additional claims of the '488 patent

that Defendants infringe.

116.    Plaintiff has been damaged as a result of Defendants' infringing conduct.

Defendants are, thus, liable to Plaintiff in an amount that adequately compensates for

their infringement, which, by law, cannot be less than a reasonable royalty, together

with interest and costs as fixed by this Court under 35 U.S.C. § 284.

117.    On information and belief, Defendants have willfully infringed the '488

patent. Plaintiff is entitled to increased damages of three times the damages assessed

pursuant to 35 U.S.C. § 284, as well as an award of attorney's fees pursuant to 35 U.S.C.

§ 285.

## Infringement of United States Patent No. 8,748,448

118.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth

here.

119.    On information and belief, and without authority, consent, right, or

license, Defendants infringe one or more claims, including claims 1, 2, 4, 5, 9 and 11, of

the '448 patent under § 271(a), either literally or under the doctrine of equivalents, by

making, using, offering to sell, selling and/or importing Movantik®, and/or by actively

inducing infringement by others under § 271(b) and/or contributing to infringement

under § 271(c).

120.    For example, claim 1 covers:

A unit dosage of an analgesic composition, formulated for oral administration to
a subject, comprising: (a) an opioid agonist in an amount sufficient to confer
analgesia in the subject; (b) a non-aversive neutral opioid antagonist in an
amount sufficient to substantially inhibit peripheral effects and insufficient to
block substantial central effects of the agonist in the subject, wherein the
amounts of the neutral opioid antagonist and the opioid agonist are selected so
that a weight/weight (w/w) ratio of (1) an amount of 6β-naltrexol equivalent to
the amount of neutral opioid antagonist di-vided by (2) an amount of morphine
equivalent to the opioid agonist is at least 1.0, and the opioid antagonist is
selected to have a blood half-life that is substantially longer than the blood half-
life of the opioid agonist, so as to deter abuse resulting from overly frequent
administration of the unit dosage; and (c) a pharmaceutically acceptable carrier.

121.    The '448 patent directly teaches "co-administration of the agonist with the

antagonist, or separate but overlapping administration of the agonist with the neutral

antagonist, wherein such co-formulation, co-administration or separate administration

is uniquely designed to address both addiction liability of the opioid and peripheral

side effects, such as constipation." *See* '448 patent at Col. 2, ll. 55-63.

122.    Movantik® meets the requirement for a unit dosage of an analgesic

composition having "an opioid agonist in an amount sufficient to confer analgesia in

the subject" as evidenced by the Movantik® website, which directs patients and doctors

as to the use and administration of Movantik®:  "Movantik® is used with an analgesic,

which would be expected to be in an amount sufficient to confer analgesia to the

subject." *See* https://www.movantik.com/ about.html. In fact, the Movantik® Label

specifically discusses the co-administration of an analgesic including, for example,

Morphine. *See* Movantik® Label at 12.3.

123.    The chemical structure of naloxegol, which is the active ingredient in

Movantik®, falls within the chemical structure of Formula 1β of the naloxone analogs

described in the '448 patent, col. 5, ll. 53 – col. 6, ll. 52.

124.    Movantik® meets the requirement for a unit dosage having "a non-

aversive neutral opioid antagonist in an amount sufficient to substantially inhibit

peripheral effects and insufficient to block substantial central effects of the agonist in

the subject" as evidenced by the literature stating that "[n]aloxegol functions as a

peripherally-acting μ-opioid receptor agonist in tissues such as the gastrointestinal tract,

thereby decreasing the constipating effects of opioids." *See* Movantik® Label at 10; *See*

*also* Exhibit 7, Floettmann at 280 ("Naloxegol binds to the human μ opioid receptor with

high affinity, acting as a competitive neutral antagonist.")

