IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAX FEDERMAN,<br><br>Plaintiff,<br><br>vs.<br><br>VIVINT SOLAR, INC., DAVID BYWATER, DAVID F. D'ALESSANDRO, BRUCE MCEVOY, JAY D. PAULEY, TODD R. PEDERSEN, ELLEN S. SMITH, JOSEPH S. TIBBETTS, JR., and PETER F. WALLACE,<br><br>Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Max Federman ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1.  Plaintiff brings this action against Vivint Solar, Inc. ("Vivint Solar" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Sunrun Inc. ("Sunrun"), through Sunrun's wholly owned subsidiary Viking Merger Sub, Inc. (the "Proposed Transaction").

2. On July 6, 2020, Vivint Solar entered into an Agreement and Plan of Merger with Sunrun (the "Merger Agreement"), pursuant to which, each Vivint Solar stockholder will receive 0.55 shares of Sunrun common stock for each share of Vivint Solar common stock they own.

3. On September 2, 2020, Vivint Solar filed a Definitive Proxy Statement on Form DEFM 14A (the "Proxy Statement") with the SEC which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Vivint Solar is incorporated in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Vivint Solar.

9. Defendant Vivint Solar is a Delaware corporation with its principal executive offices located at 1800 West Ashton Boulevard, Lehi, Utah 84043. The Company operates offices located at 2510 Dean Lesher Drive, Suite A, Concord, California 94520 and 1939 Hartog Drive, San Jose, California 95131. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "VSLR."

10. Defendant David Bywater is, and has been at all relevant times, Chief Executive Officer and a director of the Company.

11. Defendant David F. D'Alessandro is, and has been at all relevant times, a director of the Company.

12. Defendant Bruce McEvoy is, and has been at all relevant times, a director of the Company.

13. Defendant Jay D. Pauley is, and has been at all relevant times, a director of the Company.

14. Defendant Todd R. Pedersen is, and has been at all relevant times, a director of the Company.

15. Defendant Ellen S. Smith is, and has been at all relevant times, a director of the Company.

16. Defendant Joseph S. Tibbetts, Jr. is, and has been at all relevant times, a director of the Company.

17. Defendant Peter F. Wallace is, and has been at all relevant times, Chairman of the Board and a director of the Company.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Company Background

19. Vivint Solar offers distributed solar energy to residential customers through a customer-focused and neighborhood-driven direct-to-home sales model.

20. Through investment funds, the Company owns a substantial majority of the solar energy systems it installs, and wholly owns a smaller number of solar energy systems outside of investment funds.

21. From Vivint Solar's inception in May 2011 through December 31, 2019, Vivint Solar has installed solar energy systems with an aggregate of 1,294.0 megawatts ("MW") of capacity at approximately 188,300 homes for an average solar energy system capacity of approximately 6.9 kilowatts.

22. On August 5, 2020, Vivint Solar announced its second quarter 2020 financial results. For the quarter, total revenue was $106.4 million, an increase of 17% from the second quarter of 2019. Gross profit was $46.4 million, an increase of 46% from the second quarter of 2019. In the second quarter, the Company installed approximately 44 MW, above the high end of the Company's guidance of 35 to 38 MW for the quarter.

**The Proposed Transaction**

23. On July 6, 2020, Vivint Solar and Sunrun issued a joint press release announcing the Proposed Transaction, stating, in pertinent part :

SAN FRANCISCO, July 06, 2020 -- Sunrun (NASDAQ: RUN), a leading provider of residential solar, battery storage and energy services, and Vivint Solar (NYSE: VSLR), a leading full-service residential solar provider in the United States, today announced the companies have entered into a definitive agreement under which Sunrun will acquire Vivint Solar in an all-stock transaction, pursuant to which each share of Vivint Solar common stock will be exchanged for 0.55 shares of Sunrun common stock, representing a combined Enterprise Value of $9.2 billion based on the closing price of Sunrun's shares on July 6, 2020. Vivint Solar stockholders are expected to own approximately 36% and Sunrun stockholders are expected to own approximately 64% of the fully diluted shares of the combined company. The exchange ratio implies a 10% premium for Vivint Solar shares based on closing prices on July 6, 2020, and a 15% premium to the exchange ratio implied by the three month volume weighted average price of Vivint Solar and Sunrun shares.

