IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY and SEA PINE TECHNOLOGIES, INC., | ) ) ) ) |
| Plaintiffs, | ) C.A. No. |
| v. | ) ) ) |
| STEVEN G. AESCHLIMAN, | ) ) |
| Defendant. | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs ZURICH AMERICAN INSURANCE COMPANY ("Zurich") and SEA PINE TECHNOLOGIES, INC. ("Sea Pine") (jointly, "Plaintiffs"), by and through their undersigned attorneys, allege as follows for their Complaint against Defendant STEVEN G. AESCHLIMAN ("Aeschliman" or "Defendant"):

**INTRODUCTION**

This is a lawsuit for equitable and monetary remedies for Defendant's breach of contract, fraudulent inducement and misrepresentation, and unjust enrichment, based on Defendant deliberately concealing his true identity when applying for and accepting employment with Sea Pine Technologies, Inc. ("Sea Pine"), a wholly owned subsidiary of Zurich Holding Company of America, Inc. ("ZHCA"), which also owns related company Zurich American Insurance Company ("Zurich"). Upon learning of the scope of Aeschliman's misconduct, Sea Pine terminated Aeschliman's employment, after which Aeschliman lashed out and publicly disparaged Sea Pine and Zurich in direct violation of his post-employment contractual obligations. Undeterred by his contractual and legal obligations to Plaintiffs, Aeschliman's conduct has damaged Plaintiffs and must be stopped. Specifically, this lawsuit is to disgorge monies paid to Defendant as a result of

1

his fraud and breaches of his employment relationship with Sea Pine, as well as to provide appropriate relief to Plaintiffs for the damages Defendant has caused and threatens to continue to cause.

## THE PARTIES AND RELEVANT PERSONS

1. Zurich American Insurance Company ("Zurich") is a New York corporation and wholly owned by ZHCA with its principal place of business located in Schaumburg, Illinois.

2. Sea Pine Technologies, Inc. ("Sea Pine") is a Delaware corporation and wholly owned by ZHCA with its principal place of business located in Dallas, Texas.

3. Upon information and belief, Steven G. Aeschliman ("Aeschliman") is a citizen of and domiciled in Illinois, at 1255 South Michigan Avenue, #1608, Chicago, IL 60605.

## JURISDICTION AND VENUE

4. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Aeschliman and venue is proper in the United States District Court for the District of Delaware, pursuant to an express choice of law and venue provision in the Restrictive Covenant Agreement signed and agreed to by Aeschliman on May 7, 2019. (*See* Exhibit 1.) Specifically, Aeschliman agreed:

> (a) Governing Law and Jurisdiction. EXCEPT WHERE PREEMPTED BY FEDERAL LAW, THE VALIDITY, INTERPRETATION, CONSTRUCTION, AND PERFORMANCE OF THIS AGREEMENT IS GOVERNED BY AND IS TO BE CONSTRUED UNDER THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THAT STATE, WITHOUT REGARD TO CONFLICT OF LAWS RULES. FURTHER, I HEREBY CONSENT TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF DELAWARE, AND WAIVE ANY RIGHT TO TRIAL

BY JURY, IN CONNECTION WITH ANY DISPUTE ARISING UNDER OR CONCERNING THIS AGREEMENT.

## FACTS

*Zurich & Sea Pine's Business*

6. Sea Pine is a company that specializes in innovative digital applications for the marketing of vehicle protection products. Specifically, Sea Pine helps auto dealers better serve their customers and sell Finance & Insurance ("F&I") products by leveraging its state-of-the-art technology to deliver a modern, comprehensive and efficient buying experience.

7. Sea Pine owns several proprietary digital applications designed to enable auto dealers to meet the growing demand for automotive F&I products, retain customers and enhance the consumer experience.

8. Sea Pine's technology, combined with Zurich's current F&I network and Zurich's years of experience working with auto dealers, makes it possible to generate a significant increase in F&I product distribution through additional channels.

9. As of January 31, 2019, ZHCA acquired 100 percent ownership in Sea Pine.

10. Zurich is a top provider of automotive F&I products and services in the United States. Zurich's acquisition of Sea Pine expanded Zurich's automotive F&I capabilities and strengthened its innovative offerings to both automobile dealerships and car owners across the country.

