**STOCKED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

----------------------------------------------------------

SHIVA STEIN,                                              :
                                                         :
                        Plaintiff,                       :    Civil Action No. _____
                                                         :
v.                                                       :    **COMPLAINT FOR VIOLATIONS OF**
                                                         :    **SECTIONS 14(a) AND 20(a) OF THE**
BMC STOCK HOLDINGS, INC., JAMES O.                       :    **SECURITIES EXCHANGE ACT OF**
LEARY, DAVID E. FLITMAN, MARK A.                         :    **1934**
ALEXANDER, CHEEMIN BO-LINN, CORY                         :
J. BOYDSTON, HENRY BUCKLEY,                              :    **JURY TRIAL DEMANDED**
DAVID W. BULLOCK, DAVID L.                               :
KELTNER, MICHAEL T. MILLER, AND                          :
CARL R. VERTUCA, JR.,                                    :
                                                         :
                        Defendants.                      :
----------------------------------------------------------   :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against BMC Stock Holdings, Inc. ("BMC or

the "Company") and the members of BMC's board of directors (the "Board" or the "Individual

Defendants," and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed merger between BMC and Builders FirstSource, Inc. and its affiliates ("Builders

FirstSource").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on October 8, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Boston Merger Sub I Inc., a wholly-owned subsidiary of Builders FirstSource, will merge with and into BMC, with BMC surviving as a wholly-owned subsidiary of Builders FirstSource. Following the completion of the merger, Builders FirstSouce and BMC, along with their respective subsidiaries will operate as a combined company to be operating under the name Builders FirstSource, Inc. (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each BMC stockholder will receive 1.3125 Builders FirstSource shares (the "Merger Consideration").

3.      As discussed below, Defendants have asked BMC's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Moelis & Company LLC ("Moelis"), in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to BMC's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because BMC is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of BMC stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant James O'Leary has served as a member of the Board since May 2014 and is the Chairman of the Board.

11.     Individual Defendant David E. Flitman has served as a member of the Board since 2018 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Mark A. Alexander has served as a member of the Board since 2017.

13.     Individual Defendant Cheemin Bo-Linn has served as a member of the Board since 2019.

3

14.     Individual Defendant Cory J. Boydston has served as a member of the Board since 2018.

15.     Individual Defendant Henry Buckley has served as a member of the Board since 2017.

16.     Individual Defendant David W. Bullock has served as a member of the Board since 2015.

17.     Individual Defendant David L. Keltner has served as a member of the Board since 2015.

18.     Individual Defendant Michael T. Miller has served as a member of the Board since 2015.

19.     Individual Defendant Carl R. Vertuca, Jr. has served as a member of the Board since 2015.

20.     Defendant BMC a Delaware corporation and maintains its principal offices at 8020 Arco Corporate Drive, Suite 400, Raleigh, NC 27617.   The Company's stock trades on the NASDAQ Stock Exchange under the symbol "BMCH."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Proposed Transaction**

23.     BMC, together with its subsidiaries, provides various building products and services for homebuilder and professional contractor customers in the United States.   It offers structural components, including floor trusses, roof trusses, wall panels, and engineered wood

products; lumber and lumber sheet goods, such as dimensional lumber, and plywood and oriented

strand board products used in on-site house framing; and millwork, doors, and windows

comprising interior and exterior doors, windows, interior trims, custom millworks, moldings, stairs

and stair parts, cabinetry, and other products.  The Company also provides other building products

and services that consist of hardware, wood boards, gypsum, insulation, roofing, siding, and

flooring; and design assistance and professional installation services, as well as professional

estimating, product advisory, and product display services.  It primarily serves large-scale

production homebuilders, custom homebuilders, multi-family builders, and professional repair and

remodeling contractors.  The Company provides its products through its distribution locations and

eCommerce platform. BMC was founded in 1922 and is headquartered in Raleigh, North Carolina.

24.    On August 27, 2020, the Company and Builders FirstSource jointly announced the

Proposed Transaction:

> DALLAS and RALEIGH, N.C., Aug. 27, 2020 (GLOBE NEWSWIRE) -- Builders FirstSource, Inc. (Nasdaq: BLDR) ("Builders FirstSource") and BMC Stock Holdings, Inc. (NASDAQ: BMCH) ("BMC"), today announced that they have entered into a definitive merger agreement under which Builders FirstSource and BMC will combine in an all-stock merger transaction to create the nation's premier supplier of building materials and services.  The companies will host a joint conference call today at 7:30 a.m. Central Time (8:30 a.m. Eastern Time) to discuss the transaction.
>
> Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, BMC shareholders will receive a fixed exchange ratio of 1.3125 shares of Builders FirstSource common stock for each share of BMC common stock. Upon completion of the merger, existing Builders FirstSource shareholders will own approximately 57% and existing BMC shareholders will own approximately 43% of the combined company on a fully diluted basis. The merger is expected to be tax free for U.S. federal income tax purposes.

