# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

--------------------------------------------------------

ELAINE WANG,                     :
                                    :

           Plaintiff,         :    Case No. _____
                                      :

v.                                        :
                                      :    **COMPLAINT FOR VIOLATIONS OF**

AMAG PHARMACEUTICALS, INC., JOHN   :    **SECTIONS 14(e), 14(d) AND 20(a) OF**
A. FALLON, PAUL FONTEYNE, DAVID     :    **THE SECURITIES EXCHANGE ACT**
JOHNSON, SCOTT MYERS, KATHRINE     :    **OF 1934**
O'BRIEN, ANNE M. PHILLIPS, GINO        :
SANTINI, DAVEY S. SCOON, and JAMES    :    **JURY TRIAL DEMANDED**
SULAT,                                     :
                                      :
           Defendants.      :

--------------------------------------------------------

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against AMAG Pharmaceuticals, Inc. ("AMAG or the "Company") and the members of AMAG's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of AMAG by affiliates of Covis Group S.à r.l., a Luxembourg company ("Covis").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on October 15, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Covis Mergerco Inc. ("Merger Sub"), a wholly-owned subsidiary of Covis, will merge with AMAG, with AMAG continuing as the surviving corporation (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated October 1, 2020 (the "Merger Agreement"), each AMAG common share issued and outstanding will be converted into the right to receive $13.75 per share in cash (the "Merger Consideration").  In accordance with the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of AMAG's outstanding common stock and will expire on November 12, 2020.

3.     Defendants have now asked AMAG's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.   Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) AMAG's financial projections relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in its financial analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor.  The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as AMAG's stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the Tender Offer.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to AMAG's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendant AMAG is incorporated in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of AMAG common stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant John A. Fallon has served as a member of the Board since September 2014.

11.     Individual Defendant Paul Fonteyne has served as a member of the Board since October 2019.

12.     Individual Defendant David Johnson has served as a member of the Board since October 2019.

13.     Individual Defendant Scott Myers has served as a member of the Board, President, and Chief Executive Officer since April 2020.

14.     Individual Defendant Kathrine O'Brien has served as a member of the Board and since April 2019.

15.     Individual Defendant Anne M. Phillips has served as a member of the Board since April 2019.

16.     Individual Defendant Gino Santini has served as a member of the Board since February 2012 and as Chairman of the Board since April 2014.

17.     Individual Defendant Davey S. Scoon has served as a member of the Board since December 2006.

18.     Defendant AMAG is incorporated in Delaware and maintains its principal offices at 1100 Winter Street, Waltham, Massachusetts 02451.  The Company's common stock trades on the NASDAQ Exchange under the symbol "AMAG."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     The Proposed Transaction

21.     AMAG, a pharmaceutical company, develops, manufactures, and commercializes therapeutics for maternal and women's health, and anemia management in the United States.  The Company markets Feraheme (ferumoxytol), an intravenous iron replacement therapeutic agent for the treatment of iron deficiency anemia in adult patients who have intolerance to oral iron or have had unsatisfactory response to oral iron, as well as patients who have chronic kidney disease; Makena, a hydroxyprogesterone caproate injection to reduce the risk of preterm birth in women pregnant with a single baby who have a history of singleton spontaneous preterm birth; Intrarosa(prasterone) vaginal insert steroid for the treatment of dyspareunia due to menopause; and Vyleesi (bremelanotide), an auto-injector device for the treatment of hypoactive sexual desire disorder in pre-menopausal women. Its product candidates also include AMAG-423 (ovine), an antibody fragment, which is in Phase 2b/3a trial for the treatment of severe preeclampsia in pregnant women; and Ciraparantag, an anticoagulant reversal agent that is in planned Phase 2b trial for the treatment of novel oral anticoagulants or low molecular weight heparin.  The Company sells Feraheme to authorized wholesalers and specialty distributors.  The Company has license agreements with Endoceutics, Inc., Palatin Technologies, Inc., Velo Bio, LLC, Prasco, LLC, Perosphere Pharmaceuticals Inc., and Antares Pharma, Inc.  AMAG was founded in 1981 and is headquartered in Waltham, Massachusetts.

