IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMERSON QUIET KOOL CO. LTD., and HOME EASY LTD., <br><br> Plaintiffs, <br><br> v. <br><br> EMERSON ELECTRIC CO., <br><br> Defendant. | C.A. No. _____ <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Emerson Quiet Kool Co. Ltd. and Home Easy Ltd., by and through their undersigned counsel, bring this action against Defendant Emerson Electric Co. and allege as follows:

### NATURE OF THE ACTION

1. Shortly after executing an agreement expressly consenting to the registration of a trademark owned by Plaintiff's successor, Defendant breached that agreement by registering Plaintiffs' trademark, and then promoting and distributing goods bearing that trademark.

2. Defendant's deliberate actions caused Plaintiffs' manufacturer to stop manufacturing Plaintiffs' goods, Plaintiffs' customers to sharply decrease their orders for the purchase of Plaintiffs' goods, and caused Plaintiff to breach its purchase order with a large customer.

3. Defendants' conduct—including breach of contract, breach of the implied covenant of good faith and fair dealing, unfair competition, violation of the Delaware Deceptive Trade Practices Act, tortious interference with prospective business relations, and tortious

1

interference with contract—is intended to destroy Plaintiffs' business and has caused Plaintiff significant harm.

## THE PARTIES

4. Emerson Quiet Kool Co. Ltd. ("Emerson Quiet Kool") and Home Easy Ltd. ("Home Easy," and together with Emerson Quiet Kool, collectively "Plaintiffs") are both Delaware corporations having a principal place of business at 1275 Bloomfield Avenue, Unit 141, Building 16, Fairfield, New Jersey 07004.

5. Emerson Electric Co. ("Emerson Electric" or "Defendant") is a Missouri corporation with its principal place of business at 8000 West Florissant Avenue, St. Louis, Missouri 63136.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to at least 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy, exclusive of costs, interest, attorneys' fees and expenses, exceeds the sum or value of $75,000.

7. This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and is engaged in systematic and continuous contacts with this District.

8. Venue is conferred in accordance with 28 U.S.C. §1391.

## FACTUAL BACKGROUND

**A.    The Consent Agreements**

9. The EMERSON QUIET KOOL trademark was registered with the United States Patent and Trademark Office (the "USPTO") in 1979, alleging a first use in commerce in 1949.

10. Airwell North America Hong Kong Technologies Ltd. ("Airwell") acquired the EMERSON QUIET KOOL mark in 2008.

11. In 2009, Emerson Electric filed a cancellation proceeding with the USPTO alleging abandonment of the EMERSON QUIET KOOL mark. Airwell and Emerson Electric resolved the matter by consent agreement (the "2009 Consent Agreement"). Exhibit 1. Because the parties did not "anticipate of any confusion to date arising from the concurrent use of their respective marks, on or in connection with their respective goods and/or services," Airwell consented to the registration of Emerson Electric's marks and Emerson Electric withdrew its cancellation petition. *Id*. ¶¶ 7-8, 11.

12. Pursuant to the 2009 Consent Agreement, "[e]ach Party agree[d] not to promote, advertise or distribute its respective goods and/or services in any way that would lead consumers to associate it with the other Party or its goods and/or services." *Id*. ¶ 9.

13. In 2010, Airwell filed an application to register the EMERSON QUIET KOOL mark for "portable compact residential and wall room air conditioning units" (the "Airwell Goods"). After the USPTO cited certain Emerson Electric marks as bars to the registration of Airwell's application, Airwell and Emerson Electric entered into a second consent agreement (the "2011 Consent Agreement"). Exhibit 2.

14. Because the parties did not "anticipate any confusion arising from the concurrent use of their respective marks, on or in connection with their respective goods and/or services," Emerson Electric consented to the registration of the EMERSON QUIET KOOL mark (referred to as the "Airwell Mark" in the 2011 Consent Agreement). *Id*. ¶ 4.

