UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| LONE STAR TARGETED ADVERTISING, LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>CENTRO, INC.<br><br>               Defendant. | CASE NO.<br><br>JURY DEMAND |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lone Star Targeted Advertising, LLC ("LSTA"), for its Complaint against Centro, Inc. ("Defendant" or "Centro"), alleges as follows:

**PARTIES**

1. Plaintiff Lone Star Targeted Advertising, LLC ("LSTA") is a limited liability company organized under the laws of the State of Texas with its principal place of business in Dallas, Texas.

2. On information and belief, Centro, Inc. is a company organized under the laws of Delaware.

**JURISDICTION AND VENUE**

3. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant because Defendant has transacted and is transacting business in the District of Delaware that includes, but is not limited

to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 28 U.S.C. 1400(b) because Defendant has committed acts of infringement in this District. In addition, the Defendant is a registered corporation in the State of Delaware.

## FACTS

7. On October 9, 2001, U.S. Patent No. 6,301,619, entitled "System and Method for Providing Service of Sending Real Time Electronic Information to Selected Individual Viewers of Transmitted Video or Computerized Signals" was duly and legally issued. A true and correct copy of the '619 Patent is attached hereto as Exhibit A. The '619 Patent issued from application Serial Number 09/260,035 filed March 2, 1999. The inventors assigned all right, title and interest in the '619 Patent to Oplus Technologies Ltd. Oplus Technologies Ltd. assigned its entire right, title, and interest in '619 Patent to Lone Star Technological Innovations, LLC, who then assigned its entire right, title, and interest in the '619 Patent to LSTA. LSTA is the sole owner of all rights, title, and interest in and to the '619 Patent including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement of the '619 Patent.

8. Claim 9 of the '619 Patent states:

> A method for a sender sending real time electronic information to a viewer of transmitted video signals, the method comprising the steps of:
>
> (a) providing viewer attribute information related to the viewer;
>
> (b) receiving and storing said viewer attribute information by an electronic device, included with an in communication with a television belonging to the view, said viewer attribute information input into said electronic device by the viewer;
>
> (c) providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer;

  (d) providing a service center for communicating to a television station provider of the transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender;

  (e) transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer;

  (f) making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information;

  (g) decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender;

  (h) formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender;

  (i) opening up of a subwindow within said television belonging to the viewer; and

  (j) displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer.

On information and belief, Centro infringes Claim 9 of the '619 Patent. Specifically, Centro sends real time electronic information to a viewer of transmitted video signals.

centro.

**POWERFUL INTEGRATIONS**

Basis provides access to the industry's leading exchanges, along with 25,000+ audience segments across over 30 different data providers, giving flexible and intuitive inventory and data targeting options.



### Omni-Channel

Manage omni-channel campaigns across mobile, video, display, audio, connected TV, native, search, and social with the #1 rated DSP. You'll create a seamless and integrated experience for your consumers.



### Brand Safety

We take brand protection seriously. By partnering with the industry's leading brand safety providers and utilizing a combination of human and tech measures —we're able to monitor and block fraudulent activity across Basis 24/7.

centro.



## WHAT IS CONNECTED TV ADVERTISING?

Connected TV (CTV), is a smart TV, smartphone, desktop, tablet or any device that is connected to the internet and facilitates the delivery of streaming video content.

### HOW CTV ADS WORK



A CTV connects to the internet through built-in capabilities or an external "over-the-top" (OTT) device that enables a standard TV set to become a Connected TV. Voila!



Video advertising on Connected TV occurs during the in-app experience.

*Ex: When a Connected TV user opens an app to watch an episode of The Lone Ranger, a video ad would play prior to or during the content.*



A :15 to :30 video ad is similar to a pre-roll ad on desktop, laptop or smartphone, but the user experience is comparable to traditional TV.