125.    Movantik® meets the requirement for a unit dosage having "the amounts of the neutral opioid antagonist and the opioid agonist . . . selected so that a weight/weight (w/w) ratio of (1) an amount of 6β-naltrexol equivalent to the amount of neutral opioid antagonist divided by (2) an amount of morphine equivalent to the opioid agonist is at least 1.0, and the opioid antagonist is selected to have a blood half-life that is substantially longer than the blood half-life of the opioid agonist, so as to deter abuse resulting from overly frequent administration of the unit dosage" as evidenced by the label stating that "[p]atients receive an opioid morphine equivalent daily dose of between 30 mg and 1,000 mg for at least four weeks before enrollment and self-reported OIC were eligible to participate. A total of 652 patients in Study 1 and 700 patients in Study 2 were randomized in a 1:1:1 ration to receive 12.5 mg or 25 mg of Movantik® or placebo once daily for 12 weeks." *See* Movantik® Label at 17. The Movantik® Label specifically discusses the co-administration of an analgesic within the claimed weight ratios including, for example, Morphine. *See* Movantik® Label at 12.3.

126.    Movantik® meets the requirement for a unit dosage having "a pharmaceutically acceptable carrier" as evidenced by the label stating that "[t]he tablet core contains mannitol, cellulose microcrystalline, croscarmellose sodium, magnesium stearate, and propyl gallate. The tablet coat contains hypromellose, titanium dioxide, polyethylene glycol, iron oxide red, and iron oxide black" ("Movantik (naloxegol) is available in two strengths: Tablets: 12.5 mg supplied as mauve, oval, biconvex, film-coated, intagliated with "nGL" on one side and "12.5" on the other side. Tablets: 25 mg

supplied as mauve, oval, biconvex, film-coated, intagliated with "nGL" on one side and "25" on the other side.") *See Id*. at 3 and 19.

127.    On information and belief, the analgesics co-administered with Movantik® include a pharmaceutically acceptable carrier.

128.    On information and belief, Defendants know that the Movantik® Label induces infringement of the '448 patent.

129.    Defendants, acting without authority, consent, right, or license of the '448 patent, have induced, and continue to induce patients to administer and use Movantik® in co-administration or concomitant administration with an opioid agonist in a manner that directly infringes one or more claims of the '448 patent, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(b). More specifically, patients and medical professionals directly infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 4, 5, 9 and 11 of the '448 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

130.    Defendants possessed, and continue to possess, specific intent to induce infringement by providing to the public, at a minimum, the Movantik® Label, which provides instructions on how to use Movantik® in a manner that infringes directly the '448 patent.

131.    Defendants have actively induced and encouraged, and continue to actively induce and encourage, medical professionals to prescribe Movantik® to

patients, and patients to use Movantik® by marketing, promoting and advertising the infringing use of Movantik®.

132.    Upon information and belief, Defendants know that Movantik® and its labeling are especially made or adapted for uses that infringe the '448 patent, that Movantik® is not a staple article or commodity of commerce, and that Movantik® and its labeling are not suitable for substantial noninfringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c).  More specifically, patients directly infringe (literally and/or under the doctrine of equivalents) at least claims 1, 2, 4, 5, 9 and 11 of the '448 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

133.    On information and belief, Defendants have had actual knowledge of the '448 patent on or about June 10, 2014, when the '448 patent was issued.

134.    Defendants' foregoing actions constitute and/or will constitute infringement of the '448 patent, active inducement of infringement of the '448 patent, and contribution to the infringement by others of the '448 patent.

135.    Upon information and belief, Defendants have acted with full knowledge of the '448 patent and without a reasonable basis for believing that they would not be liable for infringement of the '448 patent; active inducement of infringement of the '448 patent; and/or contribution to the infringement by others of the '448 patent.

136.    Plaintiff reserves the right to assert additional claims of the '448 patent that Defendants infringe.

137.    Plaintiff has been damaged as a result of Defendants' infringing conduct. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

138.    On information and belief, Defendants have willfully infringed the '448 patent. Plaintiff is entitled to increased damages of three times the damages assessed pursuant to 35 U.S.C. § 284, as well as an award of attorney's fees pursuant to 35 U.S.C. § 285.