"Americans want clean and resilient energy. Vivint Solar adds an important and high-quality sales channel that enables our combined company to reach more households and raise awareness about the benefits of home solar and batteries," said Lynn Jurich, Sunrun's Chief Executive Officer and co-founder. "This transaction will increase our scale and grow our energy services network to help replace centralized, polluting power plants and accelerate the transition to a 100% clean energy future. We admire Vivint Solar and its employees, and look forward to working together as we integrate the two companies."

David Bywater, Chief Executive Officer of Vivint Solar, added, "Vivint Solar and Sunrun have long shared a common goal of bringing clean, affordable, resilient energy to homeowners. Joining forces with Sunrun will allow us to reach a broader set of customers and accelerate the pace of clean energy adoption and grid modernization. We believe this transaction will create value for our customers, our shareholders, and our partners."

**A Shared Mission to Create a Planet Run by the Sun**

Sunrun and Vivint Solar share a mission to create a planet run by the sun. Together, we can empower more families to take control of their energy future by increasing customer choice in how they create and consume power.

There is an urgent need to decarbonize our energy system. Extreme weather due to climate change is increasing, putting immense strain on our energy system. Fossil fuel power plants are responsible for more than 30% of all carbon pollution across the country. Sunrun will be a meaningful contributor to a fully renewable and electrified energy system. Our growing fleet of solar homes and batteries will be

networked to provide greater benefits to the grid and energy consumers. Generating energy at the point it is used reduces the need for dirty energy being produced far away that is increasingly expensive to transmit. Our customers have already and will continue to help shut down inefficient carbon-producing power plants.

Our combined customer base of nearly 500,000 creates a leading owner of solar assets globally, with over 3 gigawatts of solar assets on the balance sheet. Yet, residential solar has reached only 3% penetration in the United States today and the runway for growth remains massive.

Sunrun has committed to leading the solar industry in diversity and inclusion efforts, career development, and employee benefits. As part of a broader, more diversified company, we will be able to offer employees even more opportunities and solidify our position as the best place to work in the solar industry.

**Strategic rationale**

This is a transformational opportunity to generate consumer and shareholder value, realize annual cost synergies and bring cleaner, affordable energy to more homes. It establishes Sunrun as a leading home solar and energy services company across the United States, bringing greater opportunities for consumers to save money on their electric bills and decrease dependence on fossil fuels.

Residential solar has reached only 3% penetration in the United States today and yet surveys show nearly 9 out of 10 people in the United States favor expanding the use of solar power. The acquisition of Vivint Solar adds a complementary direct-to-home sales channel to Sunrun's platform, increasing our reach and capabilities in a growing market. Our thirteen years of experience has shown that a consultative experience from trusted sales advisors is important to educate customers of the merits of solar energy. Vivint Solar's highly trained, consultative field sales experts will be an important part of the combined platform and will serve as critical ambassadors for consumers to learn the benefits of solar energy.

Like Sunrun, Vivint Solar has adapted to the current environment, accelerating digital lead generation efforts and providing a contact-less selling and installation experience in most instances. This transition has resulted in improvements for both companies, including setting the foundation for structural cost reductions and improved customer experience.

We expect to deliver meaningful cost synergies, estimated at $90 million on an annual basis. We see opportunities across the entire cost base, including consolidating and optimizing our branch footprint, reducing redundant spending on technology systems, scaling our proprietary racking technology, as well as improving sourcing capabilities within our supply chains. There are also opportunities to realize scale benefits from shared corporate functions including accounting, human resources, legal, and policy.

We expect additional revenue synergies to generate enhanced value creation for our customers and shareholders from a larger base of solar assets. We expect to be able to offer batteries to the combined base of solar customers. A larger footprint of solar and battery assets also increases the value of what we bring to our grid services partnerships and strengthens our ability to deliver considerable value in that business. We expect to benefit from efficiencies in large scale project finance capital raising activities and are excited about the opportunity to build an even stronger and more recognizable consumer brand in residential energy services.

**Benefits for Customers**

Most energy consumers are currently beholden to a single power company that provides electricity to them based on their household location. As a benefit of this combination, Sunrun's increased scale, operating efficiency and combined research and development (R&D) efforts will enable the company to even further accelerate the adoption of renewable energy and give households more control over their energy future.

A lower cost structure from greater scale can open more markets and allow lower pricing for customers, accelerating the transition away from polluting fossil fuels. It will also give our customers access to better, more affordable products and services. Lastly, combining R&D resources and focusing efforts will allow us to accelerate the offering of advanced solutions, such as virtual power plants and other energy services programs, to more customers in more markets.