11. F&I products are made available to automobile dealerships to enhance the buying experience for dealership customers and to assist the dealership to increase customers' satisfaction with their ongoing dealership and car ownership experience.

12. F&I products include but are not limited to: vehicle service contracts, maintenance plans, guaranteed asset protection (GAP), road hazard tire and wheel, limited warranties, theft

deterrent, select care, environmental protection, key replacement, windshield protection, paintless dent repair, select protection (up to 5 in 1 combo products) and lease wear & use protection.

13. Zurich F&I products have a broad appeal and acceptance in the marketplace and among automobile dealerships.

14. The F&I industry is highly competitive. To distribute its products, Zurich relies almost exclusively on its field representatives and the relationships they cultivate on Zurich's behalf with the automobile dealerships and the dealerships' F&I decision makers, such as the F&I manager and dealer principal, in their respective territories.

15. In addition to the actual products offered to the dealerships' customers, Zurich offers consultative services and specialized training of dealership personnel to, among other things, assist dealerships in maximizing the number of protected consumers and ensuring the most positive consumer experience both at the time of vehicle purchase and over the lifetime of vehicle ownership.

*Aeschliman's Employment with Sea Pine*

16. On May 2, 2019, Sea Pine offered Aeschliman a position as a Client Success Consultant, with a scheduled start date of May 20, 2019. (*See* Offer Letter, at Exhibit 2.)

17. Aeschliman accepted the offer of employment on May 7, 2019. (*Id.* at Exhibit 2.) Plaintiffs learned of Aeschliman and his interest in a position with Sea Pine via a recruiting firm. Based on the information and representations provided by Aeschliman which led to his acceptance of an offer of employment, Plaintiffs paid $15,040.00 (a 20% surcharge of the annual salary paid to Aeschliman) directly to the recruiting firm as a commission for the placement. (*See* Invoice at Exhibit 3.)

18. That same day he accepted employment with Sea Pine, Aeschliman signed and agreed to a Restrictive Covenant Agreement ("Agreement"), which, among other things, included

certain pre- and post-termination obligations as a result of accepting employment. (*See* Exhibit 1.)

19. As part of the Agreement, Aeschliman agreed as follows:

> Non-Disparagement. I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any member of the Company Group [as defined] or its respective current or former directors, officers, employees, members or shareholders in any respect or make any comments concerning any aspect of my relationship with any member of the Company Group or any conduct or events which precipitated any termination of my employment from the Company. However, my obligations under this subsection (d) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

("Non-Disparagement Provision", Agreement, ¶6(d).)

20. Aeschliman further agreed that:

> I expressly acknowledge that, because my services are personal and unique and because I will have access to Confidential Information, any breach or threatened breach of any of the terms and/or conditions set forth in this Agreement may result in substantial, continuing, and irreparable injury to the members of the Company Group for which monetary damages would not be an adequate remedy. Therefore, ***I hereby agree that, in addition to any other right or remedy that may be available to the Company in law or in equity, any member of the Company Group shall be entitled to injunctive relief, specific performance, or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach or posting a bond and without liability should relief be denied, modified or vacated***. Notwithstanding any other provision to the contrary, I acknowledge and agree that the Restricted Period shall be tolled during any period of violation of any of the covenants in Section 6 hereof if it is ultimately determined that I was in breach of such covenants.

(Agreement, ¶9, emphasis supplied.)

21. In addition to an annual base salary of $75,200.00, Aeschliman was offered the additional benefits of a vehicle allowance in the amount of $4,800.00 (annualized), and use of a corporate credit card for certain business expenses. (*See* Exhibit 2.)

22. Pursuant to that benefit, Aeschliman signed and agreed to comply with the Sea Pine Expense Policy. (*See* Policy, at Exhibit 4.) In relevant part, the Sea Pine Expense Policy provides:

> This Card is to be used explicitly for legitimate authorized business-related expenditures. **Personal Use of the Card is strictly prohibited**. "Personal Use" is defined as using the Card for personal items, services, events or entertainment unrelated to a business event.

(*Id.* at Exhibit 4, emphasis in original.)

23. Critically, Aeschliman's offer of employment was contingent on, among other things, the successful completion of a background check. (*See* Offer Letter, at Exhibit 2.) The reason a background check was necessary is because Aeschliman would serve, as the title suggests, in a client facing role, where he would be exposed to, among other things, confidential and sensitive personal information related to the distribution of F&I products.