5

After a 90-day transition period following the completion of the merger, Chad Crow, current Chief Executive Officer of Builders FirstSource, will retire as previously announced and will be succeeded as Chief Executive Officer of the combined company by Dave Flitman, current Chief Executive Officer of BMC. Thereafter, Mr. Crow will continue to be available on a consulting basis to the combined company for a period of time to support the integration execution and to ensure an orderly transition.

Mr. Crow said, "This is a transformational opportunity that unites two outstanding and complementary companies, providing enhanced scale and superior returns as we build upon a new, larger platform. Builders FirstSource and BMC together will have a very diverse portfolio of value-added offerings and greater resources to more closely partner with and serve customers. The transaction is expected to produce tremendous value for the shareholders of both companies through the realization of significant cost synergies, the realization of attractive growth opportunities and the acceleration of technological innovation. Similar to the success of our prior acquisition of ProBuild, we will be poised to capitalize on the strength of our combined platform and the significant upside potential in our key end markets to increase sales, reduce costs and improve cash flow. We are excited about the opportunities ahead and look forward to quickly realizing the benefits of this transaction."

Mr. Flitman stated, "We believe this strategic combination of two great organizations is an exciting step forward for both BMC and Builders FirstSource, as well as for our associates, our customers and other key stakeholders. As we accomplished in our prior combination with Stock Building Supply, this transformational merger will enable BMC to further accelerate our profitable growth strategy with a company that also focuses on providing a broad product portfolio and differentiated capabilities deployed through a customer-focused service model.  Our customers and associates will benefit from the strengths of our exceptional teams, who share common values and a dedication to providing innovative services and solutions. We believe this compelling combination will enhance our ability to deliver outstanding customer service, generate attractive financial returns and create shareholder value. I look forward to working closely with Chad and the collective management teams of both companies to complete the transaction and further advance our next chapter of profitable growth."

6

**Strategic Rationale and Financial Benefits of Winning Combination**

- **Leading Supplier of Building Materials and Services:** The combined company will become the nation's premier supplier of building materials and services, with combined sales in excess of $11 billion and approximately 26,000 team members. The combined company, operating a leading network of 550 distribution and manufacturing locations, will have a presence in 42 states, including 44 of the top 50 metropolitan statistical areas, covering most of the nation's fastest growing regions.

- **Enhanced Value-added Offerings:** Benefitting from the focus on value-added product and service capabilities that both Builders FirstSource and BMC have long shared, these offerings will represent approximately 43% of the combined company's sales. BMC's distinct millwork capability, READY-FRAME® offerings and other manufactured products will complement Builders FirstSource's strengths in trusses and manufactured components, among other offerings, to enable further penetration of key segments through the delivery of value-enhancing efficiencies to customers and superior solutions across a broader platform.

- **Expanded Geographic Footprint and Strengthened Distribution Network:** The combined company's increased geographic reach and diversity will provide a wider set of opportunities and deeper resources for organic and inorganic growth to meet the needs of more customers in the highly fragmented professional building materials industry nationwide.

- **Significant Synergy Opportunities and Earnings Accretion:** In addition to expanded top-line growth opportunities, the combination is expected to generate approximately $130 million to $150 million in annual run-rate cost savings within three years. Key drivers of these synergies include procurement, SG&A savings and expanded operational excellence through the adoption of best practices from each company. The transaction is expected to be accretive to adjusted earnings per share in the first year after closing.

- **Strong Financial Profile and Capital Flexibility:** The combined company will be supported by a strong financial profile, with combined Adjusted EBITDA[1] of approximately $950 million for the trailing twelve-month period ended June 30, 2020, including annual run-rate synergies, and combined net debt-to-Adjusted EBITDA[2] of 1.4x. The combined company will remain operationally and financially disciplined with a focus on driving robust free cash flow, preserving its strong balance sheet and

flexible capital structure to pursue a wide range of capital deployment strategies and deliver additional value to shareholders.

- **Accelerated Innovation:** The combined company will have far greater resources to invest in innovation and develop targeted solutions, which is expected to accelerate the next generation of growth and deliver value on behalf of our customers.

- **Complementary Cultures:** The combined company will bring together two strong performance-based cultures focused on people, safety, innovation, collaboration, integrity, diversity and corporate social responsibility. The collective workforce of highly skilled team members will benefit from expanded opportunities for career development and be empowered to provide best-in-class service to customers and communities.

**Leadership and Governance**

Following the transaction closing, the combined company will operate under the name Builders FirstSource, Inc. and will be headquartered in Dallas, TX, while maintaining key functional corporate centers of excellence in both Raleigh, NC and Denver, CO.

In addition to the succession of Dave Flitman as Chief Executive Officer of the combined company, the management team will be comprised of leaders from both organizations. Peter Jackson, Chief Financial Officer of Builders FirstSource, will serve as Chief Financial Officer of the combined company. The transition and integration of the combined company will be led by Dave Rush, Chief Operating Officer of Builders FirstSource's East Region, who led the integration team for Builders FirstSource in its ProBuild acquisition, and Jim Major, Chief Financial Officer of BMC.