22.     On October 1, 2020, the Company and Covis jointly announced the Proposed Transaction:

> LUXEMBOURG, ZUG, Switzerland and WALTHAM, Mass., Oct. 01, 2020 (GLOBE NEWSWIRE) -- Covis Group S.à.r.l. ("Covis") and AMAG Pharmaceuticals, Inc. (NASDAQ: AMAG) today announced that they have entered into a definitive agreement under which Covis will acquire AMAG for $13.75 per share in cash, or approximately $498 million on a fully diluted basis and

approximately $647 million on an enterprise basis, including debt obligations expected to be assumed or repaid net of cash. The offer represents a premium of approximately 46% to the closing price of AMAG's common stock on September 30, the last full trading day prior to the announcement.

Commenting on the transaction, Covis CEO Michael Porter said, "AMAG's category leading treatments are strong strategic complements to our existing therapeutic portfolio. Through this combination, we believe we will be able to unlock value for all of our stakeholders, employees and patients through the effective and efficient management of these products, coupled with our two companies' longstanding commitment to expanding patient access to therapy and putting patient interests first. At Covis, we never lose sight that our patients are our paramount concern. We look forward to engaging with the talented team at AMAG as we work together to plan the integration of our two organizations."

AMAG CEO Scott Myers added, "In the beginning of 2020, AMAG announced that the company had undertaken a strategic review of our product portfolio and strategy, the guiding principles of which included driving near- and long-term profitability and enhancing shareholder value. This strategic review resulted in the company pursuing and accomplishing the divestiture of its women's health assets, and other efforts to streamline and strengthen the core business to position AMAG for the future. Following this initial transformation, our Board of Directors and management team, together with independent legal and financial advisors, thoroughly evaluated the transaction with Covis as well as other strategic options and concluded that it represents the most compelling opportunity for shareholders, providing them certain and immediate cash value. We believe Covis is the right partner for AMAG, especially in light of Covis' shared commitment to ensuring that our therapies will reach patients in need. We are confident the work we've done will continue to thrive under Covis' leadership."

The completion of the tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of AMAG's common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, an indirect, wholly owned subsidiary of Covis will merge with AMAG (the "merger") and the outstanding AMAG shares not tendered in the tender offer will be converted into the right to receive the same $13.75 per share in cash paid in the tender offer. The tender offer is expected to commence in October 2020. Covis plans to finance the transaction with cash on hand, and a combination of committed debt and equity financing. There is no financing condition to the obligations of Covis to consummate the transaction.

As part of the transaction, Covis intends to enter into an amended and restated credit facility with its current lenders (the "Lenders"), pursuant to which the Lenders will provide up to a $460 million senior secured incremental term loan and a $55 million

secured revolver (the "Covis Debt Financing"). The proceeds from the Covis Debt Financing, plus equity commitments from Covis' equity sponsor, will be used to pay the cash purchase price for the transaction and repay any of the existing AMAG debt that is not assumed. The Covis Debt Financing amount will be added to Covis' current $450 million term loan facility with the Lenders. As the merger will result in a change of control under the terms of AMAG's Indenture governing its 3.25% Convertible Senior Unsecured Notes Due 2022 (the "Convertible Notes"), the holders of the Convertible Notes will have the right to put at par the Convertible Notes held by them for a period of twenty business days following the closing of the merger.

All Board members and executive officers of AMAG have agreed to tender their shares in favor of the transaction. The transaction, which has been unanimously approved by the Board of Directors of each company, is expected to close in November 2020, pending Hart-Scott-Rodino (HSR) approval and the conditions to the tender offer being satisfied.

Goldman Sachs & Co. LLC is acting as exclusive financial advisor, and Goodwin Procter LLP is acting as legal advisor to AMAG. Paul, Weiss, Rifkind, Wharton and Garrison LLP is acting as legal advisor to Covis.