15. Pursuant to the 2011 Consent Agreement:

Emerson hereby consents to registration of the Airwell Mark in the Application and to use of the Airwell Mark, in connection with the Airwell Goods, in light of the following:

    a. The Airwell Mark and the Emerson Marks are, or can be made to be, sufficiently different in their entireties as to appearance and commercial impression, when

    taken with the differences between the distinct goods and/or services, such that there is no likelihood of confusion;

    b. The Airwell Goods and Emerson's respective goods and/or services are sufficiently different when used in connection with their respective marks.

*Id.* ¶ 5.

  16. Similar to the 2009 Consent Agreement, each of the parties agreed "not to promote, advertise or distribute its respective goods and/or services in any way that would lead consumers to associate it with the other Party or its goods and/or services." *Id*. ¶ 6.

  **B.** **Emerson Quiet Kool Was Assigned the EMERSON QUIET KOOL Marks**

  17. Midea Group ("Midea"), a Fortune Global 500 Company, manufactures home appliances including air conditioners, dishwashers, refrigerators, laundry machines, and other small domestic appliances in China.

  18. Midea's customers include retailers such as Walmart, Home Depot, BrandSmart, MENARDS, and Sears. Midea's air conditioning business grosses more than $600 million in sales each year and has approximately 40%-45% of the market share in North America via Original Equipment Manufacturing (OEM) and Own Brand Management (OBM). An OEM produces parts and equipment that may be marketed by another manufacturer.

  19. In 2010, Midea began doing OEM business with Airwell-Fedders under the Fedders and EMERSON QUIET KOOL brands. From 2012, Midea started making EMERSON QUIET KOOL products for Airwell-Fedders, including window air conditioners, portable air conditioners, and dehumidifiers. Those EMERSON QUIET KOOL products were sold to large accounts in the United States.

  20. Paragraph 8 of the 2011 Consent Agreement allows the rights provided under the agreement to be assigned. "Either party may license or assign its respective rights hereunder, in whole or in part, provided that such license, assignment, or other agreement does not conflict

with the provisions of this Agreement and provided that the parties to the same ratify and expressly agree to be bound by the terms hereof." *Id*. ¶ 8.

21. Wei Xiao was Vice President of Midea's International Division and President of Midea North America from 2010 to 2013. He was President of Midea's SDA Global Business from 2014 to 2016. In his role at Midea, Xiao helped facilitate the transfer of the EMERSON QUIET KOOL marks and goodwill from Elco Holland BV to American Ductless AC Corp. American Ductless transferred the trademarks to Emerson Quiet Kool, a Delaware corporation, in 2014.

22. The EMERSON QUIET KOOL marks and goodwill were assigned to Emerson Quiet Kool in 2017. Emerson Quiet Kool has authorized Home Easy to use the EMERSON QUIET KOOL marks.

23. The following chart shows the assignment history of the EMERSON QUIET KOOL marks and goodwill.

| **Assignor** | **Assignee** | **Date Recorded** | **Type** |
|---|---|---|---|
| National Union Electric Corp. | Emerson Quiet Kool Corp. | 11/4/1983 | Assigns the Entire Interest and the Goodwill |
| Emerson Quiet Kool Corp. | Jepson Corporation | 4/30/1990 | Merger |
| Jepson Corporation | Falcon Manufacturing Inc. | 9/27/1991 | Name Change |
| Falcon Manufacturing Inc. | Fedders North America | 9/27/1991 | Assigns the Entire Interest and the Goodwill |
| Fedders North America | Airwell Hong Kong Technologies Limited | 7/8/2008 | Assigns the Entire Interest and the Goodwill |

| Fedders Hong Co. Ltd. (f/k/a Airwell Hong Kong Technologies Limited) (Registration No. 4,688,893) | Elco Holland BV | 12/14/2012 | Assigns the Entire Interest and the Goodwill |
| Elco Holland BV | American Ductless AC Corp | 10/21/2014 | Assigns the Entire Interest and the Goodwill |
| American Ductless AC Corp | Emerson Quiet Kool Ltd | 2/6/2017 | Assigns the Entire Interest and the Goodwill |

  **C.** **Emerson Electric Improperly Registers Emerson Quiet Kool's Mark in China**

24. Unbeknownst to Emerson Quiet Kool, after executing the 2011 Consent Agreement, Emerson Electric misappropriated the EMERSON QUIET KOOL mark by registering various EMERSON QUIET KOOL trademarks in China. Emerson Quiet Kool does not sell products in China under the EMERSON QUIET KOOL Mark.