9. Centro's system infringes each element of Claim 9 as follows:
   a. "providing viewer attributable information related to the viewer" – Centro utilizes viewer attribute information via advance audience analytics. In particular it has, "Unique Targeting Capabilities -- Reach your ideal customer with sophisticated targeting. Basis' robust inventory directory is the largest curated directory in the industry and spans across all

channels and devices." *See* https://www.centro.net/products/programmatic.





b. "receiving and storing said viewer attribute information by an electronic device included with an in communication with a television belonging to the viewer, said viewer attribute information input into said electronic device by the viewer" – In order for Centro to utilize its platform and analytical system, an electronic device of the viewer's is in communication with a TV in order to obtain "real-time" audience data and insights. For most viewers, on information and belief, this will be a set top box that provides the real-time analytics information to the "sender."



        c.     "providing sender requested electronic information of the sender to be transmitted by request of the sender to the viewer, said sender requested electronic information of the sender is included with a non-viewer provided subset of said viewer attribute information related to the viewer" -- On information and belief, targeted advertisement based on the campaign being run using Centro's platform meets this requirement, as the sender is requesting the sending of information from sender to viewer based on viewer attributable information.



d. "providing a service center for communicating to a television station provider of the transmitted video signals encoding instructions to form encoded sender requested electronic information of the sender" -- Centro's platform is the service center that interfaces in providing information of advertiser, content provider, and the viewer.





      e.  "transmitting a compound video signal including said non-viewer provided subset of viewer attribute information and said encoded sender requested electronic information of the sender by said television station provider of the transmitted video signals to said electronic device included with and in communication with said television belonging to the viewer."  -- This element is met as Centro transmits and sends encoded information, e.g. video to viewers including non-viewer provided information in order to deliver ads targeted to the viewer, especially in regard to the Centro's platform's ability to, for example:

**"Hulu Advertising with Basis**

Buying on Hulu's PMP allows users to:

- Activate campaigns in real-time to reach millions of authenticated subscribers viewing premium, brand-safe video on-demand or live
- Deliver targeted messages to customers on visually engaging ad units served within high-production environments

- Leverage Hulu's data-driven audience segments based on user demographics, interests, behaviors, location, and a variety of other factors"

See https://www.centro.net/blog/hulu-certifies-centros-basis



"Computers, phones, and tablets too. With our data we'll reach you!"
Most programmatic platforms include multichannel targeting across computers, phones, tablets, and even connected TV devices. With the use of data (whether 1st, 2nd, or 3rd party), your buying strategy can focus on reaching your intended audience no matter what device they're using.

Cross device capabilities also help extend your audience to find a user anywhere, regardless of the type of data your audience segment includes, including IP-based connected TV devices.

      f.      "making a decision selected from the group consisting of accepting said encoded sender requested electronic information of the sender and not accepting said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer, whereby said decision by said electronic device accepting said encoded sender requested electronic information the sender is made by recognizing said non-viewer provided subset of said viewer attribute information" – On information and belief, inherently, the only logical next step for said device is to determine whether to accept (for purposes of viewing/displaying) said sender requested electronic information based on whether the transmitted subset of viewer attribute information matches viewer attribute information on the device.  The device determines whether a given transmission is intended for it by checking if the transmission is tagged with attributes matching its own local attributes.

      Per the standard process of OTT ad insertion: "Playback devices will read the top level manifest and learn the available profiles. **They will then decide on a profile, read its individual manifest and start reading decoding the segments**. If the network conditions change, the playback device may switch to a higher or lower profile as needed. On a live stream, manifests

are frequently updated." *See* https://www.tvtechnology.com/opinions/scte10435-and-beyond-a-look-at-ad-insertion-in-an-ott-world.

      g. "decoding said encoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form decoded sender requested electronic information of the sender" – On information and belief, encoded information is decoded in order for the information to be displayed to the viewer.

      h. "formatting said decoded sender requested electronic information of the sender by said electronic device included with and in communication with said television belonging to the viewer to form formatted decoded sender requested electronic information of the sender" – On information and belief, decoded information is necessarily formatted in an appropriate manner consistent with the display requirements of the television with which it is in communication.

      i. "opening up of a subwindow within said television belonging to the viewer" – A television screen displays content. Within the television, on information and belief, there are other windows, such as when choosing the menu which pops up. At least for example, when dynamic brand insertion is utilized.

      j. "and, displaying said formatted decoder sender requested electronic information of the sender within said subwindow within said television belonging to the viewer" -- On information and belief, after accepting, decoding, and formatting sender requested electronic information, the electronic device necessarily displays said sender requested electronic information.