### Infringement of United States Patent No. 8,883,817

139.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

140.    On information and belief, and without authority, consent, right, or license, Defendants infringe one or more claims, including 1, 2, 3, 4, 6, 7, 11, 15, 16, 19, 20, 21, 22, and 25, of the '817 patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing of Movantik®, and/or by actively inducing infringement by others under § 271(b) and/or contributing to infringement under § 271(c).

141.    For example claim 1 covers:

A unit dosage of an analgesic composition comprising:  an opioid agonist in an amount sufficient to confer analgesia in a mammalian subject; and a neutral opioid antagonist in an amount sufficient to substantially inhibit peripheral effects, and insufficient to block substantial central effects, of the opioid agonist in the subject, wherein the agonist and antagonist are selected so that a ratio of antinociception ID50 to GI transit ID50 for the agonist and the antagonist is between about 5 and about 50.

142.    The '817 patent directly teaches "co-administration of the agonist with the antagonist, or separate but overlapping administration of the agonist with the neutral antagonist, wherein such co-formulation, co-administration or separate administration is uniquely designed to address both addiction liability of the opioid and peripheral side effects, such as constipation." *See* '817 patent at col. 2, ll. 12-18.

143.    The chemical structure of naloxegol, which is the active ingredient in Movantik®, falls within the chemical structure of Formula 1β of the naloxone analogs described in the '817 patent, col. 3, ll. 52 – col. 4, ll. 52.

144.    Movantik® meets the requirement for a unit dosage of an analgesic composition comprising "an opioid agonist in an amount sufficient to confer analgesia in a mammalian subject" as evidenced by the Movantik® website, which directs patients and doctors as to the use and administration of Movantik®: "Movantik® is used with an analgesic, which would be expected to be in an amount sufficient to confer analgesia to the subject." *See* https://www.movantik.com/about.html. In fact, the Movantik® Label specifically discusses the co-administration of an analgesic including, for example, Morphine. *See* Movantik® Label at 12.3.

145.    Movantik® meets the requirement for "a neutral opioid antagonist in an amount sufficient to substantially inhibit peripheral effects, and insufficient to block substantial central effects, of the opioid agonist in the subject" as evidenced by the Movantik® Label, which states that "[n]aloxegol functions as a peripherally-acting μ-opioid receptor agonist in tissues such as the gastrointestinal tract, thereby decreasing

the constipating effects of opioids." *See Id.* at 10; *see also* Exhibit 7, *Floettmann at* 280

("Naloxegol binds to the human μ opioid receptor with high affinity, acting as a

competitive neutral antagonist.")

146.    Movantik® includes an "agonist and antagonist are selected so that a ratio

of antinociception ID50 to GI transit ID50 for the agonist and the antagonist is between

about 5 and about 50" as evidenced by the Movantik® Label, which states that

"[a]lteration in analgesic dosing regimen prior to initiating Movantik is not required"

(*see* Movantik® Label at 2) and noting specifically that administration at recommended

levels limits "potential for interference with centrally mediated opioid analgesia." *Id.* at

9. The Movantik® Label specifically discusses the co-administration of an analgesic,

within the ratios claimed, including, for example, Morphine. *See* Movantik® Label at

12.3.

147.    On information and belief, Defendants have had actual knowledge of the

'817 patent on or about November 11, 2014 when the '817 patent was issued.

148.    On information and belief, Defendants know that the Movantik ® Label

induces infringement of the '817 patent.

149.    Defendants, acting without authority, consent, right, or license of the '817

patent, have induced, and continue to induce patients to administer and use Movantik®,

in co-administration or separate concomitant administration with an opioid agonist in a

manner that directly infringes one or more claims of the '817 patent, resulting in

conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(b).

More specifically, patients directly infringe (literally and/or under the doctrine of

equivalents) at least 1, 2, 3, 4, 6, 7, 11, 15, 16, 19, 20, 21, 22, and 25 of the '817 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

150.    Defendants possessed, and continue to possess, specific intent to induce infringement by providing to the public, at a minimum, the Movantik® Label, which provides instructions on how to use Movantik® in a manner that infringes directly the '817 patent.