**Transaction Details**

Under the terms of the definitive transaction agreement, each share of Vivint Solar common stock issued and outstanding immediately prior to the effective time of the merger will be converted automatically into the right to receive 0.55 shares of Sunrun common stock.

The Board of Directors of Sunrun and Vivint Solar have each unanimously voted in favor of the definitive transaction agreement.

The acquisition of Vivint Solar is expected to be completed during the fourth quarter of 2020, subject to approval by Vivint Solar and Sunrun stockholders, regulatory approvals and other customary closing conditions.

Sunrun's Board of Directors will be expanded by adding 2 directors, one of which is expected to be Vivint Solar's CEO, David Bywater.

Support Agreements have been obtained from both companies' largest stockholders, 313 Acquisition LLC (Blackstone affiliate) and Tiger Global, to vote their respective shares in favor of the merger and the share issuance, respectively.

In addition, 313 Acquisition LLC (Blackstone affiliate) has agreed to lock up 50% of shares obtained as a result of the acquisition for 60 days following closing and the remaining 50% for 120 days. Sales are allowed to occur during these periods subject to certain conditions.

**The Proxy Statement Materially Misleads Vivint Solar Stockholders by Omitting Material Information**

24. On September 2, 2020, defendants filed the materially misleading and incomplete Proxy Statement with the SEC. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

25. *First,* the Proxy Statement omits material information regarding Vivint Solar's and Sunrun's financial projections.

26. Specifically, in connection with the Company's projections, the Proxy Statement fails to disclose: (i) with respect to the January Forecasts, EBITDA and levered free cash flow for the calendar years 2020 through 2024; (ii) the details of the updated forecasts presented to the Board at its May 8, 2020 Board meeting; and (iii) net income for each of the projection sets, for the calendar years 2020 through 2024.

27. Similarly, the Proxy Statement fails to disclose Sunrun's net income over the projection period.

28. *Second*, the Proxy Statement omits material information regarding Morgan Stanley's financial analyses.

29. With respect to Morgan Stanley's *Trading Comparables Analysis* – Vivint Solar, the Proxy Statement fails to disclose: (i) the number of fully diluted outstanding shares; and (ii) net debt as of March 31, 2020.

30. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Vivint Solar, the Proxy Statement fails to disclose: (i) the estimated levered free cash flows from Vivint Solar's systems installed as of December 31, 2019 ("Vivint Solar AssetCo") that Vivint Solar management forecasted Vivint Solar to generate during calendar years 2020 through 2050 ; (ii) current unrestricted excess cash; (iii) the estimated levered cash flows from Vivint Solar's new systems forecasted to be installed from January 1, 2020 through 2024 ("Vivint Solar DevCo") that Vivint Solar management forecasted Vivint Solar to generate during calendar years 2020 through 2024; (iv) Vivint Solar DevCo's EBITDA in 2025, utilized to derive the terminal value; (v) terminal year debt; (vi) the individual inputs and assumptions underlying the discount rate range of 9.3% to 11.3%; and (vii) fully diluted outstanding shares.

31. With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets* analysis – Vivint Solar, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley; and (ii) identification of the sources of the price targets.

32. With respect to Morgan Stanley's *Trading Comparables Analysis* - Sunrun, the Proxy Statement fails to disclose: (i) the number of fully diluted outstanding shares; and (ii) net debt as of March 31, 2020.

33. With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis* – Sunrun, the Proxy Statement fails to disclose: (i) the estimated levered free cash flows from Sunrun's systems installed as of December 31, 2019 ("Sunrun AssetCo") that Sunrun is forecasted to generate during calendar years 2020 through 2050; (ii) the estimated levered cash flows from Sunrun's new systems forecasted to be installed from January 1, 2020 through 2024 ("Sunrun DevCo") that Sunrun is forecasted to generate during calendar years 2020 through 2024; (iii) Sunrun DevCo's EBITDA in 2025; (iv) terminal year debt; (v) the individual inputs and

assumptions underlying the discount rate range of 9.4% to 11.4%; and (vi) fully diluted outstanding shares.

34. With respect to Morgan Stanley's *Discounted Equity Research Analysts' Future Price Targets* analysis – Sunrun, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley; and (ii) identification of the sources of the price targets.