24. More specifically, in his role, Aeschliman was expected to provide ongoing support to dealer-clients and their personnel, proactively monitor existing clients' performance by analyzing reports and through regular communications with client personnel, and manage and implement client programs with respect to the distribution of F&I products via Sea Pine's technology applications.

25. For purposes of his background check, Aeschliman represented himself as Steven Richard ("R.") Aeschliman, with a date of birth of September 19, 1983. Because of this representation, Aeschliman passed the background check without incident and began employment with Sea Pine.

*Aeschliman's Misconduct While Employed by Sea Pine*

26. During the course of his employment with Sea Pine, Aeschliman always represented himself as "Steven Richard ("R.") Aeschliman." Several times during the course of his employment, Aeschliman violated Sea Pine's Expense Policy, and charged personal or otherwise unapproved expenses to the corporate credit card.

27. Upon learning of the scope of Aeschliman's expense violations, Sea Pine conducted an internal investigation and learned that Aeschliman was not actually who he represented himself to be.

28. Indeed, Aeschliman's true middle name was Glen ("G."), with a date of birth of August 17, 1983. Investigation of this name revealed that Aeschliman was a convicted felon.

29. More specifically, Sea Pine and Zurich learned that "Steven G. Aeschliman" had an extensive criminal record with a recent 2017 conviction and prison sentence for felonious wire fraud. *See United States v. Aeschliman,* Case No. 3:16-CR-000777 (United States District Court for the Southern District of Iowa).

30. In that case, Aeschliman entered a "knowing and voluntary" guilty plea, for which he was adjudged guilty and a prison sentence was imposed upon him beginning January 6, 2017.

31. Moreover, in April and May 2019, "Steven G. Aeschliman" violated the terms of his supervised release from prison, when he created a fictitious identity for the purpose of engaging in a business activity.

32. That particular issue was resolved on or about July 10, 2019 in the U.S. District Court for the Southern District of Iowa, which directly overlapped with the time period when Aeschliman was on personal leave of absence from Sea Pine, for which he represented to Sea Pine and Zurich related to him having to care for a child with cancer. Instead, it was revealed his child did not have cancer, but rather, Aeschliman had traveled out of state to appear in Court for resolution of his criminal sentence.

33. Upon learning of the false identity and the scope of Aeschliman's misconduct, Sea Pine terminated Aeschliman's employment, effective July 16, 2020. (*See* Termination Letter, at Exhibit 5.)

34. In the termination letter, Aeschliman was reminded of his obligations outlined in the May 7, 2019 Agreement, including, but not limited to, his prohibition from making any disparaging comments about Sea Pine or Zurich generally, as more fully set forth in the Restrictive Covenant Agreement.  (*See* Ex. 4; *see also* Agreement, Section 6 (d).)

35. As of the date of termination, Sea Pine paid Aeschliman the full benefit of his salary, along with the stated car allowance in excess of $4,000.00, plus bonus incentives in the amount of $3,290.  This was all the while Aeschliman misrepresented his true identity, actively concealed his criminal background, and while he misused the company credit card for personal expenses, which, at the date of termination, the amount owed in violation of the Expense Policy exceeded $1,300.00.

36. Not only that, since Aeschliman's termination in July 2020, and in direct contravention of his post-termination contractual obligations, it was discovered that, on information and belief, he posted *at least* three disparaging public reviews on Glassdoor.com regarding his "unfortunate experience" as a former employee of Sea Pine, and disparaged Plaintiffs and one of its executives.  (*See* Glassdoor.com postings, at <u>Exhibit 6</u>.)  Glassdoor is a website where current and former employees "anonymously" review companies, however given the content of the posted reviews, there is little doubt that the author of such postings was Aeschliman.

## COUNT I
## BREACH OF CONTRACT

37. Plaintiffs hereby repeat, re-allege, and incorporate by reference the allegations which are contained in Paragraphs 1 through 36.

38. The Agreement that Aeschliman entered into with Sea Pine and its "parents, subsidiaries and affiliates" constitutes a valid and enforceable contract.

39. Plaintiffs performed all of the duties and obligations they agreed to and owed Aeschliman under the Agreement.

40. The Non-Disparagement Provision in the Agreement requires Aeschliman to refrain from making "any disparaging or defamatory comments regarding any member of the Company Group or its respective current or former directors, officers, employees, members or shareholders in any respect[.]"