Upon closing, the combined company's Board of Directors will have 12 directors, consisting of seven members from the Builders FirstSource Board of Directors and five members from the BMC Board of Directors. Paul S. Levy, Co-Founder and current Chairman of the Board of Builders FirstSource, will serve as Chairman of the Board of Directors of the combined company.

Mr. Levy commented, "We are excited to join forces with BMC. We started Builders FirstSource in 1998 with an ambitious vision, and the combination of these two exceptional companies represents another significant milestone, further enhancing value for all stakeholders. Our ability to continue to build our world-class

organization exists because of the extraordinary commitment of our many teammates, led through many incredibly dynamic periods by Chad Crow and our prior CEO, Floyd Sherman, and we look forward to continuing that strong legacy of leadership under Dave Flitman. I have full confidence in the unified team to accelerate the success of this larger platform and continue building upon our powerful momentum into 2021 and beyond."

**Timeline and Approvals**

The transaction is expected to close in late 2020 or early 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, as well as other customary closing conditions. The transaction requires the approval of shareholders of both Builders FirstSource and BMC.

**Advisors**

Rothschild & Co and Morgan Stanley & Co. LLC are serving as financial advisors to Builders FirstSource and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal advisor. Moelis & Company is serving as financial advisor to BMC and Simpson Thacher & Bartlett LLP is serving as its legal advisor.

\* \* \*

25.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that BMC's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Registration Statement**

26.     On October 8, 2020, BMC and Builders FirstSource jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's

9

stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27.     The Registration Statement fails to provide material information concerning financial projections by management and relied upon by the financial advisor in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Registration Statement indicates that in connection with the rendering of its fairness opinion, that the management prepared certain non-public financial forecasts (the "Company Projections" and "Builders FirstSource Projections") and provided them to the Board and the financial advisor by management of both BMC and Builders FirstSource with forming a view about the stand-alone and pro forma valuations.  Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that managements provided to the Board and its financial advisor.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections and the Builders FirstSource Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2024: Adjusted EBITDA and Unlevered

Free Cash Flows, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

31.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32.      With respect to Moelis' *BMC DCF Analysis*, the Registration Statement fails to disclose: (i) the terminal values of BMC as of December 31, 2024; (ii) all line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2020 through 2024; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.5% to 2.5%; and (iv) the inputs and assumptions underlying the discount rates ranging from 9.00% to 10.50%, including (1) a risk-free rate based on the yield on 20-year U.S. government bonds as of August 25, 2020; (2) the selected range of unlevered betas and debt to total capitalization ratios informed by selected public companies; (3) an equity risk premium; and (4) a size premium.

33.      With respect to Moelis' *Builders FirstSource DCF Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Builders FirstCource as of December 31, 2024; (ii) all line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2020 through 2024; (iii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.5% to 2.5%; and (iv) the inputs and assumptions underlying the discount rates ranging from 8.75% to 10.25%, including (1) a risk-free rate based on the yield on 20-year U.S. government bonds as of August 25, 2020; (2) the selected range of unlevered betas and debt to total capitalization ratios informed by selected public companies; (3) an equity risk premium; and (4) a size premium.

34.      With respect to Moelis' *Net Synergies Estimates DCF Analysis*, the Registration Statement fails to disclose: (i) the terminal values of the combined company as of December 31, 2024; (ii) the inputs and assumptions underlying the use of the implied perpetuity growth rate of 1.5% to 2.5%; (iii) the inputs and assumptions underlying the discount rates ranging from 8.75% to 10.25%; and (iv) the terminal year after-tax synergies.

35.     With respect to Moelis' *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Moelis in its analysis.

36.     With respect to Moelis' *Premiums Paid Analysis*, the Registration Statement fails to disclose the transactions observed by Moelis and the premiums paid in those transactions.

37.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of
### Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and

authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

45.     The Individual Defendants acted as controlling persons of BMC within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of

BMC, and participation in and/or awareness of the Company's operations and/or intimate

knowledge of the incomplete and misleading statements contained in the Registration Statement

filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of BMC, including the content and dissemination of the

various statements that Plaintiff contends are materially incomplete and misleading.

46.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance

of the statements or cause the statements to be corrected.

47.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of BMC, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The

Individual Defendants were thus directly involved in the making of the Registration Statement.

48.     In addition, as the Registration Statement sets forth at length, and as described

herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement.  The Registration Statement purports to describe the various issues and

information that the Individual Defendants reviewed and considered.  The Individual Defendants

participated in drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants

jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents,

employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Registration Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: October 8, 2020                                    **RIGRODSKY & LONG, P.A.**

                                                          By:  */s/ Gina M. Serra*

**OF COUNSEL:**                                                Brian D. Long (#4347)
                                                               Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**                                     300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**                                         Wilmington, DE 19801
Gloria Kui Melwani                                             Telephone: (302) 295-5310
270 Madison Avenue                                             Facsimile: (302) 654-7530
New York, NY 10016                                             Email: bdl@rl-legal.com
Telephone: (212) 545-4600                                      Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com                                       *Attorneys for Plaintiff*