\* \* \*

23.     It is therefore imperative that AMAG's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

24.     On October 15, 2020, AMAG filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

25.    The Solicitation Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Goldman Sachs, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

*Omissions and/or Material Misrepresentations Concerning AMAG Financial Projections*

26.    The Solicitation Statement fails to provide material information concerning financial projections by AMAG's management and relied upon by the financial advisor in its analyses.  The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company.  Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that AMAG management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.    For the Projections prepared by Company management for AMAG for fiscal years 2020 through 2024, the Solicitation Statement provides values for a non-GAAP (Generally

Accepted Accounting Principles) financial metric: (a) EBIT, but fails to disclose: (i) the line items used to calculate the non-GAAP measure or (ii) a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G.

28.     When a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

GAAP measure to make the non-GAAP metric included in the Solicitation Statement not misleading.

31.     Further, the Solicitation Statement notes that, in connection with preparing the fairness opinion, Goldman Sachs reviewed, along with the Projections, "certain analyses prepared by the management of the Company related to the expected utilization by the Company of certain net operating loss carryforwards of the Company, as approved for our use by the Company (the "NOL Forecasts")."  Solicitation Statement at 24, A-2.  However, the Solicitation Statement fails to disclose the NOL Forecasts or the NOLs.  Such forecasts and figures are material to AMAG's shareholders, as the Board cites the Company's NOL Forecasts and the expectation that the utilization of such NOLs as a reason why AMAG's shareholders should tender their shares in support of the Proposed Transaction.  The omission of the NOL Forecasts render the summary of Goldman Sachs' analyses which utilized the NOL Forecasts incomplete and misleading.

*Omissions and/or Material Misrepresentations Concerning Goldman Sachs' Financial Analyses*

32.     With respect to Goldman Sachs' *Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the NOLs and the NOL Forecasts; (ii) the basis for applying the range of discount rates from 10.5% to 12.5%; (iii) certain company-specific inputs, including AMAG's target capital stricture weightings, the cost of long-term debt, future applicable marginal cash tax rate and a beta for the company; (iv) the number of fully diluted outstanding shares of the Company as of September 25, 2020; and (v) the Company's net debt as of June 30, 2020.

33.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Solicitation Statement fails to disclose: (i) Goldman's basis for applying a range of illustrative on-year forward EV / Revenue multiples of 2.0x to 3.0x to revenues estimates for the

Company for each of fiscal years 2022 to 2025; and (ii) the inputs underlying the discount rate of 11.6%.

34.     With respect to Goldman Sachs' *Premia Analysis*, the Solicitation Statement fails to disclose the premia and the transactions analyzed by Goldman Sachs.

35.     In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

38.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer.  Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.    The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants.  It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisors' valuation analyses and resultant fairness opinion.

40.    In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

41.    The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek other remedies.  In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

42.    Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

43.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT II**
**Violations of Section 14(d)(4) of the Exchange Act and**
**Rule 14d-9 Promulgated Thereunder**
**(Against All Defendants)**

44.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

45.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

46.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

47.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

48.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

49.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

13

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of AMAG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of AMAG, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of AMAG, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of AMAG, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

54.    In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57.    Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

15

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 19, 2020                    **RIGRODSKY & LONG, P.A.**

                                           By:   */s/ Gina M. Serra*
**OF COUNSEL:**                                  Brian D. Long (#4347)
                                                 Gina M. Serra (#5387)
**WOLF HALDENSTEIN ADLER**                       300 Delaware Avenue, Suite 210
**FREEMAN & HERZ LLP**                           Wilmington, DE 19801
Gloria Kui Melwani                               Telephone: (302) 295-5310
270 Madison Avenue                               Facsimile: (302) 654-7530
New York, NY 10016                               Email: bdl@rl-legal.com
Telephone: (212) 545-4600                        Email: gms@rl-legal.com
Facsimile: (212) 686-0114
Email: melwani@whafh.com                         *Attorneys for Plaintiff*