25. Based on those improper trademark registrations, Emerson Electric filed an action with the Zhongshan Customs Office in the Port of Zhongshan in May 2018. On or around that time, the Port of Zhongshan detained Emerson Quiet Kool's goods; specifically, over 600 window air conditioning units worth approximately $1.2 million. Those air conditioning units, which represent approximately $300,000 in damages to Emerson Quiet Kool, remain at the Port of Zhongshan today.

26. Since May 2018, Emerson Quiet Kool has been unable to export any of its goods from the Port of Zhongshan and into the United States.

27. In 2018, Emerson Electric commenced a legal action in the Chinese Court system to prevent Emerson Quiet Kool from manufacturing its products in China. In the litigation, Emerson Electric disclosed evidence showing that it is putting EMERSON QUIET KOOL

6

stickers on Emerson Electric products, and is otherwise marking its products with Emerson Quiet Kool's mark.

28. As a result of the Chinese lawsuit, Midea stopped manufacturing goods and products for Emerson Quiet Kool. Moreover, Gree, one of the largest manufacturers of air conditioners in China, refused to produce goods for Emerson Quiet Kool – as did many other Chinese manufacturers.

29. Emerson Electric's registration of the EMERSON QUIET KOOL mark, its lawsuit in China, and its promotion, advertisement and distribution of goods in China under the EMERSON QUIET KOOL mark has caused confusion in the marketplace, not only by workers in the Port of Zhongshan, but amongst consumers, retailers, and distributors of air conditioning units.

30. For example, the shipment that was detained in the Port of Zhongshan was bound for New York Appliances (d/b/a AC & Appliances Wholesaler Corporation), a major distributor of Emerson Quiet Kool's goods. Because the shipment was unable to be delivered, Emerson Quiet Kool breached its 2018 and 2019 purchase orders with New York Appliances. Thereafter, New York Appliances significantly reduced further 2019 and 20210 purchase orders from Emerson Quiet Kool. New York Appliances informed Emerson Quiet Kool that it needed a reliable supplier that could get goods to the United States, and that it wanted to limit its exposure to any liability to Emerson Electric.

31. Retailers of Emerson Quiet Kool products such as Homedepot.com and Walmart.com also decreased their orders with Emerson Quiet Kool in 2018-2020, citing confusion as to the ownership of the EMERSON QUIET KOOL trademark and fear of legal action by Emerson Electric.

32. Emerson Electric's calculated and unlawful actions are designed to destroy Emerson Quiet Kool's business. Emerson Quiet Kool's ability to manufacture its goods and products in China, and ship them from China to the United States, has been severely limited. As a result Emerson Quiet Emerson Quiet Kool has suffered millions of dollars of damages from 2018 through the present in lost sales and lost profits.

33. Additionally, Emerson Electric's actions have unfairly locked Emerson Quiet Kool out of the Chinese market, causing millions of dollars in damages from 2016-2020.

## COUNT I
### (BREACH OF CONTRACT)

34. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

35. The 2011 Consent Agreement is a valid and binding contract.

36. Defendant consented to Emerson Quiet Kool's registration of the EMERSON QUIET KOOL mark and use of the EMERSON QUIET KOOL mark in connection with "portable compact residential and wall room air conditioning units."

37. Defendant also agreed in the 2011 Consent Agreement "not to promote, advertise or distribute its respective goods and/or services in any way that would lead consumers to associate it with the other Party or its goods and/or services."