## FIRST CLAIM FOR RELIEF

### Patent Infringement of the '619 Patent (35 U.S.C. §§ 101, et seq.)

10. LSTA refers to and incorporates herein by reference paragraphs 1-9.

11.     Defendant infringed, either directly or indirectly, at least Claim 9 of the '619 Patent in this judicial district and the United States, through the services they provided as outlined at www.makethunder.com and as described above.

12.     Defendant, therefore, by the acts complained of herein, made, used, sold, or offered for sale in the United States, including in the District of Delaware, products and/or services embodying the patented method, and have in the past infringed the '619 Patent, either literally or under the doctrine of equivalents, pursuant to 35 U.S.C. §271(a).

13.     To the extent that some elements of claim 9 were performed by a different party than Centro, Centro participated in the infringement (as described above) and received a benefit upon performance of the steps of the patented method.  For example, Centro provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method.  Centro received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed through the top set box.

14.     Upon information and belief, the acts described above concerning the use, offer for sale, sale, operation, distribution, and/or installation of Centro's products and/or software and those described below also constitute acts of induced and contributory infringement.  Customers and users used the infringing products and software to provide targeted ads.

15.     To the extent that some elements of a claim were performed by a different party than Centro, Centro, through its software and infringing products, participated in the infringement (as described herein) and receives a benefit upon performance of steps of a patented method.  For example, Centro provided the software and technology that established viewer attribute information related to the viewer that can be collected, and how that information was transmitted, received, stored and acted upon in accordance with the patented method.  Centro received a benefit from such actions by the customer and television station provider as it allowed targeted advertising to be displayed.

16. Upon information and belief, Centro provided its customers and/or users of its products and software instructions to use, load and operate in an infringing manner or to create and use infringing products. Upon information and belief, Centro further induced its customers and/or users of Centro's platform to use its products (and accompanying software) by providing subscriptions to Centro's platform. Further, Centro had actively induced infringement by its customers and/or users of Centro's products and software in this judicial district. Upon information and belief, Centro knowingly and specifically designed Centro's platform in a manner that infringed the '619 Patent. Upon information that belief, Centro also provides support services for claim 9 of the '619 Patent. Centro's targeted advertising method has no substantial non-infringing use. Centro has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within the jurisdiction and elsewhere. Upon information and belief, Centro continued to provide instructions since having notice and actual knowledge of the '619 Patent.

17. Upon information and belief, Centro's method has no substantial non-infringing uses and is especially made and/or adapted so as to infringe the '619 Patent. Centro has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within this District and elsewhere.

18. Plaintiff has complied with the notice requirement of 35 U.S.C. § 287 and does not currently make, use, sell offer for sale products or services embodying the '619 Patent.

19. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contentions or claim construction purposes by the infringement allegations that it provides with this Complaint. The element-by-element analysis herein is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

20. By reason of the acts of Centro alleged herein, LSTA has suffered damage in an amount to be proved at trial.

## JURY DEMAND

LSTA demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, LSTA prays for relief as follows:

A.	Judgment that Defendant has directly infringed, and induced others to infringe, the '619 Patent either literally and/or under the doctrine of equivalents;

B.	Judgment awarding LSTA general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Defendant's profits or gains of any kind from their acts of patent infringement from six years prior to the filing of the complaint until March 2, 2019;

C.	Judgment awarding LSTA all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

D.	Judgment awarding LSTA pre-judgment and post-judgment interest; and

E.	Judgment awarding LSTA such other and further relief as the Court may deem just and proper.


Dated: October 28, 2020

Respectfully submitted,

STAMOULIS & WEINBLATT LLC


By: /s/ Stamatios Stamoulis
    Stamatios Stamoulis (No. 4606)
    800 N. West Street, Third Floor
    Wilmington, DE 19809
    (302) 999-1540
    stamoulis@swdelaw.com

    John A. Lee (pro hac vice pending)
    jlee@banishlaw.com
    Banie & Ishimoto LLP
    3705 Haven Ave., #137
    Menlo Park, CA 94025
    T: 650.241.2774
    F: 650.241.2770

    Attorneys for Plaintiff
    Lone Star Technology, LLC