151.    Defendants have actively induced and encouraged, and continue to actively induce and encourage, medical professionals to prescribe Movantik® to patients, and patients to use Movantik® by marketing, promoting and advertising the infringing use of Movantik®.

152.    Upon information and belief, Defendants know that Movantik® and its labeling are especially made or adapted for uses that infringe the '817 patent, that Movantik® is not a staple article or commodity of commerce, and that Movantik® and its labeling are not suitable for substantial noninfringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, patients directly infringe (literally and/or under the doctrine of equivalents) at least 1, 2, 3, 4, 6, 7, 11, 15, 16, 19, 20, 21, 22, and 25 of the '817 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c).

153. Defendants' foregoing actions constitute and/or will constitute infringement of the '817 patent; active inducement of infringement of the '817 patent; and contribution to the infringement by others of the '817 patent.

154. Upon information and belief, Defendants have acted with full knowledge of the '817 patent and without a reasonable basis for believing that it would not be liable for infringement of the '817 patent, active inducement of infringement of the '817 patent, and/or contribution to the infringement by others of the '817 patent.

155. Plaintiff reserves the right to assert additional claims of the '817 patent that Defendants infringe.

156. Plaintiff has been damaged as a result of Defendants' infringing conduct. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

157. On information and belief, Defendants have willfully infringed the '817 patent. Plaintiff is entitled to increased damages of three times the damages assessed pursuant to 35 U.S.C. § 284, as well as an award of attorney's fees pursuant to 35 U.S.C. § 285.

## Infringement of United States Patent No. 9,061,024

158. Plaintiff incorporates each of the preceding paragraphs as if fully set forth here.

159. On information and belief, and without authority, consent, right, or license, Defendants' infringe one or more claims, including claims 1, 3, 4, 5, 7, and 9 of

the '024 patent under § 271(a), either literally or under the doctrine of equivalents, by

making, using, offering to sell, selling and/or importing of Movantik®, and/or by

actively inducing infringement by others under § 271(b) and/or contributing to

infringement under § 271(c).

160.    For example, claim 1 covers:

A method of providing an opioid agonist to a mammalian subject in a manner
that inhibits peripheral effects of the opioid agonist, without blocking substantial
central effects, the method comprising: orally administering to the subject at least
one unit dosage of an analgesic composition, formulated for oral administration,
the unit dosage including: (a) the opioid agonist in an amount sufficient to confer
analgesia in the subject; (b) a non-aversive neutral opioid antagonist in an
amount sufficient to substantially inhibit peripheral effects and insufficient to
block substantial central effects of the agonist in the subject, the opioid
antagonist selected to have an access to a central nervous system of the subject
that is weak compared to access by the opioid agonist; wherein the amounts of
the neutral opioid antagonist and the opioid agonist are selected so that a
weight/weight (w/w) ratio of (1) an amount of 6β-naltrexol equivalent to the
amount of neutral opioid antagonist divided by (2) an amount of morphine
equivalent to the opioid agonist is at least 0.15; and (c) a pharmaceutically
acceptable carrier.

161.    The '024 patent directly teaches "co-administration of the agonist with the

antagonist, or separate but overlapping administration of the agonist with the neutral

antagonist, wherein such co-formulation, co-administration or separate administration

is uniquely designed to address both addiction liability of the opioid and peripheral

side effects, such as constipation." *See* '024 patent at col. 2, ll. 57-64.

162.    The chemical structure of naloxegol, which is the active ingredient in

Movantik®, falls within the chemical structure of Formula 1β of the naloxone analogs

described in the '024 patent, col. 5, ll. 52 – col. 6, ll. 53.