35. With respect to Morgan Stanley's *Pro Forma Levered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimated levered free cash flows from Vivint Solar AssetCo and Sunrun AssetCo that Vivint Solar and Sunrun are forecasted to generate during calendar years 2020 through 2050; (ii) current unrestricted excess cash; (iii) the estimated levered cash flows from Vivint Solar DevCo and Sunrun DevCo that Vivint Solar and Sunrun are forecasted to generate during calendar years 2020 through 2024; (iii) Vivint Solar DevCo's and Sunrun DevCo's combined EBITDA in 2025; (iv) Vivint Solar's and Sunrun's terminal year debt; (v) net debt as of March 31, 2020; (vi) the individual inputs and assumptions underlying the discount rate range of 9.4% to 11.4%; and (vii) the assumed number of fully diluted shares outstanding of the pro forma combined company.

36. ***Third,*** the Proxy Statement omits material information regarding BofA's financial analyses.

37. With respect to BofA's *Discounted Cash Flow Analysis – Vivint Solar*, the Proxy Statement fails to disclose: (i) the stand-alone, levered, after-tax free cash flows that Vivint Solar was forecasted to generate from its existing aggregate portfolio of installed PPA/Lease solar energy systems ("Vivint Solar OpCo") during calendar years 2020 through 2049; (ii) the stand-alone, levered, after-tax free cash flows that Vivint Solar was forecasted to generate from sales, assuming a certain financing strategy of future solar energy systems ("Vivint Solar DevCo II")

during calendar years 2020 through 2027; (iii) Vivint Solar's stand-alone, net retained value attributable to assets not otherwise included in Vivint Solar OpCo as of the end of the terminal year; and (iv) the individual inputs and assumptions underlying the discount rate range of 9.0% to 12.0%.

38. With respect to BofA's review of certain publicly available equity research analyst price targets for Vivint Solar, the Proxy Statement fails to disclose: (i) the price targets observed by BofA; and (ii) identification of the sources of the price targets.

39. With respect to BofA's *Discounted Cash Flow Analysis* of Sunrun, the Proxy Statement fails to disclose: (i) the stand-alone, levered, after-tax free cash flows that Sunrun was forecasted to generate from its existing aggregate portfolio of installed PPA/Lease solar energy systems ("Sunrun OpCo") during calendar years 2020 through 2049; (ii) the stand-alone, levered, after-tax free cash flows that Sunrun was forecasted to generate from sales of newly installed solar energy systems ("Sunrun DevCo II") during calendar years 2020 through 2027; (iii) Sunrun's stand-alone, net retained value attributable to assets not otherwise included in Sunrun OpCo as of the end of the terminal year; and (iv) the individual inputs and assumptions underlying the discount rate range of 10.0% to 13.5%.

40. With respect to BofA's review of certain publicly available equity research analyst price targets for Sunrun, the Proxy Statement fails to disclose: (i) the price targets observed by BofA; and (ii) identification of the sources of the price targets.

41. With respect to BofA's *Has/Gets Analysis*, the Proxy Statement fails to disclose: (i) the estimated after-tax Synergies (net of after-tax cost costs to achieve such Synergies) during 2020 through 2023; (ii) the individual inputs and assumptions underlying the discount rate range of 10.0% to 13.5%; and (iii) the after-tax Synergies in the terminal year.

42. ***Finally,*** the Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by BofA.

43. The Proxy Statement sets forth the services BofA has provided for Vivint Solar and the Blackstone Entities in the prior two-year period and the fees received in connection with such services. *See* Proxy Statement at 126. The Proxy Statement, however, fails to disclose the details of any services BofA has provided, or is currently providing, to Sunrun or its affiliates, the timing and nature of such services and the amount of compensation BofA received, or expects to receive, in connection with any services provided.

44. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45. In sum, the omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading, in contravention of the Exchange Act. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

46. Plaintiff repeats all previous allegations as if set forth in full.

47. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Vivint Solar's and Sunrun's financial projections, the financial analyses performed by Morgan Stanley and BofA, and BofA's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of Vivint Solar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vivint Solar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

56. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Vivint Solar's

stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Vivint Solar, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 18, 2020	**O'KELLY & ERNST, LLC**

By	*/s/ Ryan M. Ernst*
	―――――――――――――――――――
	Ryan M. Ernst (#4788)
	824 N. Market Street, Suite 1001A
	Wilmington, DE 19801
	Tel.: (302) 778-4000
	Email: rernst@oelegal.com