41. Despite these express obligations, in breach of the Non-Disparagement Provision, Aeschliman posted at least three public reviews on Glassdoor.com, which directly disparage Sea Pine and its CEO, and Zurich. (*See* Exhibit 6.)

42. Because of the nature of the internet, and the massive audience which can publicly view such postings, Plaintiffs believe that Aeschliman will continue to publish similar, if not worse, disparaging remarks either on Glassdoor.com, or other public forums, to the detriment of Plaintiffs.

43. As a result of Aeschliman's breaches and threatened breaches, Plaintiffs have been irreparably injured, and continue to face irreparable injury. Plaintiffs are threatened with losing the value of their collective reputation, both as a service provider in the insurance industry and as a competitive employer, along with related income and goodwill, for which a remedy at law is inadequate.

44. Accordingly, Aeschliman must be enjoined and restrained by Order of this Court. To the extent a remedy at equity is inadequate, Plaintiffs seek actual, incidental, compensatory, punitive and consequential damages, along with its reasonable attorneys' fees and interest.

## COUNT II
## FRAUDULENT INDUCEMENT/MISREPRESENTATION

45. Plaintiffs incorporate the allegations of paragraphs 1 through 44 as if the same were set forth fully herein.

46. Aeschliman knowingly withheld information from Plaintiffs regarding his true identity and criminal background pursuant to his application to and acceptance of employment

9

with Sea Pine, and actively concealed that information from Sea Pine for the purpose of inducing Sea Pine into entering into an employment relationship with him, resulting in the payment of a generous salary and benefits to Aeschliman.

47. Thus, Aeschliman provided these misrepresentations and omissions of material fact to Sea Pine with the knowledge that they were false and misleading and that Sea Pine would rely on them when determining whether to enter into the Agreement and employment relationship with Aeschliman.

48. Sea Pine justifiably and reasonably relied on Aeschliman's misrepresentations and omissions of material fact in accepting employment with Sea Pine and signing the Agreement, for which it paid Aeschliman the benefit of, among other things, a $75,200.00 annual salary, $15,040 fee to a recruiting firm, corporate car allowance, incentive bonuses, and use of a corporate credit card, in exchange for certain promises outlined therein. Sea Pine and Zurich, therefore, reasonably relied on Aeschliman's representations as true and accurate.

49. In other words, had Aeschliman disclosed his true identity of Steven G. Aeschliman, he would not have passed the background check and Sea Pine would not have entered into an employment relationship with him, paid him such valuable sums of money, or exposed him to such valuable confidential information and customer relationships, since Aeschliman was a convicted felon having only been released from federal prison in early 2019.

50. As a result of Aeschliman's fraudulent conduct, Plaintiffs seek actual, incidental, compensatory, exemplary and consequential damages, pre and post-judgment interest and costs.

## COUNT III
## UNJUST ENRICHMENT

51. Plaintiffs incorporate the allegations of paragraphs 1 through 50 as if the same were set forth fully herein.

52. In express violation of the Sea Pine Expense Policy, Aeschliman charged personal expenses to the corporate credit card provided to him pursuant to his employment, such that, as of the time of termination of employment, Aeschliman retained the excess benefit of at least $1,300.00, to the detriment of Plaintiffs.

53. In other words, Aeschliman has been unjustly enriched in the amount in excess of $1,300.00 by virtue of his failure to abide by the company Expense Policy, and such retention of unearned monies violates fundamental principles of justice, equity, and good conscience.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant Steven G. Aeschliman for breaching his contractual obligations, engaging in fraudulent conduct, and unjustly retaining unearned monies, and award Plaintiffs their stated damages, costs, and pre- and post-judgment interest as a result of Defendant's misconduct, as well as temporarily, preliminarily and permanently enjoining Defendant Aeschliman and all parties in active concert or participation with him, from directly or indirectly disparaging Plaintiffs in any way, and such other relief the Court deems just under the circumstances.

<table>
<tr><td>

**Dated:** September 21, 2020

Of Counsel:

Robyn Marsh
S<small>EYFARTH</small> S<small>HAW</small> LLP
233 S. Wacker Drive
Suite 8000
Chicago, IL 60607
(312) 460-5308

</td><td>

Respectfully submitted,

F<small>ARNAN</small> LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiffs*

</td></tr>
</table>