38. Defendant breached the 2011 Consent Agreement by registering the EMERSON QUIET KOOL in connection with "portable compact residential and wall room air conditioning units."

39. Defendant further breached the 2011 Consent Agreement by marking its goods and products with the EMERSON QUIET KOOL marks in promoting, advertising, and distributing its goods.

8

40. As a direct and proximate result of Defendant's breach of the 2011 Consent Agreement, Plaintiffs have suffered and will continue to suffer significant harm.

## COUNT II
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

41. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

42. Delaware law implies a covenant of good faith and fair dealing in all contracts.

43. The implied covenant of good faith and fair dealing requires that Defendant refrain from arbitrary or unreasonable conduct that has the effect of preventing Emerson Quiet Kool from receiving the benefit of its bargain.

44. Defendant breached the implied covenant of good faith and fair dealing in connection with the 2011 Consent Agreement by registering the EMERSON QUIET KOOL in China in connection with "portable compact residential and wall room air conditioning units."

45. Defendant further breached the implied covenant of good faith and fair dealing in connection with the 2011 Consent Agreement by marking its goods and products with the EMERSON QUIET KOOL marks in promoting, advertising, and distributing its goods in China.

46. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs have suffered and will continue to suffer significant harm.

## COUNT III
### (UNFAIR COMPETITION)

47. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

48. Emerson Quiet Kool had a reasonable expectancy of entering a valid business relationship with Midea, Gree, and other Chinese manufacturers of air conditioners.

49. Emerson Quiet Kool had a reasonable expectancy of entering a valid business relationship with New York Appliances, HomeDepot.com, Walmart.com, and other retailers for the sale of Emerson Quiet Kool air conditioners.

50. Defendant's unlawful registration of the EMERSON QUIET KOOL mark in China and intentional marking of its products with the EMERSON QUIET KOOL mark wrongfully interfered with Emerson Quiet Kool's expectancy that it would enter into further manufacturing orders with Midea, and future manufacturing orders with Gree and other manufacturers in China.

51. Defendant's unlawful registration of the EMERSON QUIET KOOL mark in China and intentional marking of its products with the EMERSON QUIET KOOL mark wrongfully interfered with Emerson Quiet Kool's expectancy that it would enter into further purchase orders with New York Appliances, HomeDepot.com, Walmart.com, and other retailers.

52. As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have suffered and continue to suffer significant harm and irreparable injury.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS)

53. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

54. Emerson Quiet Kool had a reasonable probability of further business opportunities with Midea for future manufacturing of its air conditioners. Emerson Quiet Kool also had reasonable probabilities of business opportunities with Gree and other Chinese manufacturers of air conditioners.

55. Defendant's unlawful registration of the EMERSON QUIET KOOL mark in China and intentional marking of its products with the EMERSON QUIET KOOL mark

wrongfully and intentionally interfered with Emerson Quiet Kool's opportunities to enter into further manufacturing orders with Midea, and future manufacturing orders with Gree and other manufacturers in China.

56. Emerson Quiet Kool had a reasonable probability of further business opportunities with New York Appliances, HomeDepot.com, Walmart.com, and other retailers for the sale of Emerson Quiet Kool air conditioners.

57. Defendant's unlawful registration of the EMERSON QUIET KOOL mark in China and intentional marking of its products with the EMERSON QUIET KOOL mark wrongfully and intentionally interfered with Emerson Quiet Kool's opportunities to enter into further purchase orders with New York Appliances, HomeDepot.com, Walmart.com, and other retailers for the sale of Emerson Quiet Kool air conditioners.

58. As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have suffered and continue to suffer significant harm and irreparable injury.

## COUNT V
### (TORTIOUS INTEFERENCE WITH CONTRACT)

59. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

60. Defendant knows that Emerson Quiet Kool has purchase orders with retailers in the United States. Specifically, Defendant knows that Emerson Quiet Kool has purchase orders with New York Appliances, Homedepot.com, and Walmart.com.