163. Movantik® and its use meet the requirement for "[a] method of providing an opioid agonist to a mammalian subject in a manner that inhibits peripheral effects of the opioid agonist, without blocking substantial central effects, the method comprising:" as evidenced by the Movantik® website, which directs patients and doctors as to the use and administration of Movantik®: "Naloxegol is an antagonist of opioid binding at the mu-opioid receptor. When administered at the recommended dose levels, naloxegol functions as a peripherally-acting mu-opioid receptor antagonist in tissues such as the gastrointestinal tract, thereby decreasing the constipating effects of opioids. . . . Due to the reduced permeability and increased efflux of naloxegol across the blood-brain barrier, related to P-gp substrate properties, the CNS penetration of naloxegol is expected to be negligible at the recommended dose levels limiting the potential for interference with centrally mediated opioid analgesia." *See* Movantik® Label at 9. In fact, the Movantik® Label specifically discusses the co-administration of an analgesic including, for example, Morphine. *See* Movantik® Label at 12.3.

164. Movantik® and its use meet the requirement for "orally administering to the subject at least one unit dosage of an analgesic composition, formulated for oral administration" as evidenced by the Movantik® Label, which directs the oral administration of Movantik® in combination with an opioid agonist. *Id*. at 2. ("Alteration in analgesic dosing regimen prior to initiating Movantik is not required.")

165. Movantik® and its use meet the requirement for unit dosage having "the opioid agonist in an amount sufficient to confer analgesia in the subject" as evidenced by the Movantik® Label, which states that "Movantik is used with an analgesic, which

would be expected to be in an amount sufficient to confer analgesia to the subject." *Id*. at 10. The Movantik® Label specifically discusses the co-administration of an analgesic including, for example Morphine. *See* Movantik® Label at 12.3.

166.    Movantik® and its use meet the requirement for unit dosage having "a non-aversive neutral opioid antagonist in an amount sufficient to substantially inhibit peripheral effects and insufficient to block substantial central effects of the agonist in the subject, the opioid antagonist selected to have an access to a central nervous system of the subject that is weak compared to access by the opioid agonist" as evidenced by the Movantik® Label, which states that "Naloxegol functions as a peripherally-acting μ-opioid receptor agonist in tissues such as the gastrointestinal tract, thereby decreasing the constipating effects of opioids." *See Id*. at 10.

167.    Movantik® and its use meet the requirement for unit dosage having, "the amounts of the neutral opioid antagonist and the opioid agonist . . . selected so that a weight/weight (w/w) ratio of (1) an amount of 6β-naltrexol equivalent to the amount of neutral opioid antagonist divided by (2) an amount of morphine equivalent to the opioid agonist is at least 0.15" as evidenced by the Movantik® Label, which states that "[p]atients receive an opioid morphine equivalent daily dose of between 30 mg and 1,000 mg for at least four weeks before enrollment and self-reported OIC were eligible to participate. A total of 652 patients in Study 1 and 700 patients in Study 2 were randomized in a 1:1:1 ratio to receive 12.5 mg or 25 mg of Movantik® or placebo once daily for 12 weeks." *See Id*. at 17. The Movantik® Label specifically discusses the co-

administration of an analgesic, within the weight ranges claimed, including, for example, Morphine. *See* Movantik® Label at 12.3.

168.    Movantik® and its use meet the requirement for unit dosage having "a pharmaceutically acceptable carrier" as evidenced by the label stating that "[t]he tablet core contains mannitol, cellulose microcrystalline, croscarmellose sodium, magnesium stearate, and propyl gallate. The tablet coat contains hypromellose, titanium dioxide, polyethylene glycol, iron oxide red, and iron oxide black. Movantik (naloxegol) is available in two strengths: Tablets: 12.5 mg supplied as mauve, oval, biconvex, film-coated, intagliated with "nGL" on one side and "12.5" on the other side. Tablets: 25 mg supplied as mauve, oval, biconvex, film-coated, intagliated with "nGL" on one side and "25" on the other side." *See Id.* at 3, 19.

169.    On information and belief, the analgesics co-administered or administered concomitantly with Movantik® include a pharmaceutically acceptable carrier.

170.    On information and belief, Defendants have had actual knowledge of the '024 patent on or about June 23, 2015, when the '024 patent was issued.