61. Defendant knowingly and intentionally registered Emerson Quite Kool's trademark in China. Defendant knowingly and intentionally brought suit against Emerson Quiet Kool in China regarding the ownership of that mark. And Defendant knowingly and

11

intentionally brought a Customs action to stop the distribution of Quiet Kool's goods through the Port of Zhongshan.

62. As a result of Defendant's knowing and intentional actions, Emerson Quiet Kool breached its purchase orders in 2018 and 2019 with New York Appliances. Defendant knowingly and intentionally caused the Emerson Quiet Kool's contract with New York Appliances to be breached.

63. As a direct and proximate result of Defendant's wrongful acts, Plaintiffs have suffered and continue to suffer significant harm and irreparable injury.

## COUNT VI
### (VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT)

64. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

65. The Delaware Uniform Deceptive Trade Practices Act, 6 Del. C. 2532 (the "Act") is intended to address unfair and deceptive trade practices that interfere with the promotion and conduct of another's business.

66. Defendant's registration and use of the EMERSON QUIET KOOL marks is causing confusion, mistake or deception as to the source, origin, sponsorship or approval of the products Defendant sells in that consumers and others are likely to incorrectly believe Emerson Quiet Kool authorizes or controls the sale of those products or that Defendant is associated with or related to Emerson Quiet Kool.

67. Defendant's registration and use of the EMERSON QUIET KOOL marks is causing confusion or of misunderstanding as to affiliation, connection, or association of the products Defendant sells in that consumers and others are likely to incorrectly believe Emerson

Quiet Kool authorizes or controls the sale of those products or that Defendant is associated with or related to Emerson Quiet Kool.

68. Defendant's registration and use of the EMERSON QUIET Kool marks is a deliberate, intentional and willful attempt to injure Emerson Quiet Kool's business, to trade on Emerson Quiet Kool's good will and to confuse and deceive consumers.

69. As a direct and proximate result of Defendant's actions, Plaintiffs have suffered and will continue to suffer significant harm. Plaintiffs' remedies at law are inadequate to compensate for this harm and damage.

## COUNT VII
## (UNJUST ENRICHMENT)

70. Plaintiffs reallege and incorporate by reference the above allegations as if set forth fully herein.

71. Alternatively, Defendant's wrongful conduct against Plaintiffs constitute unjust enrichment.

72. Defendant has been unjustly enriched by destroying a competitor in the United States, and capturing Plaintiffs' lost sales and lost profits.

73. Defendants' unjust enrichment is directly related to and is causing Plaintiffs' impoverishment.

74. There is no justification for Defendant's unjust enrichment and Plaintiff's resulting impoverishment.

75. Plaintiffs' remedies at law are inadequate to compensate for this harm and damage.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment as follows:

 A. Declaring that Defendant breached the 2011 Consent Agreement;

 B. Declaring that Defendant breach the implied covenant of good faith and fair dealing under the 2011 Consent Agreement;

 C. Declaring that Defendant engaged in unfair competition;

 D. Declaring that Defendant tortiously interfered with Emerson Quiet Kool's prospective business opportunities;

 E. Declaring that Defendant tortiously interfered with Plaintiffs' contract with New York Appliances;

 F. Enjoining Defendant from using the EMERSON QUIET KOOL trademark;

 G. Awarding money damages against Defendant for all losses and damages suffered by Plaintiff as a result of the acts complained of herein, together with pre-judgment and post-judgment interest;

 H. Awarding attorneys' fees, expert fees, costs, and expenses; and

 I. Awarding other and further relief as this Court deems just and proper.

Dated: October 26, 2020  **FISH & RICHARDSON P.C.**

  */s/ Jeremy D. Anderson*
  Jeremy D. Anderson (DE Bar #4515)
  222 Delaware Avenue, 17th Floor
  P.O. Box 1114
  Wilmington, DE 19899-1114
  Tel: (302) 652-5070
  janderson@fr.com

  *Attorneys for Plaintiffs Emerson Quiet Kool, Ltd. & Home Easy, Ltd.*