171.    On information and belief, Defendants know that the Movantik® Label induces infringement of the '024 patent.

172.    Defendants, acting without authority, consent, right, or license of the '024 patent, have induced, and continue to induce patients to administer and use Movantik®, in co-administration or concomitant administration with an opioid agonist in a manner, which directly infringes one or more claims of the '817 patent under 35 U.S.C. § 271(b). More specifically, patients directly infringe (literally and/or under the doctrine of

equivalents) at least claims 1, 3, 4, 5, 7, and 9 of the '024 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

173.    Defendants possessed, and continue to possess, specific intent to induce infringement by providing to the public, at a minimum, the Movantik® Label, which provides instructions on how to use Movantik® in a manner that infringes directly the '024 patent.

174.    Defendants have actively induced and encouraged, and continue to actively induce and encourage, medical professionals to prescribe Movantik® to patients, and patients to use Movantik® by marketing, promoting and advertising the infringing use of Movantik®.

175.    Upon information and belief, Defendants know that Movantik® and its labeling are especially made or adapted for uses that infringe the '024 patent, that Movantik® is not a staple article or commodity of commerce, and that Movantik® and its labeling are not suitable for substantial noninfringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, patients and medical professionals directly infringe (literally and/or under the doctrine of equivalents) at least claims 1, 3, 4, 5, 7, and 9 of the '024 patent by using Movantik®, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

176.     Defendants' foregoing actions constitute and/or will constitute infringement of the '024 patent, active inducement of infringement of the '024 patent, and contribution to the infringement by others of the '024 patent.

177.     Upon information and belief, Defendants have acted with full knowledge of the '024 patent and without a reasonable basis for believing that it would not be liable for infringement of the '024 patent, active inducement of infringement of the '024 patent, and/or contribution to the infringement by others of the '024 patent.

178.     Plaintiff reserves the right to assert additional claims of the '024 patent that Defendants infringe.

179.     Plaintiff has been damaged as a result of Defendants' infringing conduct. Defendants are, thus, liable to Plaintiff in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

180.     On information and belief, Defendants have willfully infringed the '024 patent. Plaintiff is entitled to increased damages of three times the damages assessed pursuant to 35 U.S.C. § 284, as well as an award of attorney's fees pursuant to 35 U.S.C. § 285.

## JURY DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Aether requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendants as follows:

a.      finding that Defendants have infringed, contributed to and induced infringement of one or more claims of the patents-in-suit;

b.      awarding Aether damages under 35 U.S.C. § 284, or otherwise permitted by law, including treble damages based on Defendants' willful infringement, and damages for any continued post-verdict infringement;

c.      awarding Aether damages for the unjust enrichment of Defendants;

d.      awarding Aether pre-judgment and post-judgment interest on the damages award and costs;

e.      declaring this case exceptional pursuant to 35 U.S.C. § 285,

f.      awarding costs of this action and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

g.      awarding such other costs and further relief the Court determines to be just and equitable.

Dated: March 18, 2020          Respectfully submitted,

/s/Stamatios Stamoulis
Stamatios Stamoulis (#4606)
Richard C. Weinblatt (#5080)
800 N. Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com
weinblatt@swdelaw.com

Of Counsel:
Ronald M. Daignault (*pro hac vice* to be filed)
Chandran Iyer (*pro hac vice* to be filed)
Michael A. Siem (*pro hac vice* to be filed)
GOLDBERG SEGALLA LLP
rdaignault@goldbergsegalla.com
ciyer@goldbergsegalla.com
msiem@goldbergsegalla.com
711 Third Avenue, Suite 1900
New York, New York 10017
Telephone: (646) 292-8700

Richard Juang (*pro hac vice* to be filed)
rjuang@goldbergsegalla.com
GOLDBERG SEGALLA LLP
8000 Maryland Avenue, Suite 640
St. Louis, Missouri 63105
Telephone: (314) 446-3367

Attorneys for Plaintiff *Aether Therapeutics Inc.*